UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 1199SEIU UNITED HEALTHCARE WORKERS EAST,<br><br>Petitioner,<br><br>v.<br><br>PSC COMMUNITY SERVICES, NEW PARTNERS, INC. D/B/A PARTNERS IN CARE, STELLA ORTON HOME CARE AGENCY, RICHMOND HOME NEEDS, SUNNYSIDE HOME CARE PROJECT, SUNNYSIDE CITYWIDE HOME CARE, FAMILY HOME CARE OF BROOKLYN AND QUEENS, CARE AT HOME, CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, UNITED JEWISH COUNCIL OF THE EAST SIDE HOME ATTENDANT SERVICE CORP., THE FIRST CHINESE PRESBYTERIAN COMMUNITY AFFAIRS HOME ATTENDANT CORP., AZOR HOME CARE, BUSHWICK STUYVESANT HEIGHTS HOME ATTENDANT, INC., CABS HOMECARE, RIVERSPRING LICENSED HOMECARE SERVICES AGENCY, INC., ST. NICHOLAS HUMAN SUPPORTS CORP., WARTBURG, ALLIANCE FOR HEALTH, INC., REGION CARE, INC., SPECIAL TOUCH HOME CARE SERVICES, INC., RAIN, INC., PRESTIGE HOME CARE, INC., PRESTIGE HOME ATTENDANT, INC. D/B/A ALL SEASON HOME ATTENDANT, PERSONAL TOUCH HOME CARE OF N.Y., INC., PRIORITY HOME SERVICES, PREMIER HOME HEALTH CARE, INC., BRONX JEWISH COMMUNITY COUNCIL HOME ATTENDANT SERVICES, CIDNY INDEPENDENT LIVING SERVICES, HOME CARE SERVICES FOR INDEPENDENT LIVING, NEW YORK FOUNDATION FOR SENIOR CITIZENS HOME ATTENDANT SERVICES, COOPERATIVE HOME CARE ASSOCIATES, RISEBORO HOME CARE, INC., FEGS HOME ATTENDANT SERVICES, HOME HEALTH MANAGEMENT SERVICES, INC., SCHOOL SETTLEMENT HOME ATTENDANT CORP., ROCKAWAY HOME ATTENDANT, BRONXWOOD HOME FOR THE AGED, INC., ACCENTCARE OF NY, INC., ISABELLA VISITING CARE, INC., SOCIAL CONCERN COMMUNITY DEVELOPMENT CORP., ABC HEALTH SERVICES REGISTRY, ALLIANCE HOME SERVICES, *collectively identified by the Arbitrator as the* "HOME HEALTH CARE AGENCIES",<br><br>Respondents | Civil Action No. |

# MEMORANDUM OF LAW IN SUPPORT OF PETITIONER 1199SEIU'S PETITION TO CONFIRM ARBITRATION AWARD

Levy Ratner, P.C.
80 Eighth Avenue, Floor 8
New York, NY 10011-5126
(212) 627-8100
(212) 627-8182 (fax)

On the Brief:     Laureve Blackstone
                  Kimberly Lehmann

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................2

STATEMENT OF FACTS .........................................................................................3

    The Collective Bargaining Agreements......................................................................3

    The Grievance ............................................................................................................6

    The Mediation and Arbitration...................................................................................7

ARGUMENT..............................................................................................................8

I.       LEGAL STANDARD ...................................................................................8

II.     THE PARTIES AGREED NOT TO CONTEST COURT CONFIRMATION OF AN AWARD RENDERED UNDER THE CBA ................................................10

III.    THE AWARD WAS A FINAL ADJUDICATION OF THE JURISDICTIONAL ISSUES AND THUS IS SUBJECT TO CONFIRMATION BY THIS COURT...........................11

IV.   THE AWARD DRAWS ITS ESSENCE FROM THE PARTIES' CBAS, SETS FORTH A CLEAR JUSTIFICATION AND RATIONALE FOR THE ARBITRATOR'S CONCLUSIONS, AND THEREFORE, MUST BE CONFIRMED...............................11

    A.    THE ARBITRATOR FOUND THAT THE PARTIES DELEGATED AUTHORITY TO THE ARBITRATOR TO DETERMINE QUESTIONS OF ARBITRABILITY ............................................................................11

