**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

1199SEIU UNITED HEALTHCARE WORKERS EAST,

Petitioner,

v.

PSC COMMUNITY SERVICES, NEW PARTNERS, INC. d/b/a PARTNERS IN CARE, STELLA ORTON HOME CARE AGENCY, RICHMOND HOME NEEDS, SUNNYSIDE HOME CA RE PROJECT, SUNNYSIDE CITYWIDE HOME CARE, FAMILY HOME CARE OF BROOKLYN AND QUEENS, CARE AT HOME, CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, UNITED JEWISH COUNCIL OF THE EAST SIDE HOME ATTENDANT SERVICE CORP., THE FIRST CHINESE PRESBYTERIAN COMMUNITY AFFAIRS HOME ATTENDANT CORP., AZOR HOME CARE, BUSHWICK STUYVESANT HEIGHTS HOME ATTENDANT, INC., CA BS HOMECARE, RIVERSPRING LICENSED HOME CARE SERVICES AGENCY, INC., ST. NICHOLAS HUMAN SUPPORTS CORP., WARTBURG, ALLIANCE FOR HEALTH, INC., REGION CARE, INC., SPECIAL TOUCH HOME CARE SERVICES, INC., RAIN, INC., PRESTIGE HOME CARE, INC., PRESTIGE HOME ATTENDANT, INC. d/b/a ALL SEASON HOME ATTENDANT, PERSONAL TOUCH HOME CARE OF N.Y., INC., PRIORITY HOME SERVICES, PREMIER HOME HEALTH CARE, INC., BRONX JEWISH COMMUNITY COUNCIL HOME ATTENDANT SERVICES, CIDNY INDEPENDENT LIVING SERVICES, HOME CARE SERVICES FOR INDEPENDENT LIVING, NEW YORK FOUNDATION FOR SENIOR CITIZENS HOME ATTENDANT SERVICES, COOPERATIVE HOME CARE ASSOCIATES, RISEBORO HOME CARE, INC., FEGS HOME ATTENDANT SERVICES, HOME HEALTH MANAGEMENT SERVICES, INC., SCHOOL SETTLEMENT HOME ATTENDANT CORP., ROCKAWAY HOME ATTENDANT, BRONXWOOD HOME FOR THE AGED, INC., ACCENTCARE OF NY, INC., ISABELLA VISITING CARE, INC., SOCIAL CONCERN COMMUNITY DEVELOPMENT CORP., ABC HEALTH SERVICES REGISTRY, ALLIANCE HOME SERV ICES, *collectively identified by the Arbitrator as the* "HOME HEALTH CARE AGENCIES",

Respondents.

---

Case No.: 20-cv-03611-JGK

**JOINT MEMORANDUM OF LAW, OF UNITED JEWISH COUNCIL OF THE EAST SIDE HOME ATTENDANT SERVICE CORP. AND CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, INC., IN OPPOSITION TO MOTION TO INTERVENE**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

RELEVANT FACTS AND PROCEDURAL HISTORY ...........................................2

I.      The CBAs and 2015 MOAs ...........................................................................2

II.     The *Chan* and *Chu* Matters Against CPC ....................................................3

III.    The *Hichez* Matter Against UJC ..................................................................6

IV.     The Union's January 2019 Grievance and the Arbitration Award.................7

ARGUMENT ..............................................................................................................8

I.      AS NONPARTIES TO THE ARBITRATION, PROPOSED INTERVENORS LACK
        STANDING TO INTERVENE UNDER THE FEDERAL ARBITRATION ACT ..........8

II.     PROPOSED INTERVENORS CANNOT MAKE THE REQUISITE SHOWING FOR
        INTERVENTION AS OF RIGHT UNDER FRCP 24(a)(2) ............................................9

III.    PERMISSIVE INTERVENTION IS NOT WARRANTED .........................................16

CONCLUSION...........................................................................................................17

**Cases**

*Ass'n of Contracting Plumbers of City of N.Y., Inc. v. Local Union No. 2*
  *United Ass'n of Journeyman & Apprentices of Plumbing & Pipefitting*
  *Indus.*,
  841 F.2d 461 (2d Cir. 1988) ................................................................8, 9

*Astil v. Kumquat Props., LLC*,
  125 A.D.3d 522 (1st Dep't 2015)................................................... 14

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
  250 F.3d 171 (2d Cir. 2001) ............................................................ 11

*Catanzano v. Wing*,
  103 F.3d 223 (2d Cir.1996) ............................................................. 11

*Compagnie Noga D'Importation et D'Exportation S.A. v. The Russian*
  *Federation*,
  No. 00-cv-0632, 2005 WL 1690537 (S.D.N.Y. July 20, 2005)........................................... 13

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .............................................................. 10

*Eddystone Rail Co. LLC v. Jamex Transfer Servs. LLC*,
  289 F. Supp. 3d 582 (S.D.N.Y. 2018).......................................................*passim*

*Friends of East Hampton Airport, Inc. v. Fed. Aviation Admin.*,
  No. 15-cv-0441, 2016 WL 792411 (E.D.N.Y. Feb. 29, 2016) ........................................ 13

