# Levy Ratner

**Attorneys**

| | | |
|---|---|---|
| Daniel J. Ratner | Robert H. Stroup | Kimberley A. Lehmann* |
| Gwynne A. Wilcox* | Dana E. Lossia* | Aleksandr L. Felstiner |
| Pamela Jeffrey | Micah Wissinger | Jessica I. Apter* |
| Carl J. Levine* | Ryan J. Barbur | Rebekah Cook-Mack |
| David Slutsky* | Alexander Rabb | Courtney L. Allen |
| Allyson L. Belovin | Laureve D. Blackstone* | |

Attorneys at Law
80 Eighth Avenue, 8th Floor
New York, NY 10011-7175

o   212.627.8100
f   212.627.8182
levyratner.com

**Of Counsel**

Irwin Bluestein
Patricia McConnell
Linda E. Rodd

**Special Counsel**

Richard A. Levy
Daniel Engelstein
Richard Dorn

December 7, 2020

**BY ECF**

Hon. John G. Koeltl
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

        Re:        **1199SEIU United Healthcare Workers East v. PSC Community Services, et al., 20-cv-03611 (JGK)**

Dear Judge Koeltl:

      This firm represents petitioner 1199SEIU United Healthcare Workers East ("1199" or "Union") in the above-referenced matter. Pursuant to the Court's November 24, 2020 Order, we submit this supplemental briefing to address the Court's specific questions set forth in the Order.

      In this proceeding, the Union seeks an order confirming an Arbitration Award issued by Arbitrator Martin Scheinman ("Award") affecting more than 100,000 current and former home care employees represented by the Union. ECF 1-1 (Award). The Union's grievance concerns claims which arose during bargaining unit members' employment and which are governed by a broad grievance and arbitration provision in the CBA. The Award, a final adjudication of gateway issues in the arbitration, draws its essence from the parties' collective bargaining agreements, sets forth a clear justification and rationale for the Arbitrator's conclusions, and therefore should be confirmed by this Court. In considering the Union's petition, the Court's review is "narrowly circumscribed and highly deferential" limited to "ensur[ing] that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" Nat'l Football League Mgt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 532 (2d Cir. 2016) (internal citations omitted).

      The Arbitrator held that the Union's 2019 class action grievance involving current and former bargaining unit members, including those claims arising under federal, state and local law were arbitrable based on the broad arbitration clause in the CBA. Award at 33 [ECF 1-1]. Further, the Arbitrator held that Article XXVI of the CBA authorized the Arbitrator to determine <u>all</u> disputes ". . . involving the proper application, interpretation or compliance with the specific

written provisions of the Agreement …" and vested the Arbitrator with ". . . full authority to decide the issue or issues in dispute . . ." Id.  The Arbitrator made special note of the evolution of the CBA from the 2012 provision providing that all grievances would be resolved by arbitration in accordance with the AAA Labor Arbitration Rules, to the 2014 MOA where the parties agreed to meet and negotiate for alternative dispute resolution of statutory wage and hour claims, to the 2015 MOA where the parties agreed on final language for resolution of statutory wage and hour claims.  Award at 34.  The 2014 and 2015 MOAs did not erase or excise any prior contractual language. Id. at 35.  Those MOAs simply were "negotiated and refined over time by the parties themselves so as to best reflect their priorities, expectations, and experience," Nat'l Football League Mgt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016), and, thus, the Arbitrator concluded that the parties intended all grievance arbitrations, including the pending grievance, to be conducted pursuant to the AAA Labor Arbitration Rules, including the grant of authority to an arbitrator to determine arbitrability of claims encompassed by the grievance.  Award at 36.