    B.    THE ARBITRATOR CONCLUDED THAT THE PARTIES HAD CLEARLY AND UNMISTAKABLY AGREED TO ARBITRATE STATUTORY CLAIMS ARISING UNDER THE COVERED STATUTES............................................12

    C.    THE ARBITRATOR CONCLUDED, THROUGH HIS ANALYSIS OF THE ADR PROVISION, THAT HIS JURISDICTION EXTENDS TO THE UNION'S CLAIMS ON BEHALF OF EMPLOYEES WHOSE EMPLOYMENT TERMINATED PRIOR TO THE ADR PROVISION'S EFFECTIVE DATE ....13

CONCLUSION...........................................................................................................14

# TABLE OF AUTHORITIES

Other Authorities

Abdullayeva v. Attending Homecare Servs. LLC,
   928 F.3d 218 (2d Cir. 2019) ...............................................................................13
Contec Corp. v. Remote Solution,
   398 F.3d 205 (2d Cir. 2005) ........................................................................12, 14
Corporate Printing Co., v. NY. Typographical Union No. 6,
   No. 93 Civ. 6796 (Sotomayor, J.), 1994 WL 376093 (S.D.N.Y. July 18, 1994)......................9
Cunningham v. Hamilton Cty., Ohio,
   527 U.S. 198 (1999) ...........................................................................................9
D.H. Blair & Co. v. Gottdiener,
   462 F.3d 95 (2d Cir. 2006) ............................................................................9, 10
Florasynth, Inc. v. Pickholz,
   750 F.2d 171 (2d Cir. 1984) ...............................................................................9
Folkways Music Publishers, Inc. v. Weiss,
   989 F.2d 108 (2d Cir. 1993) ...............................................................................9
Henry Schein, Inc. v. Archer & White Sales, Inc.,
   139 S.Ct. 524 (2019) ...........................................................................10, 11, 12
Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union,
   954 F.2d 794 (2d Cir. 1992) ..............................................................................10
N.Y. Hotel & Motel Trades Council v. Hotel St. George,
   988 F. Supp. 770 (S.D.N.Y. 1997)..............................................................8, 9, 10
Penn Plaza LLC v. Pyett,
   556 U.S. 247 (2009) .....................................................................................12, 13
Pfizer Inc. v. ICWUC/UFCW Locals 95C,
   No. 13 Civ. 1998 (AJN), 2014 WL 1275842 (S.D.N.Y. Mar. 24, 2014).............................9, 11
Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Intern., Inc.,
   198 F.3d 88 (2d Cir. 1999) ................................................................................13
Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.,
   931 F.2d 191, (2d Cir. 1991) ...........................................................................9, 11
United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,
   363 U.S. 593 (1960) .........................................................................................10

Regulations

, 29 U.S.C. § 1...................................................................................................10
28 U.S.C. § 1291.................................................................................................9
9 U.S.C. § 9 .....................................................................................................10
U.S.C. § 1291....................................................................................................9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

1199SEIU UNITED HEALTHCARE WORKERS EAST,

Petitioner,

v.