*In re Holocaust Victim Assets Litig.*,
  225 F.3d 191 (2d Cir. 2000) ...........................................................10, 11

*Jones-Bartley v. McCabe, Weisberg & Conway, P.C.*,
  59 F. Supp. 3d 617 (S.D.N.Y. 2014)............................................. 14

*Kamdem-Ouaffo v. Pepsico, Inc.*,
  314 F.R.D. 130 (S.D.N.Y. 2016) ................................................... 10

*Katir v. Columbia Univ.*,
  821 F.Supp. 900 (S.D.N.Y. 1993)..................................................... 8

*Katz v. Berisford Int'l PLC*,
  No. 96-cv-8695, 2000 WL 1760965 (S.D.N.Y. Nov. 30, 2000)..................................... 13

*MasterCard Int'l Inc. v. Visa Int'l Servs. Ass'n, Inc.*,
  471 F.3d 377 (2d Cir. 2006) ........................................................... 10

*Ottley v. Schwartzberg,*
   819 F.2d 373 (2d Cir. 1987) ..................................................................16, 17

*Patton Boggs LLP v. Chevron Corp.,*
   No. 12-cv-9176, 2016 WL 7156593 (S.D.N.Y. Dec. 7, 2016).......................... 12

*Rudolph v. Hudsons Bay Co.,*
   No. 18 cv 8472, 2019 WL 1416986 (S.D.N.Y. Mar. 29, 2019) ........................ 11

*Schulz v. Williams,*
   44 F.3d 48 (2d Cir. 1994) ............................................................................ 14

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
   550 B.R. 241 (Bankr. S.D.N.Y. 2016) ........................................................... 12

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016) ................................................................................ 14

*State Comm. of Independence v. Berman,*
   No. 03-cv-4123, 2003 WL 22801908 (S.D.N.Y. Nov. 21, 2003)..................... 16

*Town of Chester, N.Y. v. Laroe Estates, Inc.,*
   137 S. Ct. 1645 (2017) ..............................................................................8, 14

*Tymoshenko v. Firtash,*
   No. 11-cv-2794, 2011 WL 5059180 (S.D.N.Y. Oct. 19, 2011)....................... 13

*Underwood v. State of N.Y. Office of Court Admin.,*
   No. 78 Civ. 4382, 1983 WL 504 (S.D.N.Y. Apr. 29, 1983)............................ 10

*Union Switch & Signal Inc. v. St. Paul Fire & Marine Ins. Co.,*
   226 F.R.D. 485 (S.D.N.Y. 2005) ..............................................................13, 17

*Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec.,*
   922 F.2d 92 (2d Cir. 1990) ....................................................................12, 15, 17

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) ...................................................................................... 9

**Statutes**

9 U.S.C. § 10(a) ................................................................................................ 8

**Rules**

AAA Rule 3(a)................................................................................................2, 3

Fed. R. Civ P. 23.............................................................................................. 14

Fed. R. Civ. P. 24 .................................................................................................... 12

Fed R. Civ. P. 24(a) ............................................................................................ 10, 12

Fed. R. Civ. P. 24(a)(2) ....................................................................................... 9, 13

Fed. R. Civ. P. 24(b) .............................................................................................. 16

## PRELIMINARY STATEMENT

Respondents United Jewish Council of the East Side Home Attendant Service Corp. ("UJC") and Chinese-American Planning Council Home Attendant Program, Inc. ("CPC") submit this brief, jointly,[1] for the narrow purpose of opposing the portion of the motion filed by Fisher Taubenfeld and TakeRoot Justice that seeks leave for seven individuals—Mei Kum Chu, Sau King Chung, Qun Xiang Ling, Epifania Hichez, Carmen Carrasco, Seferina Acosta and Dulce Herrera Palma (collectively, "Proposed Intervenors")—to intervene in this confirmation proceeding. Three Proposed Intervenors—Chu, Chung and Ling—are former employees of CPC (together, the "CPC Intervenors"); the other four—Hichez, Carrasco, Acosta and Palma—are former employees of UJC (together, the "UJC Intervenors"). None of them has an interest in this matter that warrants intervention.

If the Court reaches the issue of whether to permit intervention, it should deny that portion of the motion. First, as non-parties to the arbitration at issue in this action, Proposed Intervenors lack Article III standing under the Federal Arbitration Act ("FAA") to intervene. Further, their motion to intervene is not timely and will delay the proceedings. Proposed Intervenors were invited to brief the issues discussed in the instant award back in December 2019, and were invited to appear and make arguments at the ensuing hearing in January of this year—but they declined. Their attempt some six months later to disrupt the Arbitration as an interloper in this confirmation proceeding should be rejected. Finally, the sole "interest" Proposed Intervenors seek to protect is their hypothetical concern that a confirmed Award "may" be used against them in other proceedings. This "inchoate fear" is insufficient under the law for either mandatory or permissive intervention. *Eddystone Rail Co. LLC v. Jamex Transfer Servs.*

---

[1] UJC and CPC are completely separate entities with different sets of relevant facts and procedural histories. Nonetheless they have agreed to submit this brief jointly in an effort to comply with Your Honor's request on the June 11, 2020 conference to coordinate among parties to the extent possible.