A number of persons seek to intervene in this proceeding for the purpose of moving to dismiss and/or stay the Petition to Confirm, but cannot meet the standard for either mandatory or permissive intervention.  See 1199 Opp'n to Intervention Mot. [ECF 108] at § I at p. 4-6.  Three of the proposed eight intervenors (Seferina Acosta, Carmen Carrasco, and Dulce Herrera Palma) were employed at the time the relevant Memorandum of Agreement ("MOA") took effect, the MOA was executed and/or the time 1199 began the grievance process at issue here.  See Decl. of Laureve Blackstone, dated Dec. 7, 2020, at ¶¶ 4(a), (c), and (f).   Three more of the proposed eight intervenors (Mei Kum Chu, Sau King Chung, and QunXiang Ling) have already had their claims compelled to arbitration by a federal court.  See 1199 Opp'n to Intervention Mot. [ECF 108] at § I.B at p. 6-8.  Proposed intervenor Epifania Hichez has been excluded from the Award by the Arbitrator. See id. at 3-4.  Finally, proposed intervenor Gail Yan has no standing to challenge the award as she was not a party to the arbitration proceeding to which the Union is a party. Id. at 9-10.

Court Question #1.  For each individual intervenor, a brief answer to the factual question of whether the individual was a member of the 1199SEIU at the time (A) the relevant MOA took effect, (B) the MoA was executed, and/or (C) at the time 1199SEIU began the grievance process at issue here.[1]

---

[1] While the Union is not party in the related cases of Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corp., 20-cv-3929 (JGK) and Alvarado v. Alliance for Health, Inc., 20-cv-3930 (JGK), the Court has asked the identical question about the named plaintiffs in those cases.  Since the Union is the party with such information, the Union provides it here.  It should be noted, however, that that plaintiffs in those cases (represented by the same counsel as Gail Yan and in an extraordinary

contradiction of positions) are seeking to vacate the same Award they claim in this proceeding is not final for purposes of confirmation. Further, the plaintiffs have no standing to move to vacate the Award, as they were not parties to the arbitration proceeding in which the Union and Employers are parties. Moreover, even if they had standing, the court's role is extremely limited on a petition to confirm and neither the Guzman or Alvarado plaintiffs have asserted any valid basis for vacatur of the Award. See 9 U.S.C. § 10 (listing bases for vacatur including, inter alia, where the award was procured by corruption, fraud, undue means, evident partiality or corruption, misconduct, and where an arbitrator exceeded their powers). Of the Guzman plaintiffs, one was a bargaining unit member at the time the relevant MOA took effect, when it was executed, and when the grievance was filed, January 2, 2019. See Blackstone Decl. ¶ 4(k).

With respect to the named plaintiffs in Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corp., 20-cv-3929 (JGK):

(i) Alvaro Ramirez-Guzman was a bargaining unit member at the time the relevant MOA took effect, December 1, 2015, when it was executed, April 6, 2016, and when the grievance was filed, January 2, 2019. See Blackstone Decl. ¶ 4(k).

(ii) Leticia Panama Rivas was not a bargaining unit member at the time the relevant MOA took effect, when it was executed, or when the grievance was filed. See Blackstone Decl. ¶ 4(j).

(iii) Elida Agustin Mejia Herrera was not an 1199 bargaining unit member at the time the relevant MOA took effect, when it was executed or when the grievance was filed. See Blackstone Decl. ¶ 4(i).

With respect to the named plaintiff in Alvarado v. Alliance for Health, Inc., 20-cv-3930 (JGK):

Eugenia Barahona Alvarado was not an 1199 bargaining unit member at the time the relevant MOA took effect, when it was executed or when the grievance was filed, but was a bargaining unit member after the grievance was filed and at the time the Award was issued. See Blackstone Decl. ¶ 4(b).

LEVY RATNER, P.C.

Hon. John G. Koeltl
December 7, 2020
Page 4

The Union provides the following responses:

Proposed intervenor Seferina Acosta <u>was</u> a bargaining unit member at the time the relevant MOA took effect, December 1, 2015, and when it was executed, December 21, 2015. <u>See</u> Blackstone Decl. ¶ 4(a).