PSC COMMUNITY SERVICES, NEW PARTNERS, INC. D/B/A PARTNERS IN CARE, STELLA ORTON HOME CARE AGENCY, RICHMOND HOME NEEDS, SUNNYSIDE HOME CARE PROJECT, SUNNYSIDE CITYWIDE HOME CARE, FAMILY HOME CARE OF BROOKLYN AND QUEENS, CARE AT HOME, CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, UNITED JEWISH COUNCIL OF THE EAST SIDE HOME ATTENDANT SERVICE CORP., THE FIRST CHINESE PRESBYTERIAN COMMUNITY AFFAIRS HOME ATTENDANT CORP., AZOR HOME CARE, BUSHWICK STUYVESANT HEIGHTS HOME ATTENDANT, INC., CABS HOMECARE, RIVERSPRING LICENSED HOMECARE SERVICES AGENCY, INC., ST. NICHOLAS HUMAN SUPPORTS CORP., WARTBURG, ALLIANCE FOR HEALTH, INC., REGION CARE, INC., SPECIAL TOUCH HOME CARE SERVICES, INC., RAIN, INC., PRESTIGE HOME CARE, INC., PRESTIGE HOME ATTENDANT, INC. D/B/A ALL SEASON HOME ATTENDANT, PERSONAL TOUCH HOME CARE OF N.Y., INC., PRIORITY HOME SERVICES, PREMIER HOME HEALTH CARE, INC., BRONX JEWISH COMMUNITY COUNCIL HOME ATTENDANT SERVICES, CIDNY INDEPENDENT LIVING SERVICES, HOME CARE SERVICES FOR INDEPENDENT LIVING, NEW YORK FOUNDATION FOR SENIOR CITIZENS HOME ATTENDANT SERVICES, COOPERATIVE HOME CARE ASSOCIATES, RISEBORO HOME CARE, INC., FEGS HOME ATTENDANT SERVICES, HOME HEALTH MANAGEMENT SERVICES, INC., SOCIAL CONCERN COMMUNITY DEVELOPMENT CORP., ABC HEALTH SERVICES REGISTRY, ALLIANCE HOME SERVICES, ISABELLA VISITING CARE, INC., SOCIAL CONCERN COMMUNITY DEVELOPMENT CORP., ABC HEALTH SERVICES REGISTRY, ALLIANCE HOME SERVICES, *collectively identified by the Arbitrator as the* "HOME HEALTH CARE AGENCIES",

Respondents

Civil Action No.

---

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER 1199SEIU'S PETITION TO CONFIRM ARBITRATION AWARD

## INTRODUCTION

Petitioner 1199SEIU United Healthcare Workers East ("Union") seeks confirmation of Arbitrator Martin F. Scheinman's April 17, 2020 Arbitration Award ("Award") issued in an arbitration between the Union and Respondent Home Health Care Agencies (collectively, "Employers"). The Union and Employers, parties to collective bargaining agreements currently covering 75,000 employees ("the Parties"), submitted threshold jurisdictional issues to the Arbitrator for resolution before proceeding with the merits of the arbitration. The Parties agreed that these gateway issues should be decided in advance of a hearing on the merits. After briefing and hearing before the Arbitrator, the Arbitrator issued the Award, in which, inter alia, the Arbitrator made a final determination on the threshold issues of arbitrability and jurisdiction.

Given the broad scope of the arbitration, including expansive liability for significant damages, the considerable resources to be expended in an arbitration covering tens of thousands of employees, and the need for finality before moving towards the merits phase of the arbitration, the Union moves for confirmation of the final determinations in the Award that: 1) the claims encompassed in the Grievance are arbitrable and 2) the Arbitrator has jurisdiction to adjudicate the claims asserted irrespective of the date employees' employment terminated.[1]

As Arbitrator Scheinman's Award draws its essence from the Parties' collective bargaining agreements and decides the final jurisdictional issues submitted to him as agreed by the Parties, confirmation of the Award is required.

---

[1] For purposes of clarity, the Union does not move for confirmation with respect to Arbitrator Scheinman's other determinations.

## STATEMENT OF FACTS

### The Collective Bargaining Agreements

1199SEIU is the sole and exclusive representative of the Employers' home health aide employees for purposes of collective bargaining over the terms and conditions of their employment. Pet. ¶ 6. 1199SEIU is a party to a collective bargaining agreement with each of the Respondents (collectively, "Agreements" or "CBAs"). Pet. ¶ 7. While Respondents may have variations in their CBAs, all of the Respondents are parties to substantially similar agreements. Any CBA provision quoted herein are the same among the CBAs. Pet. ¶ 7.

The CBAs contain a grievance and arbitration provision which provides, in relevant part:

### ARTICLE XXVI
### GRIEVANCE AND ARBITRATION PROCEDURE

1. A grievance is defined as any dispute between the Union (on its behalf and/or on behalf of any Employee) with the Employer involving the proper application, interpretation, or compliance with the specific written provisions of the Agreement based on facts and circumstances occurring during the term of this Agreement. A grievance is subject to arbitration.