*LLC*, 289 F. Supp. 3d 582, 595 (S.D.N.Y. 2018).  This is especially true given that (1) Hichez, Carrasco and Acosta are expressly excluded from the award and, therefore, cannot suffer any injury in fact therefrom; (2) Palma worked after the effective date of the 2015 MOA and, therefore, because her claims are plainly arbitrable, she cannot speak for actual pre-MOA employees; and (3) the CPC Intervenors already failed on two prior occasions to have their claims proceed in state court rather than in arbitration, and should not get a third chance to make this same argument.  Accordingly, and as set forth more fully below, the Court should deny the motion to intervene.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

The relevant facts and portions of the long and complex procedural history of litigation between Proposed Intervenors, on the one hand, and UJC and CPC, respectively, on the other, are as follows.

**I.      The CBAs and 2015 MOAs**

UJC and CPC are both not-for-profit providers of home health care services to elderly, infirm and disabled residents of New York City.  Since on or before 2012, CPC and UJC have had collective bargaining agreements ("CBA") with the petitioner in this case, 1199SEIU United Healthcare Workers East (the "Union").  (Declaration of Kenneth Kirschner ("Kirschner Decl.") Exs. A & B.)  Both of the CBAs—in language that has never been modified—set forth the same multi-step dispute resolution procedure that employees must pursue to raise complaints against the employers, which culminates in "final and binding arbitration under the Rules of the American Arbitration Association ['AAA']."  (Kirschner Decl. Ex. A at 28–29; Kirschner Decl. Ex. B at 26–27.)  Rule 3(a) of the AAA Rules is a delegation of procedural issues to the Arbitrator and provides that "[t]he arbitrator shall have the power to rule on his or her own

jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." (AAA Labor Arbitration Rule 3(a).)

Effective December 1, 2015, CPC and UJC entered into substantially identical memoranda of agreement—the "2015 MOAs"—with the Union. (Kirschner Decl. Exs. C & D.) Among other things, the 2015 MOAs amended the CBA by adding a new alternative dispute resolution provision by which the parties agreed that "all claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ('FLSA'), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the 'Covered Statutes'), in any manner, shall be subject exclusively to the grievance and arbitration procedures described in this Article." (Kirschner Decl. Ex. C at 8–10; Kirschner Decl. Ex. D at 8–9.) Included among those procedures is a "mandatory mediation" that employees and/or the Union must exhaust as to any covered claims they might have against the covered employer. (*Id.*) If mediation is not successful, the grieving party must submit its claim(s) "to final and binding arbitration" before Martin F. Scheinman, Esq. (the "Arbitrator"). (*Id.*) The Union, on the one hand, and CPC and UJC, on the other hand, are contractually forbidden from contesting confirmation of an arbitration award issued under this provision. (*Id.*)

## II.     The *Chan* and *Chu* Matters Against CPC

On March 11, 2015, before the 2015 MOA was effective, three current CPC employees who are *not* among the Proposed Intervenors filed a lawsuit against CPC in New York Supreme Court alleging claims under the Covered Statutes. (Kirschner Decl. Ex. E.) Current counsel for the *Chan* plaintiffs—Fisher Taubenfeld and TakeRoot Justice[2]—are the same counsel as for Proposed Intervenors. (*See*, *e.g.*, ECF No. 105-4.) The *Chan* plaintiffs purported to represent *all* current and former employees of CPC during the statutory period, regardless of when they were

---

[2] At the time, TakeRoot Justice was known as Urban Justice Center.

employed by CPC.  (Kirschner Decl. Ex. E ¶ 13.).  On November 9, 2015, the *Chan* plaintiffs amended their complaint to add an FLSA claim, which prompted CPC to remove the action to federal court on December 1, 2015.  (Kirschner Decl. ¶ 4.)

As stated, the 2015 MOA between CPC and the Union became effective December 1 of that year. Thus, on December 15, 2015, CPC moved to compel arbitration of the *Chan* matter— after it had already submitted a grievance to the Arbitrator that the *Chan* plaintiffs improperly brought their claims in court rather than in arbitration.  (*See* Kirschner Decl. Ex. F.)  The District Court granted the motion to compel on February 3, 2016—and then denied plaintiffs' motion to reconsider on April 8, 2016—holding that 2015 MOA applies retroactively to claims that accrued prior to its execution.  (Kirschner Decl. Exs. G & H.)  Accordingly, the *Chan* matter, which includes CPC employees who left CPC before the 2015 MOA and who worked beyond it, was sent to arbitration in its entirety.  (*Id.*)

On or about April 12, 2016, Fisher Taubenfeld and TakeRoot Justice (then called Urban Justice Center) filed a second lawsuit against CPC in state court, this time on behalf of three named plaintiffs who left CPC before the 2015 MOA (the *Chu* matter).  (*See* ECF No. 105-2.) The three *Chu* plaintiffs are the CPC Intervenors here.  The *Chu* complaint alleged all the same claims as the *Chan* plaintiffs, except it did not include the FLSA claim that resulted in removal to federal court.