Proposed intervenor Carmen Carrasco <u>was</u> a bargaining unit member at the time the relevant MOA took effect, December 1, 2015, when it was executed, December 21, 2015, and when the grievance was filed, January 2, 2019. <u>See</u> Blackstone Decl. ¶ 4(c).

Proposed intervenor Mei Kum Chu <u>was not</u> an 1199 bargaining unit member at the time the relevant MOA took effect, when it was executed, or when the grievance was filed. <u>See</u> Blackstone Decl. ¶ 4(d).

Proposed intervenor Sau King Chung <u>was not</u> an 119f9 bargaining unit member at the time the relevant MOA took effect, when it was executed, or when the grievance was filed. <u>See</u> Blackstone Decl. ¶ 4(e).

Proposed intervenor Dulce Herrera Palma <u>was</u> a bargaining unit member at the time the relevant MOA took effect, when it was executed, and when the grievance was filed. <u>See</u> Blackstone Decl. ¶ 4(f).

Proposed intervenor Epifania Hichez <u>was not</u> an 1199 bargaining unit member at the time the relevant MOA took effect, when it was executed or when the grievance was filed. <u>See</u> Blackstone Decl. ¶ 4(g).

Proposed intervenor QunXiang Ling <u>was not</u> an 1199 bargaining unit member at the time the relevant MOA took effect, when it was executed or when the grievance was filed. <u>See</u> Blackstone Decl. ¶ 4(h).

Proposed intervenor Gail Yan <u>was not</u> a bargaining unit member at the time the relevant MOA took effect, when it was executed, or when the grievance was filed. <u>See</u> Blackstone Decl. ¶ 4(l).

<u>Court Question #2</u>. The <u>three</u> cases which the parties assert best support their respective arguments regarding whether 1199SEIU may properly represent and bind its members with the grievance and arbitration process, who were not employees at the time the MoA was either executed or took effect.

(i) <u>Nat'l Football League Mgt. Council v. Nat'l Football League Players Ass'n</u>, 820 F.3d 527, 532, 536 (2d Cir. 2016) (reversing a district court order vacating an arbitration award and noting the basic and well established principle that a federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential and that a court's role is not to second-guess the arbitrator's rulings, but simply ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the

plain language of the contract.' "Our review of an arbitration award under the [Labor Management Relations Act] is, accordingly, 'very limited. . . .' We are therefore not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement, but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement. Because it is the arbitrator's view of the facts and the meaning of the contract for which the parties bargained, courts are not permitted to substitute their own. . . It is the arbitrator's construction of the contract and assessment of the facts that are dispositive, 'however good, bad, or ugly.') (internal citations omitted).

The Arbitrator has already determined that 1199 may properly represent its bargaining unit members with respect to the Union's grievance. Consistent with established Second Circuit precedent, this Court's review of the Award is very limited. The question before this Court is simply whether the arbitrator acted within the scope of his authority and did not ignore the plain language of the CBA.

(ii) Frontier Commc'ns of New York v. Int'l. Brotherhood of Elec. Workers, No. 07-cv-10327 (GEL), 2008 WL 1991096, at *3 (S.D.N.Y. May 6, 2008) (holding that a union has a right to enforce its contract through arbitration on its own behalf, even if the benefit would accrue to a third party (separate and apart from whether it may enforce its contract on behalf of bargaining unit members). "To say that a union may negotiate a term but is powerless to enforce it is to severely undermine one of the core reasons workers elect to organize in the first place. A 'union's efforts in ensuring employer compliance with all of the terms of a collective bargaining agreement are a significant consideration for the active employees when choosing to retain the union as their exclusive bargaining representative.' . . . As the party that bargained for the CBA on its members' behalf, [the union] has significant institutional interests in seeing that the terms of that agreement are enforced.")

1199 has a right and significant institutional interest in enforcement of its CBA through a grievance seeking to adjudicate wage and hour violations arising during bargaining unit members' employment. Individual bargaining unit employees cannot veto the Union's exercise of its authority to enforce the CBA on its own behalf and thereby interfere with the Union's status as exclusive bargaining agent pursuant to Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a).