2. Grievances will be resolved in accordance with the following procedure.

\*\*\*

Step 4 -- If the grievance is not resolved at Step 3, the Union and/or Employer may within ten (10) days thereafter request that the matter be submitted for final and binding arbitration under the Labor Arbitration Rules of the American Arbitration Association.

3. Notwithstanding the foregoing, a grievance that affects a substantial number of Employees and is outside the authority of the Employer's representatives designated in Steps 1 and 2 may be presented initially at Step 3 of the grievance procedures. This grievance must be presented in writing and within ten (10) days of the occurrence which gave rise to the grievance.

\*\*\*

5. The opinion and award of the arbitrator must be made in writing and is final and binding upon all parties. The arbitrator has full authority to decide the issue or

issues in dispute, except that s/he does not have authority to amend, alter, modify, add to or subtract from the provisions of this Agreement.

****

Pet. ¶ 8 (Ex. B at 28-29).

In or about 2014, the Union signed a Memorandum of Agreement amending the CBA with each of the Respondents, which provided that, given changes in federal and state law, the Union and subject Employer would meet in good faith to negotiate an "expeditious and effective alternative dispute resolution procedure for the resolution of claims arising under such laws." Pet. ¶ 9. Specifically, the Parties agreed:

> [G]iven changes in federal and state law imposing new obligations on the Employer and exposing Employers to significantly increased level of litigation, it is in the interest of the Union, Employees, and the Employer to develop an expeditious and effective alternative dispute resolution procedure for the resolution of claims arising under such laws. Accordingly, between the execution of this Agreement and December 1, 2014, or as otherwise agreed by the parties, the parties shall meet in good faith to negotiate such an alternative dispute resolution procedure. If the parties are unable to agree to such a procedure in the allotted time, the Employer may submit the dispute to Martin F. Scheinman for final and binding arbitration.

Pet. ¶ 9 (Ex. C at 6-7).

In or about December 2015, the Union signed a Memorandum of Agreement with each of the Respondents that further amended the CBA and that provided for the resolution of claims under the Fair Labor Standards Act, the New York Home Care Worker Wage Parity Law, and/or the New York Labor Law ("Covered Statutes") pursuant to an alternative dispute resolution process:

> **New Article in the CBA, "ALTERNATIVE DISPUTE RESOLUTION", is hereby created, to read . . . as follows:**
>
> 1. The parties agree a goal of this Agreement is to ensure compliance with all federal, state and local wage hour law and wage parity statutes. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state and local wage-hour and wage parity statutes, all claims brought by either the Union or Employees, asserting violations of or

1-000-00464: 11122391_7

arising under the Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the "Covered Statutes"), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in this Article. The statute of limitations to file a grievance concerning the Covered Statutes shall be consistent with the applicable statutory statute of limitations. All such claims if not resolved in the grievance procedure, including class grievances filed by the Union, or mediation as described below shall be submitted to final and binding arbitration before Martin F. Scheinman, Esq. The Arbitrator shall apply appropriate law and shall award all statutory remedies and penalties, including attorneys' fees, consistent with the FLSA and New York Labor Law in rendering decisions regarding disputes arising under this Article.

Pet. ¶ 10 (Ex. D at 9).

Under the terms of the Alternative Dispute Resolution provision ("ADR Provision"), unresolved grievances concerning violations of the Covered Statutes would be submitted to mandatory mediation before Martin F. Scheinman, Esq. Pet. ¶ 11. Following the completion of the mandatory mediation process, the dispute may proceed to arbitration before Martin F. Scheinman.[2] Pet. ¶ 11. Specifically, the MOAs provided:

2. Whenever the parties are unable to resolve a grievance alleging a violation of any of the Covered Statutes, before the matter is submitted to arbitration, the dispute shall be submitted to mandatory mediation. The parties hereby designate Martin F. Scheinman, Esq., as Mediator for such disputes. Such mediation shall be requested no more than thirty (30) calendar days following exhaustion of the grievance procedure. Following submission of the dispute to mediation, the parties with the assistance of the Mediator shall establish such procedures as shall expeditiously advance the mediation process, including the scheduling of the exchange of relevant information, submission of position statements, and dates for mediation. In the absence of an agreement, the Mediator shall determine such procedures. Once the matter has been submitted to mediation, the Employer shall be obligated to produce relevant documents as requested by the Union and any objections to production shall be ruled on by the Mediator. The fees of the Mediator shall be shared equally by the Union and the Employer.