The CPC Intervenors attempted in *Chu* to avoid application of the 2015 MOA based on the fact that they left CPC before its effective date.  (*Id.* at ¶¶ 24–26.)  However, the CPC Intervenors purport to represent a class in *Chu* that is not limited to such pre-MOA employees, but rather is composed mostly of employees who, like the *Chan* class, were employed by CPC beyond the effective date of the 2015 MOA.  (*Id.* ¶ 16.)  Accordingly, the putative class in *Chu*

overlaps almost completely with the putative class in *Chan* and, on that basis, CPC moved to dismiss *Chu* or stay it pending resolution of *Chan*, which had already been compelled to arbitration. On April 17, 2017, New York Supreme Court Justice Carol Edmead granted CPC's motion to stay the *Chu* case in the "interest of 'comity, orderly procedure and judicial economy'" because there was "substantial overlap between the issues raised in the two [*Chan* and *Chu*] proceedings" and because waiting for *Chan* to be resolved in arbitration would "avoid duplication of effort and waste of judicial resources." (Kirschner Decl. Ex. I.) The *Chu* case remained stayed until March 12, 2019, when, following a conference with the Court, Justice Edmead dismissed the case without prejudice, holding:

> Following a conference with the court, the parties apprised the court that [the *Chan* matter] has been compelled to arbitration and that the arbitration may resolve all of the issues in this action. Accordingly it is

> ORDERED that this action is dismissed without prejudice; and it is further

> ORDERED that the action may be restored, and relate back to the initial complaint herein, following the completion of arbitration if that process does not resolve all issues in this action[.]

(Kirschner Decl. Ex. J.)

On or about January 10, 2020, the CPC Intervenors moved to reinstate the *Chu* matter. (Kirschner Decl. ¶ 9.) At oral argument, CPC argued that the Court should deny the motion to reinstate because its prior decision to dismiss *Chu* pending resolution of *Chan* was valid and that there is no basis to depart from that law of the case. (*Id.*) Justice Edmead agreed, and on February 25, 2020 denied the CPC Intervenors' motion to reinstate *Chu* and advised them to file a third action with a different class if they wished to proceed. (*Id.* & Ex. K.) To date, the CPC Intervenors have not filed a new action but are appealing the two prior decisions by Justice Edmead. (Kirschner Decl. ¶ 9; Mtn. at 4.)

### III.     The *Hichez* Matter Against UJC

On June 14, 2017, the same lawyers who represent the *Chu* and *Chan* plaintiffs filed a lawsuit in New York Supreme Court against UJC on behalf of its current and former employees (the "*Hichez*" matter).  (ECF No. 105-1.)  Three of the UJC Intervenors—Hichez, Carrasco, Acosta—are the named plaintiffs in *Hichez*.  UJC filed a grievance that the *Hichez* lawsuit violated the 2015 MOA (Kirschner Decl. ¶ 11 & Ex. L) and also moved to compel arbitration of the *Hichez* matter, but the trial court denied UJC's motion.  (Kirschner Decl. ¶ 12.)  UJC appealed the trial court's decision, but the First Department affirmed.  (*Id.*)  On or about January 28, 2020, UJC filed a motion for leave to appeal to the New York Court of Appeals—particularly as to a question that the First Department did not squarely confront, which is whether the Arbitrator has authority under the CBA and 2015 MOA to determine the scope of his own jurisdiction.  (*Id.*)  UJC's motion for leave to appeal is still pending, and the case is stayed until the appeal is resolved.  (Kirschner Decl. ¶¶ 12, 17 & Ex. N.)

The fourth UJC Intervenor—Palma—claims to be a pre-MOA putative class member in *Hichez*.  (Mtn. at 2 & 8; Declaration of Dulce Herrera Palma ("Palma Decl.") ¶ 2.)  In her declaration, she claims that she left UJC's employ in 2014.  (*Id.*)  However, UJC's payroll records indicate that Palma was employed by UJC through 2016.  (Declaration of David Sitzer ("Sitzer Decl.") ¶¶ 2–3 & Ex. A.)  Palma appears to have worked and attended trainings, for which she was paid, in December 2015 and well into 2016.  (*Id.*)  Accordingly, UJC continued to employ Palma after UJC and the Union entered into the 2015 MOA.  Therefore, she is not a pre-MOA employee; rather, she is part of a class that does not challenge the Award because she and other similarly situated individuals are subject to arbitration indisputably.