(iii) Merk v. Jewel Companies, Inc., 848 F.2d 761, 766 (7th Cir. 1988) (Easterbrook, J.) (suggesting that employees may assent, through a CBA, to their union acting as their agent to resolve all disputes arising out of the CBA, and such assent should be implied from the presence of a broad arbitration clause, that is, one that empowers the union to arbitrate all contractual claims of current and former employees).

In 2012, bargaining unit members, including all of the proposed intervenors, gave the Union broad authority as their exclusive agent to resolve all claims of current and former employees. In his Award, the Arbitrator recognized that grant of broad authority with no

temporal limitation permitting the Union to pursue claims which arose before the adoption of the 2015 MOA.

Court Question #3. A comprehensive list of every state court case brought by employees against Respondents addressing related claims, which reached a final judgment, prior to filing of the Petition in 1199SEIU, and courtesy copies of such judgments. The parties should clearly state their position on whether each case would be the basis for a claim of issue preclusion, claim preclusion, or the Rooker-Feldman doctrine.

The Union is not a party to any state court case brought by employees against Respondents addressing related claims and is unaware of any such case which has reached a final judgment. Because the Union is not a party to any such case, the would-be intervenors could not assert issue preclusion, claim preclusion, or the Rooker-Feldman doctrine against the Union on the basis of any final judgment that might be entered in such a case.

Court Question #4. The three cases which the parties assert best support their respective arguments regarding whether the Award is sufficiently ripe and final for review.

(i) Trade & Transport, Inc. v. Natural Petroleum Charterers Inc., 931 F.2d 191, 195 (2d Cir. 1991) (holding that it is the submission by the parties that determines the scope of the arbitrators' authority and if the parties agree that arbitrator is to make a final award as to only a part of the dispute, the arbitrator has authority (and responsibility) to do so, and such an award is final within the meaning of 9 U.S.C. § 10(a)(4)).

Here, in an industry-wide arbitration involving dozens of employers and tens of thousands of bargaining unit members, the parties determined that the arbitrator should decide what wage and hour claims are arbitrable before proceeding to the merits, and the Arbitrator fulfilled that assignment. "[T]he parties hav[ing] asked the arbitrator[] to make a final partial award as to a particular issue and the arbitrator[] hav[ing] done so, the arbitrator[] ha[s] no further authority, absent agreement by the parties, to redetermine that issue." Id. at 195.

(ii) Corp. Printing Co. v. N.Y. Typographical Union No. 6, No. 93 Civ. 6796 (Sotomayor, J.), 1994 WL 376093, at *4 (S.D.N.Y. July 18, 1994) (holding that if parties agree to submit part of dispute, with intent that decision be final determination on issue submitted, arbitrator has authority and responsibility to issue final, albeit interim award).

Here, the parties specifically bifurcated jurisdiction and arbitrability and submitted that portion of their dispute to the Arbitrator for immediate resolution.

(iii) Ward v. Ernst & Young, LLP, No. 19 Civ. 6667 (Koeltl, J.), 2020 WL 3428162, at *6 (S.D.N.Y. June 23, 2020) (holding that award was not final because the panel explicitly stated that it may still revisit the ruling thereby making clear that the order was neither final nor subject to judicial review). Here, the arbitrability issue resolved in the Award is not subject to

LEVY RATNER, P.C.

Hon. John G. Koeltl
December 7, 2020
Page 7

revisitation by the Arbitrator.  The Arbitrator thus made a final, binding ruling with respect to what claims are arbitrable.

    1199 respectfully requests that this Court grant the petition to confirm and deny the pending motions to intervene and dismiss and/or stay this proceeding.

Respectfully,
*/s Laureve Blackstone*
Laureve Blackstone

Cc:  All Counsel of Record via ECF

1-000-00464: 11186760