---

[2] Martin F. Scheinman, Esq. has over 40 years of experience as arbitrator in private and public sector disputes, helping to resolve over 20,000 disputes. Arbitrator Scheinman serves as the industry arbitrator for the home care industry, as he does for various other industries. Amongst the various other capacities in which he serves, Arbitrator Scheinman is the founder of the Scheinman Institute on Conflict Resolution, ILR School at Cornell University.

3. No party may proceed to arbitration prior to completion of the mediation process as determined by the Mediator. In the event the Union seeks arbitration of a grievance subject to these procedures, the Union shall submit its demand for arbitration to the Employer and the Arbitrator within four (4) months following the Mediator's declaration that mediation has concluded. The Employer shall be obligated to produce relevant documents as requested by the Union and any objections to production shall be ruled on by the Arbitrator. Prior to hearing, if noticed, the Union shall also be entitled to depositions of relevant witnesses. The fees of the arbitrator shall be shared equally by the Union and the Employer. The Employer shall upon notice be entitled to take the deposition of any Employee seeking relief in such arbitration or any other relevant witness.

*** 

5. The parties agree not to contest court confirmation of an arbitration award rendered under this Article. . . .

Pet. ¶ 11 (Ex. D at 9-10).

### The Grievance

On January 2, 2019, 1199SEIU filed a class action grievance on behalf of all its home care bargaining unit members concerning violations of the CBAs regarding wage and hour claims arising under the Covered Statutes. Pet. ¶ 12.

At the time the grievance was filed, some home care workers, who had terminated employment prior to the adoption of the ADR Provision, had initiated putative class action lawsuits in state and federal court to pursue claims under the Covered Statues on their own. Pet. ¶ 13. At the time the grievance was filed, no class had been certified in any of these pending lawsuits and, to date, no class has been certified in any of these lawsuits. Pet. ¶ 13. In most of these cases filed by home care workers, courts compelled the claims to arbitration. However, in a minority of pending actions involving eight former home care workers, courts held that the individual named plaintiff could not be compelled to arbitrate their claims under the ADR

Provision. Pet. ¶ 13. These eight former home care workers shall be referred to as the "Excluded Employees," as explained below. Pet. ¶ 13.

### The Mediation and Arbitration

Pursuant to the Agreements, the Parties proceeded to mediation before Martin S. Scheinman, Esq. Pet. ¶ 14. With the consent of the Union, certain attorneys representing individual home care employees as plaintiffs in pending court cases, most of which had been compelled to arbitration, also participated in the mediation. Pet. ¶ 15. At the request of the Parties, on December 24, 2019, the Arbitrator declared the mediation stage complete as the Parties had not been able to reach an agreement. Pet. ¶ 16.

On December 24, 2019, Arbitrator Scheinman gave the Parties leave to submit briefs addressing threshold issues to be argued orally on the first day of hearing and to be decided in advance of any hearing on the merits, including:

> 1. Are the claims encompassed by the wage and hour related grievances involving current and former 1199 bargaining unit members, including those arising under federal, state and local law, are arbitrable?
>
> 2. Does the Arbitrator have jurisdiction to adjudicate the claims asserted in the wage and hour grievances, arising under federal, state and local law, filed by the parties to the Collective Bargaining Agreement ("Agreement") which encompass all claims arising under the federal, state and local laws named in the Agreement, as well as any pending litigation or administrative actions on the identical claims, irrespective of whether employees' employment terminated prior to the effective date of the Memorandum of Agreement providing Alternative Dispute Resolution language for exclusive mediation/arbitration procedures for wage and hour disputes pursuant to the Agreement between the parties?

Pet. ¶ 17.