6

### IV.     The Union's January 2019 Grievance and the Arbitration Award

On January 2, 2019, the Union filed a grievance that it described as "a class action grievance on behalf of all of [the Union's] home care bargaining unit members . . . concerning claims that employees were not properly paid on 24-hour cases and with respect to any other outstanding wage and hour claims arising under the Covered Statutes" (the "Grievance").  (ECF No. 101-13.)  The Grievance names upwards of 50 respondents (all of the Respondents in this action) and, according to the Union, the Grievance covers some 100,000 bargaining unit members who are or were employed by those agencies.  (*Id.*)  Counsel for UJC and CPC promptly sent the Grievance to counsel for Proposed Intervenors, who responded that they had already received it.  (Kirschner Decl. ¶ 14 & Ex. M.)  They did not object to the Grievance, claim any harm because of the Grievance or ask any court or the Arbitrator for relief at that time.  (*Id.*)

After the Union filed its Grievance, the Arbitrator commenced the mediation process that is a contractually-mandated precursor to binding arbitration.  (Kirschner Decl. ¶ 15.)  Proposed Intervenors, through the same counsel that represents them in this matter, participated voluntarily in that process throughout 2019.  (*Id.*)  Among other things, counsel scheduled and attended multiple meetings with the Arbitrator (in person, by phone and both jointly with employers and *ex parte*), received discovery from UJC and CPC, and corresponded frequently with counsel for UJC and CPC regarding status, including trying to work with the employers to get more meetings scheduled with the Arbitrator.  (*Id.*)

Despite the parties' efforts, on December 24, 2019, the Arbitrator decided, pursuant to the CBA, to proceed to arbitration, and scheduled a hearing for January 15, 2020.  (ECF No. 101-14.)  In advance of the hearing, the Arbitrator requested briefing from the parties concerning the scope of his jurisdiction.  (*Id.*)  The Arbitrator, plainly aware of the various court proceedings and that some individual employees are represented by non-Union counsel, also sought briefing

on the role of such counsel in the proceeding.  (*Id.*)  The Arbitrator specifically included Proposed Intervenors' Counsel on the communication and invited them to attend the hearing and submit briefs.  (*Id.*)  Proposed Intervenors declined the Arbitrator's invitation to participate in the proceeding.

## ARGUMENT

### I.   AS NONPARTIES TO THE ARBITRATION, PROPOSED INTERVENORS LACK STANDING TO INTERVENE UNDER THE FEDERAL ARBITRATION ACT

"[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing."  *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017).  Thus, the "threshold question" for the Court to consider is whether Proposed Intervenors, as "non-part[ies] to [the] underlying arbitration may intervene in [this] federal proceeding for the purpose of challenging the validity of an arbitration award."  *Eddystone*, 289 F. Supp. 3d at 588.  The FAA provides that a court may challenge an arbitration award "upon the application of any *party* to the arbitration."  9 U.S.C. § 10(a) (emphasis added); *see also Katir v. Columbia Univ.*, 821 F. Supp. 900, 901 (S.D.N.Y. 1993) ("Because [the plaintiff] was not a party to the arbitration, she lacks standing to petition to vacate the Award.").  Thus, "[u]nder the plain terms of the [Federal Arbitration Act], the Proposed Intervenors are foreclosed from challenging the Arbitration Award."  *Eddystone*, 289 F. Supp. 3d at 588 (citing cases).

Proposed Intervenors do not confront this "general rule."  *See id.*  Instead, they rely on a single case—*Ass'n of Contracting Plumbers of City of N.Y., Inc. v. Local Union No. 2 United Ass'n of Journeyman & Apprentices of Plumbing & Pipefitting Indus.* ("*Contracting Plumbers*"), 841 F.2d 461 (2d Cir. 1988)—for the proposition that non-parties are permitted to intervene.  But *Contracting Plumbers* stands for only a "limited exception" to the general rule regarding non-

party intervention into arbitration proceedings, which is not applicable here. *Eddystone*, 289 F. Supp. 3d at 589. Rather, that exception applies only when "foreclosing [intervention] would . . . directly result[ ] in an outcome where the [Proposed Intervenors'] very existence would have been jeopardized." *Id.* (analyzing *Contracting Plumbers*).

*Contracting Plumbers* does not apply here because Proposed Intervenors do not face an existential threat if they cannot intervene in this action. The only "threat" Proposed Intervenors claim to face is that they are "legitimately concerned that CPC and UJC may attempt to weaponize a confirmed award" in other proceedings. (Mtn. at 8.) This is the *exact* same concern that the Court assessed and rejected in *Eddystone*—a case on all fours with the instant motion. *Eddystone*, 289 F. Supp. 3d at 590 ("[T]he Proposed Intervenors contend that they should be allowed to intervene in this action because Eddystone now seeks to weaponize the Arbitration Award against them in [another action].") But in *Eddystone*, as here, that "conjectural or hypothetical" concern was "insufficient to demonstrate an injury in fact because it is 'just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in [another] case.' " *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155, 160 (1990)). Accordingly, the *Eddystone* Court found that the proposed intervenors lacked standing to challenge the award in that case. *Id.* at 591. This Court should do the same.