A hearing was held on January 15, 2020 before the Arbitrator, during which the Parties agreed that Arbitrator Scheinman would hear argument on and decide the threshold jurisdictional issues identified by the Arbitrator before proceeding to a hearing on the merits. Pet. ¶ 18. With

the consent of the Union, the attorneys representing individual home care employees as plaintiffs in pending court cases who had participated in the mediation were given notice of the hearing and invited to submit briefs. Pet. ¶ 19. A few attorneys representing such plaintiffs submitted briefs and participated in the hearing. Pet. ¶ 19. Following the hearing and submission of briefs, the Arbitrator issued the Award, dated April 17, 2020, deciding, <u>inter alia</u>, the threshold jurisdictional issues, including that the Parties had granted the Arbitrator authority to determine gateway questions of arbitrability and jurisdiction, and finding as follows:

> 1.    The claims encompassed by the wage and hour related grievances involving current and former 1199 bargaining unit members, including those arising under federal, state and local law, arbitrable.

> 2.    [The Arbitrator has] jurisdiction to adjudicate the claims asserted in the wage and hour grievances, arising under federal, state and local law, filed the parties to the Collective Bargaining Agreement which encompass all claims arising under the federal, state and local laws named in the Agreement, as well as any pending litigation or administrative action on the identical claims, irrespective of whether employees' employment terminated prior to the effective date of the Memorandum of Agreement providing Alternative Dispute Resolution language for exclusive mediation/arbitration procedures for wage and hour disputes pursuant to the Agreement between the parties.

Pet. ¶ 20 (Ex. A at 47). The Arbitrator expressly excluded from the Award the Excluded Employees, specifically holding that the Award was not binding on Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Boris Pustilnik, Maral Agarunova, Epifania Hichez, Carmen Carrasco, and Seferina Acosta. Pet. ¶ 21.

The Arbitrator transmitted the Award to counsel via electronic mail on April 17, 2020. Pet. ¶ 22.

## ARGUMENT

## I.    LEGAL STANDARD

"Confirmation of an arbitration award is a 'summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" <u>N.Y. Hotel & Motel Trades</u>

Council v. Hotel St. George, 988 F. Supp. 770, 773-74 (S.D.N.Y. 1997) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)).

Here, the Award the Union seeks to confirm deals with the gateway issues of jurisdiction and arbitrability. A court can confirm an arbitration award so long as it is a final award, even if it is not final as to all issues – liability and damages – before the arbitrator. "'[W]here the parties agree to submit to arbitration part of their dispute, with the intent that the arbitrator's decision be a final determination on the issue submitted, the arbitrator has the authority and responsibility to issue a final, albeit 'interim' award.'" Pfizer Inc. v. ICWUC/UFCW Locals 95C, No. 13 Civ. 1998 (AJN), 2014 WL 1275842, at *4 (S.D.N.Y. Mar. 24, 2014) (quoting Corporate Printing Co., v. NY. Typographical Union No. 6, No. 93 Civ. 6796 (Sotomayor, J.), 1994 WL 376093, at *4 (S.D.N.Y. July 18, 1994)); see also Trade & Transport, Inc. v. Natural Petroleum Charterers Inc., 931 F.2d 191, (2d Cir. 1991) ("[I]f the parties agree that the panel is to make a final decision as to part of the dispute, the arbitrators have the authority and responsibility to do so. . . . once [they] have finally decided the submitted issues, they are, in common-law parlance, "functus officio," meaning that their authority over those questions is ended.").[3]

A court's review is limited in order to "avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." N.Y. Hotel & Motel Trades Council, 988 F. Supp. at 774 (quoting Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993). "[T]he court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir.

---

[3] This standard differs from the requirements for appeal under 28 U.S.C. § 1291. See, e.g., Cunningham v. Hamilton Cty., Ohio, 527 U.S. 198, 204 (1999) (Under 28. U.S.C. § 1291, "a decision is not final, ordinarily, unless it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'") (internal citation omitted).

2006) (quoting 9 U.S.C. § 9). A court need only find "a barely colorable justification for the outcome reached" in order to confirm the award. Id. (quoting Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992)). In sum, a labor arbitration award must be confirmed unless it does not draw its "essence" from the parties' collective bargaining agreement, but rather, is a dispensation of the arbitrator's "own brand of industrial justice." United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960); see also Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S.Ct. 524, 529 (2019) ("A court has 'no business weighing the merits of the grievance' because the 'agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.'") (internal citations omitted).