## II.  PROPOSED INTERVENORS CANNOT MAKE THE REQUISITE SHOWING FOR INTERVENTION AS OF RIGHT UNDER FRCP 24(a)(2)

Though no further analysis is warranted or necessary, even if Proposed Intervenors had FAA standing to intervene, they still cannot meet the requirements for intervention as of right under FRCP 24(a)(2). To establish intervention as of right, Proposed Intervenors must: "(1) file a timely motion; (2) show an interest in the litigation; (3) show that [their] interest[s] may be impaired by the disposition of the action; and (4) show that [their] interest[s] [are] not adequately

protected by the parties to the action." *Id.* at 591 (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001)). "Failure to meet any one of these requirements suffices for a denial of the motion." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197–98 (2d Cir. 2000). Proposed Intervenors cannot meet the first three prongs, at a minimum.

First, the motion to intervene is not timely. Proposed Intervenors calculate the relevant time from the date they "learn[ed] of the Petition." (Mtn. at 6.) That is not the right calculation. What matters is the "length of time the applicant knew or should have known *of [its] interest* before making the motion." *MasterCard Int'l Inc. v. Visa Int'l Servs. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006) (emphasis added); *see also Kamdem-Ouaffo v. Pepsico, Inc.,* 314 F.R.D. 130, 135 (S.D.N.Y. 2016) ("Rule 24(a) requires courts to measure timeliness from the moment when the applicant had actual or constructive notice of its unrepresented interest."). When assessing timeliness, courts also consider prejudice to other parties resulting from the applicant's delay, prejudice to the applicant if the motion is denied, and the presence of unusual circumstances militating for or against a finding of timeliness. *Id.* Courts should take a holistic approach, considering "all of the circumstances surrounding the requested intervention." *Underwood v. State of N.Y. Office of Court Admin.*, No. 78-cv-4382, 1983 WL 504, at *3 (S.D.N.Y. Apr. 29, 1983).

Proposed Intervenors knew about the Arbitration—and their claimed "interest" in same— well before the Union filed its Grievance on January 2, 2019. (*See* Kirschner Decl. ¶¶ 13–14 & Ex. M.) Indeed, they were aware of their interests as far back as 2015 for the CPC Intervenors, and 2017 for the UJC Intervenors, when CPC and UJC, respectively, submitted the underlying claims to the Arbitrator. (Kirschner Decl. ¶¶ 5, 11 & Exs. F & L.) Moreover, for about a year after the Union filed its Grievance, Proposed Intervenors showed their interest in the proceeding

by participating voluntarily in the contractually-mandated mediation process.  (Kirschner Decl. ¶ 15.)  Then, when the Arbitrator declared impasse in the mediation and moved to arbitration proceedings on December 24, 2019, Proposed Intervenors declined the Arbitrator's invitation to participate in those proceedings.  (Kirschner Decl. ¶ 16.)  Now, six months later—and years after they first learned about the Arbitration—Proposed Intervenors want to join the proceedings through this confirmation action.   This substantial delay renders the intervention motion untimely.  *Catanzano v. Wing,* 103 F.3d 223, 232 (2d Cir.1996) (denying intervention when motion was filed 18 months after applicant knew or should have known of his interest in the proceeding); *Butler, Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171, 182 (2d Cir. 2001) (motion to intervene was untimely where intervenor should have known months prior that its interests might not be adequately represented in the action); *Rudolph v. Hudsons Bay Co.*, No. 18-cv-8472, 2019 WL 1416986, at *2 (S.D.N.Y. Mar. 29, 2019) (denying motion to intervene where "the proposed intervenors have been aware of the pendency of this action since its inception but have waited until the filing of a fully-briefed motion to dismiss to speak up . . . a delay of nearly nine months renders the motion untimely"); *In re Holocaust Victim Assets Litig.*, 225 F.3d at 199 (eight-month delay untimely).

The delay also is prejudicial to UJC and CPC.  Both organizations have relied on the fact that briefing on the subjects covered by the Award were closed and that all related parties who wished to participate, including other plaintiffs' counsel, had done so.  Now UJC and CPC must contend with Proposed Intervenors converting what should be a "straightforward proceeding[ ]" into something prolonged and complicated.  *Eddystone*, 289 F. Supp. 3d at 595.  Conversely, there is no prejudice to Proposed Intervenors by denying their motion—they have made their

choice by participating and withdrawing from the Arbitration proceedings unilaterally over the last several years.