## II.   THE PARTIES AGREED NOT TO CONTEST COURT CONFIRMATION OF AN AWARD RENDERED UNDER THE CBA

The Parties' CBAs provide that the parties will not contest court confirmation of an arbitration award rendered under the ADR Provision. See Pet. ¶ 11, Ex. D at 10. Here, where the parties (a) agreed not to contest court confirmation, (b) did not contest the arbitrator's authority in the proceeding to decide these gateway issues, and (c) the underlying dispute arises from a violation of a labor contract, pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, confirmation of the Award and entry of judgment is required. See N.Y. Hotel & Motel Trades Council, 988 F. Supp. at 773-74 (acknowledging that § 301 governs a union's petition to confirm because the award arises from violation of a collective bargaining agreement).

III.   **THE AWARD WAS A FINAL ADJUDICATION OF THE JURISDICTIONAL ISSUES AND THUS IS SUBJECT TO CONFIRMATION BY THIS COURT**

After conclusion of the mediation stage, the Arbitrator deemed it necessary to decide certain threshold jurisdictional issues before proceeding to a hearing and decision on the merits. Thereafter, the Arbitrator held a hearing, during which the Parties agreed that the Arbitrator would hear argument on and decide these threshold jurisdictional issues before the Parties proceeded to a hearing on the merits. The Parties understood the Arbitrator's hearing and decision on the two preliminary issues, arbitrability and jurisdiction, would be final and "[t]here is . . . nothing in the record to indicate that the Arbitrator or the Parties doubted the finality of the Award." Pfizer Inc. v. ICWUC/UFCW Locals 95C, 2014 WL 1275842, at *5. After deciding these threshold jurisdictional issues conclusively, the Arbitrator's authority over those questions ended, thus, rendering the Award final and reviewable. Trade & Trans., Inc. v. Nat'l Petroleum Charterers Inc., 931 F.2d at 195.

IV.   **THE AWARD DRAWS ITS ESSENCE FROM THE PARTIES' CBAS, SETS FORTH A CLEAR JUSTIFICATION AND RATIONALE FOR THE ARBITRATOR'S CONCLUSIONS, AND THEREFORE, MUST BE CONFIRMED**

The Arbitrator's Award as to arbitrability and jurisdiction must be confirmed because the Arbitrator offers a clear, thorough, and well-reasoned justification for the outcome reached, based on an analysis of the express terms of the CBAs. The Arbitrator determined that the claims are arbitrable after careful consideration of the relevant contract provisions.

A.   **THE ARBITRATOR FOUND THAT THE PARTIES DELEGATED AUTHORITY TO THE ARBITRATOR TO DETERMINE QUESTIONS OF ARBITRABILITY**

The Arbitrator's finding that the Parties delegated to him the authority to determine arbitrability is clearly articulated and based upon the Parties' CBAs. See Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S.Ct. at 527-28 (internal citations omitted) (holding that the

Federal Arbitration Act "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes" and, where they do, a court "possesses no power to decide the arbitrability issue."). The Arbitrator reviewed the CBA's 2012 Grievance and Arbitration provision, which authorized the Arbitrator to determine all disputes "'involving the proper application, interpretation or compliance with the specific written provisions of the Agreement'" and vested him or her with "'full authority to decide the issue or issues in dispute.'" See Ex. A at 33 (quoting the CBA). He found that such language authorizes an arbitrator to "decide all issues" including, "not only the merits of the underlying claims, but also whether claims presented are even within an arbitrator's jurisdiction." Id. The Arbitrator found, in accordance with Contec Corp. v. Remote Solution, 398 F.3d 205 (2d Cir. 2005), this determination was further supported by the Parties' inclusion of the American Arbitration Association ("AAA") Rules into the CBA which "vest[ed] the arbitrator with authority to determine the extent of his or her jurisdiction and the scope of matters to be arbitrated." See Ex. A at 34 (citing American Arbitration Association Labor Arbitration Rules (2013), Rule 3(a)); see Contec Corp., 398 F.3d at 211. (holding that the parties' agreement to arbitrate pursuant to AAA rules suffices to demonstrate clear evidence of the parties' intent to submit such issue to the arbitrator). As such, in this case, the Arbitrator reasoned he had the authority to determine the arbitrability of the claims at issue.