Second, Proposed Intervenors cannot establish an interest in the Petition sufficient to intervene or that such an interest would be impaired.  "[T]he word 'interest' as it is used in Rule 24(a) has been construed very narrowly. In order to intervene as of right, the [Proposed Intervenors], in addition to satisfying the other requirements, must advance a concern that is 'direct, substantial, and legally protectable.'  Put another way, '[a] Rule 24 interest must be significantly protectable and direct as opposed to remote or contingent.'" *Patton Boggs LLP v. Chevron Corp.*, No. 12-cv-9176, 2016 WL 7156593, at *6 (S.D.N.Y. Dec. 7, 2016) (citations omitted).  As stated, Proposed Intervenors' sole stated interest is in preserving the strength of claims pending in other forums.  (Mtn. at 6.)  This is not sufficient for intervention.  *See Eddystone*, 289 F. Supp. 3d at 592–93 ("The Proposed Intervenors' apparent interest, as best this Court can discern, is the right to challenge the Arbitration Award because confirmation of such award will adversely affect their ability to mount a defense in [another action]. . . .  But that winding articulation of the Proposed Intervenors' interest merely underscores its contingent and remote nature."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 550 B.R. 241, 250 (Bankr. S.D.N.Y. 2016) (the mere fact that an adverse judgment would arguably impair intervenor's ability to defend other actions brought against them does not satisfy the "interest" requirement for intervention).  Rather, Proposed Intervenors' interest is "contingent upon the occurrence of a sequence of events before it becomes colorable"—namely, it does not "crystallize" until some other court holds that a confirmed Award here adversely affects Proposed Intervenors' claims in that other forum. *See Eddystone*, 289 F. Supp. 3d at 593 (quoting *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec.,*

922 F.2d 92, 97 (2d Cir. 1990) and *Compagnie Noga D'Importation et D'Exportation S.A. v. The Russian Federation*, No. 00-cv-0632, 2005 WL 1690537, at *4 (S.D.N.Y. July 20, 2005)); *see also Friends of East Hampton Airport, Inc. v. Fed. Aviation Admin.*, No. 15-cv-0441, 2016 WL 792411, at *5 (E.D.N.Y. Feb. 29, 2016) ("contingency weighs against a finding that the [proposed intervenor's] interest in this action is 'direct'").  Since Proposed Intervenors' stated interest "is dependent upon a court ruling on an ancillary legal issue" it is "too attenuated to warrant intervention."  *Id.* (quoting *Tymoshenko v. Firtash*, No. 11-cv-2794, 2011 WL 5059180, at *2 (S.D.N.Y. Oct. 19, 2011)); *see also Katz v. Berisford Int'l PLC*, No. 96-cv-8695, 2000 WL 1760965, at *5 (S.D.N.Y. Nov. 30, 2000) ("The possibility that a party will establish an interest in a judgment through a pending lawsuit in another court is a contingent interest.").

Third, even if Proposed Intervenors could establish an interest worthy of intervention, they cannot show that this proceeding may impair it.  The "hypothetical effect of an adverse judgment on any rights that the Proposed Intervenors may have against [CPC or UJC] . . . is not the type of practical impairment contemplated by Rule 24(a)(2)."  *Eddystone*, 289 F. Supp. 3d at 594 (quoting *Union Switch & Signal Inc. v. St. Paul Fire & Marine Ins. Co.*, 226 F.R.D. 485, 488 (S.D.N.Y. 2005)).  If this Court grants the Petition, it "will not constrain [Proposed Intervenors] from vigorously asserting" in their other actions that their claims are not arbitrable.  *See id.*  Thus, whether and to what extent a confirmation of the Award has a preclusive effect is a matter to be decided by other courts—it is not a factor bearing on intervention.  *Id.*

The speculative nature of Proposed Intervenors' claimed "interest" in this proceeding is further underscored by their individual circumstances:

1.      Hichez, Carrasco and Acosta—the three UJC Intervenors who are also the named plaintiffs in the *Hichez* action.  The Arbitrator expressly held in the Award that they will not be

bound by the Arbitration (ECF No. 105-3 at 44)—thus there is no chance, not even a theoretical one, that their court claims will be impacted by the Award.  Incredibly—and tellingly—they omit this crucial fact from their brief.  It is fatal to their motion.  Since they cannot be actually or even theoretically harmed, they have suffered no injury in fact that can be redressed by a favorable decision from this court—in short, they lack any Article III standing.  *Town of Chester*, 137 S. Ct. at 1650; *Schulz v. Williams*, 44 F.3d 48, 52 (2d Cir. 1994) ("To suffer a judicially cognizable 'injury in fact' an intervenor must have a 'direct stake in the outcome of a litigation' rather than 'a mere interest in the problem.'") (citations omitted); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (an Article III interest must be legally protected, that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical", which means it "must actually exist," that is, it must affect the party in a personal and individual way).

       2.      Proposed Intervenors in a footnote argue that that as "prospective class representatives" they "have a right to protect the interests of other former employee class members who they represent."  (Mtn. at 7 n. 2.)  That is not the law.  A purported class representative may not obtain relief on behalf of a putative class until a class is certified.  *See Astil v. Kumquat Props., LLC*, 125 A.D.3d 522, 523 (1st Dep't 2015) ("[W]hen a class is not certified, unnamed plaintiffs are not subject to res judicata effects of judicial decisions pertaining to the class."); *cf. Jones-Bartley v. McCabe, Weisberg & Conway, P.C.*, 59 F. Supp. 3d 617, 638 (S.D.N.Y. 2014) (where a class has not been certified by a federal court, "there can be no class under Rule 23 . . . with the result being that the unnamed class members are not part of the action").  Indeed, in the *Hichez* matter, the UJC Intervenors sought injunctive relief on behalf of themselves and the putative class and the court denied any relief on behalf of putative class members.  (Kirschner Decl. Ex. L.)  Further, Proposed Intervenors' claimed interest in protecting

their putative class members' interests is not just speculative, but *doubly* so, as it is based on not one, but two contingencies: that a court would give preclusive effect to a confirmed Award *and* that it will certify a class.  An "interest . . . based upon a double contingency . . . cannot be described as direct or substantial" and therefore cannot support intervention. *Washington Elec.*, 922 F.2d at 97.