### B. THE ARBITRATOR CONCLUDED THAT THE PARTIES HAD CLEARLY AND UNMISTAKABLY AGREED TO ARBITRATE STATUTORY CLAIMS ARISING UNDER THE COVERED STATUTES

In concluding that the Parties had clearly and unmistakably agreed to arbitrate the statutory claims at issue, the Arbitrator similarly examined, and based his decision upon, the Parties' CBAs. Consistent with 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009), and

Abdullayeva v. Attending Homecare Servs. LLC, 928 F.3d 218, 223 (2d Cir. 2019), the Arbitrator concluded that the ADR Provision made "clear and unmistakable" that the parties agreed to exclusively arbitrate violations of any of the covered statutes and waived the parties' access to the judicial forum. See Pet., Ex. A at 33; see Pyett, 556 U.S. at 274 (holding that a collectively bargained arbitration provision which "clearly and unmistakably" requires arbitration of statutory claims must be enforced by the judiciary); Abdullayeva, 928 F.3d at 223 (holding, in reviewing identical contractual language, that the union had agreed to mandatory arbitration in the CBA on behalf of its members and the arbitration agreement at issue clearly and unmistakably encompassed statutory claims). The Arbitrator made the determination that the Parties had agreed to arbitrate the claims based on the plain language of the broad ADR Provision which provided for the arbitration of "all claims." See Pet., Ex. A at 32-33. The Arbitrator determined that such clear and unmistakable language resulted in a presumption of the claims' arbitrability. Id. at 33.

C.   **THE ARBITRATOR CONCLUDED, THROUGH HIS ANALYSIS OF THE ADR PROVISION, THAT HIS JURISDICTION EXTENDS TO THE UNION'S CLAIMS ON BEHALF OF EMPLOYEES WHOSE EMPLOYMENT TERMINATED PRIOR TO THE ADR PROVISION'S EFFECTIVE DATE**

The Arbitrator based his determination that his jurisdiction extends to the Union's claims on behalf of all employees by looking to and analyzing the CBA. The Arbitrator examined the text of the ADR Provision and found there was no temporal limitation contained in that provision. Based on the plain contractual language agreed to by the Parties, the Arbitrator determined that the ADR Provision applied "to all claims arising under the covered statutes, without regard to whether the claim accrued before the Provision was adopted." See Ex. A at 37; see Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Intern., Inc., 198

F.3d 88, 98-99 (2d Cir. 1999) (holding where arbitration clause contains no temporal limitation, doubts should be resolved in favor of coverage and the relevant inquiry is whether claims covered, not when they arose).

In addition, the Arbitrator found that his conclusion was consistent with his prior decision interpreting the ADR Provision, as well as consistent with the contracting parties' intent, as the parties provided arbitration "as their exclusive forum for resolving all claims arising under the covered statutes." Id. at 38-39. The Arbitrator expressly excluded from the Award the Excluded Employees, who were the subject of individual court decisions, holding that they could not be compelled to arbitrate their claims and ruling that the Award was not binding on them. Id. at 44, 48. The Arbitrator's conclusion that his jurisdiction extends to the Union's claims on behalf of employees irrespective of when their employment terminated was a matter of contract interpretation and appropriately decided by him, as the CBA vested him "with authority to determine the extent of his . . . jurisdiction and the scope of matters to be arbitrated." See Contec Corp., 398 F.3d at 211.

## CONCLUSION

The Arbitrator's Award clearly articulates the reasons for his final decision on gateway jurisdictional issues, which draw its essence from the Parties' CBAs as it is based on an analysis of the express language set forth in those CBAs. Accordingly, confirmation of the Award is required. Therefore, 1199SEIU respectfully requests that this Court confirm the April 17, 2020 Award of Martin F. Scheinman as to the jurisdictional determinations.

Dated:    May 8, 2020
          New York, New York

LEVY RATNER, P.C.

_/s Laureve Blackstone_

By:    Laureve Blackstone
Attorneys for 1199SEIU United
Healthcare Workers East
80 Eighth Avenue Floor 8
New York, New York 10011
(212) 627-8100
(212) 627-8182 (fax)
lblackstone@levyratner.com

1-000-00464: 11122391_7