3.      Proposed Intervenor Palma, whose motion to intervene is based on her claim that she is part of the uncertified putative class that left UJC before the 2015 MOA, and her preference to have her claims litigated in court rather than by the Union in arbitration.  (Palma Decl.)  Palma, however, is not part of pre-MOA class as she claims.  UJC's employment records show that Palma worked for and attended paid trainings at UJC into 2016, well after the effective date of the 2015 MOA.  (Sitzer Decl. ¶¶ 2–3 & Ex. A.)  Since there is no question that the 2015 MOA applies to everyone who was employed by UJC as of December 1, 2015 (*see* Kirschner Decl. Exs. F & G), Palma's basis for seeking intervention is not just speculative—it is nonexistent.

4.      CPC Intervenors are not even party to an active litigation as to their wage-hour claims against their former employer, CPC.  In 2017, their claims in *Chu* were stayed, and in 2019 dismissed without prejudice, pending the outcome of the Arbitration.  (Kirschner Decl. ¶¶ 6–7 & Exs. H & I.)  Earlier this year CPC Intervenors asked to reinstate their case, but the court denied the motion on February 25, advising them instead to file a new claim with a redefined putative class if they wished to proceed which they failed to do.  (Kirschner Decl. ¶ 8 & Ex. J.)  The CPC Intervenors, therefore, attempt to establish an interest in intervention based on the theory that *if* they file a new claim, that claim may be impaired by this Award *if* the judge in their

new claim accepts it as having preclusive effect.  For reasons already discussed, this contingent and attenuated interest does not support intervention.

## III.    PERMISSIVE INTERVENTION IS NOT WARRANTED

Proposed Intervenors argue in the alternative that the Court should grant them leave to intervene under FRCP 24(b), which allows permissive intervention to anyone who, on a timely motion, "has a claim or defense that shares with the main action a common law or fact." Whether to permit intervention is wholly within the discretion of the trial court, and the "principal consideration . . . is whether the intervention will unduly delay or prejudice the application of the rights of the original parties."  *Eddystone*, 289 F. Supp. 3d at 595 (quotations and citations omitted).   However, "the considerations that render [a proposed intervenor] ineligible for intervention as of right . . . militate strongly as well against granting permissive intervention under Rule 24(b)."  *Id.* (quoting *State Comm. of Independence v. Berman*, No. 03-cv-4123, 2003 WL 22801908, at *1 (S.D.N.Y. Nov. 21, 2003)).

As a threshold matter, for reasons already stated, Proposed Intervenors' motion is not timely, and therefore Rule 24(b) does not apply.   Again, they have had their same asserted interest in the Arbitration since even before January 2019, yet declined to formally appear until now, some 18 months later.  (*See supra* at 11–12.)

But even if the motion were timely, Proposed Intervenors' "inchoate fear that any judgment confirming the Arbitration Award may be enforced against them" in other proceedings "does not warrant permissive intervention."  *Eddystone*, 289 F. Supp. 3d at 595.  Permissive intervention also should be rejected because an action like this "to confirm [an] arbitration award[ ] . . . is [a] straightforward proceeding in which no other claims are to be adjudicated." *Id.* (quoting *Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2d Cir. 1987)).  It is a "summary proceeding that merely makes what is already a final arbitration award a judgment of the court."

*Id.* (quoting *Ottley*, 819 F.2d at 377).   "Inviting non-parties to this arbitration confirmation proceeding, whose interests are conditioned on the outcome of a separate pending action . . . , would unduly delay what is otherwise supposed to be a straightforward action." *Id.* (citing *Washington Elec.*, 922 F.2d at 97); *see also Union Switch,* 226 F.R.D. at 491 (denying motion for permissive intervention to avoid "unduly delaying the adjudication of the rights of the original parties . . . [and] highly complex litigation").

## CONCLUSION

Accordingly, the Court should deny Proposed Intervenors' motion to intervene.

Dated:          New York, New York                    Respectfully submitted,
                July 10, 2020

                                                        /s/  Kenneth Kirschner
                                                       Kenneth Kirschner, Esq.
                                                       David Baron, Esq.
                                                       HOGAN LOVELLS US LLP
                                                       390 Madison Avenue
                                                       New York, New York 10017
                                                       Tel.: (212) 918-3000
                                                       Fax: (212) 918-3100
                                                       kenneth.kirschner@hoganlovells.com
                                                       david.baron@hoganlovells.com
                                                       *Attorneys for UJC and CPC*