UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 1199SEIU UNITED HEALTHCARE WORKERS EAST,<br><br>   Petitioner,<br><br> -against-<br><br>PSC COMMUNITY SERVICES, NEW PARTNERS, INC. D/B/A PARTNERS IN CARE, *et. al.*<br><br>   Respondents. | Case No.: 20-cv-3611 (JGK) |

### PROPOSED INTERVENORS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO INTERVENE AND DISMISS OR STAY

Michael Taubenfeld
FISHER TAUBENFELD LLP
225 Broadway, Suite 1700
New York, NY 10007
Telephone: (212) 571-0700
Facsimile: (212) 505-2001


Tito Sinha
TAKEROOT JUSTICE
123 William Street, 16th Floor
New York, NY 10038
Telephone: (212) 810-6744
Facsimile: (212) 619-0653

*Attorneys for Proposed Intervenors*

Along with TakeRoot Justice, we represent Mei Kum Chu, Sau King Chung, Qun Xiang Ling, Epifania Hichez, Carmen Carrasco, Seferina Acosta, and Dulce Herrera Palma, proposed intervenors ("Proposed Intervenors"), in this matter. Proposed Intervenors are named plaintiffs and a putative class member in two state court proceedings against two Respondents in this matter, Chinese-American Planning Council Home Attendant Program ("CPC") and United Jewish Council of the East Side Human Attendant Service ("UJC") (CPC and UJC are collectively the "Agencies"). Intervenors submit this letter in compliance with the Court's November 24, 2020 order, which directed the parties in this action to file supplementing briefing addressing four issues.

1. **None of the Proposed Intervenors, Except Herrera Palma, Were Employed By Their Defendant Agency When The MOA Was Executed or When the Union Filed a Class Grievance in January 2019.**

Only Ms. Herrera Palma was employed after the MOA was executed by the agency she has claims against. Each of the other Proposed Intervenors ceased working for their respective agencies prior to the MOA's execution in December 2015.[1] Regarding union status, the following Proposed Intervenors ceased being 1199 members prior to the MOA being executed: Chu, Chung, Ling, Hichez, and Acosta who all retired prior to December 2015, when the MOAs for CPC and UJC came into effect. Ms. Carrasco appears to worked for other 1199-affliated agencies after December 2015, as well as in January 2019 when the Union filed its class grievance.

---

[1] The Union appears to have records indicating that Mses. Acosta and Carrasco worked for UJC after 2015, but neither of them did so. UJC also does not claim that they worked for it after the MOA's execution. Nevertheless, because so many other intervenors stopped working prior to the MOA's execution, the factual dispute should not affect any of the outstanding motions.

1

Further, we are attaching a declaration from Maria Diaz who stopped working for UJC in 2012, well before the MOA's execution, and wishes to intervene in this matter in the place of Ms. Herrera Palma. She also did not work for any other 1199-affiliated agencies after November 2015. See, Diaz Decl. As the court may recall, in Proposed Intervenors' reply, they requested permission to substitute another Proposed Intervenor in place of Ms. Herrera Palma. DE 127, p. 8. Ms. Diaz wishes to serve that role.

2. **Cases Establishing that 1199 Could Not Bind Individuals Who Were No Longer Employed Who Were Not Employed When the MOA Was Executed or Took Effect.**

As noted in Proposed Intervenors' earlier briefing, the overwhelming weight of case law is that the MOA does not bind individuals who were no longer employees of CPC and UJC as of December 1, 2015 when the MOA came into effect. Each proposed Intervenor either worked for UJC or CPC and courts have held in both cases that employees who stopped working for the agency before the MOA was signed or came into effect cannot be compelled to arbitrate. In Hichez v. United Jewish Council of the E. Side, 179 A.D.3d 576, 117 N.Y.S.3d 214 (N.Y. App. Div. 2020), the Appellate Division held that the plaintiffs did not have to arbitrate because plaintiffs "were no longer defendant's employees when [the MOA] was executed, they were not parties to that agreement, and there is no evidence that the Union was authorized to proceed on their behalf." Hichez, 179 A.D.3d at 577. Similarly, in Chu v. Chinese-American Planning Council Home Attendant Program, Inc., 194 F.Supp.3d 221, 228 (S.D.N.Y. 2016), Judge Forrest found that the plaintiffs did not have to arbitrate under the MOA because "plaintiffs may not be bound by subsequently adopted amendments to a collective bargaining agreement to which they were not parties." Chu, 194 F. Supp. 3d at 228. Importantly, Judge Forrest also noted that past members must explicitly or implicitly authorize a union to act on its behalf, and there is no

2

evidence that anyone authorized the Union to negotiate the MOA on its behalf.  Id. (citing Meza v. Gen. Battery Corp., 908 F.2d 1262, 1271 (5th Cir.1990)).

The Second Circuit took the same position in Agarunova v. Stella Orton Home Care Agency, Inc., 794 F. App'x 138 (2d Cir. 2020).  Like Proposed Intervenors, the plaintiff was employed by a homecare agency that entered into a virtually identical MOA with 1199 that CPC and UJC signed.  Nevertheless, the court denied the homecare agency's motion to compel arbitration since the plaintiff "was not bound to arbitrate her statutory claims by the 2015 MOA because she was no longer an employee nor represented by the union as of December 16, 2015, the date of the signing of the 2015 MOA."  Agarunova, 794 F. App'x at 140.

All Proposed Intervenors (except for Herrera Palma) and Ms. Diaz ceased working for UJC or CPC before the MOA was signed or came into effect.  And as the courts above all noted, there is no evidence that 1199 had any authority to negotiate the MOA on behalf of its former employees. 1199 has not even argued that it was authorized to negotiate on behalf of its former members who stopped working for UJC or CPC before the MOA's execution.  And there is certainly no evidence that 1199 was authorized to negotiate on behalf of Proposed Intervenors Chu, Chung, Ling, Hichez, and Acosta or Ms. Diaz who never worked for a 1199-affilated agency after the MOA came into effect.  Accordingly, 1199 could not bind individuals who stopped working for CPC or UJC prior to the MOA's execution.

### 3. Preclusion Principles Bar Confirmation of the Award.

Proposed Intervenors rely on Gail Yan's supplemental briefing for this Question.

### 4. The Award is Not Final and Cannot be Confirmed.

As Ms. Yan amply argued in her initial filings, the Award is not final and therefore the Court cannot confirm it because the Court lacks jurisdiction to do so.  In Mason Tenders Dist.

Council of Greater New York & Long Island v. CAC of New York, Inc., 46 F. Supp. 3d 432 (S.D.N.Y. 2014), the union petitioned the court to confirm an award on liability but not damages. Judge Ramos determined that the court lacked jurisdiction to confirm the award because it was not a final and binding award under the LMRA and therefore dismissed the case. Mason Tenders Dist. Council of Greater New York & Long Island, 46 F. Supp. 3d at 436.

Crucially, awards that do not resolve all issues are usually not final, and particularly interim awards that only determine arbitrability are not final. Schreiber v. Friedman, No. 15CV6861CBAJO, 2017 WL 5515853, at *3 (E.D.N.Y. Mar. 30, 2017). In Schreiber, the parties moved to confirm and cross-moved to vacate two opposing arbitration awards regarding whether they had to proceed in rabbinical arbitral proceedings instead of court. Although both parties argued that the awards were final because the awards determined the only issues submitted to the arbitrators, the court found that because the parties had also submitted issues relating to liability and damages, but the rabbinical arbitral panels did not determine any of those issues, the awards were not final. Schreiber, 2017 WL 5515853, at *4. The court also noted that the parties did "not cite—and the Court [was] not aware of—any case in which a court has reviewed an arbitrator's arbitrability determination as a final award." Id. at *3.

Similarly here, the Arbitrator decided the threshold issue of who had to arbitrate but did not decide any substantive matters regarding liability or damages. 1199 acknowledges that the arbitrator must still determine all liability and damages issues. And like the parties in

4

Schreiber, the Union failed to identify a single case in any court in this country where a court confirmed an arbitrability award.[2]

This Court has also found that preliminary gatekeeping matters are not final. In Ward v. Ernst & Young U.S. LLP, 468 F. Supp. 3d 596, 598 (S.D.N.Y. 2020), the plaintiff filed a demand for arbitration for employment discrimination. The parties disagreed about which party should pay the arbitrator fees and submitted the dispute to the panel. The panel determined that the fees should be split by the parties but left open the possibility of revisiting that ruling. The plaintiff then filed a declaratory action proceeding in court, requesting that the court find arbitration provision invalid. This Court declined to do so because the fee determination was not a final determination. First, this Court held that because the panel may revisit its determination, it was not final. Ward, 468 F.Supp. 3d at 604. In addition, it found that "an order allocating fees is

---

[2] In its memorandum of law, the Union attempts to distinguish Schreiber by claiming that "Schreiber dealt with whether a party could proceed in secular court, in order to preserve the rights of the moving party, after another party failed to submit to the jurisdiction of a rabbinical court." DE 112, p. 8. By that just is another way of saying that the parties sought to confirm or vacate dueling decisions about whether they had to proceed via arbitration, through the rabbinic panels, or could proceed to court. The Schreiber court therefore correctly characterized the parties' request to confirm or vacate the awards as a request to confirm or vacate an arbitrability award. The Union also claims that in Schreiber the parties did not consider the award final and refused to even participate in some of the rabbinic proceedings. But both parties in Schreiber did consider the award final, Id. at *4, and the Award itself refers repeatedly describes itself as preliminary or gateway. [Ex. N, pp.,7, 9, 14, 22, 32, 45, 46; see also Ex. M, p.2].

simply a procedural mechanism to ensure that the arbitration can happen at all" rather than a determination on the merits. Id. at 605.

Similarly, here, as noted in Ms. Yan's reply memorandum of law, the Arbitrator left open the possibility of modifying his preliminary order to exclude additional plaintiffs and has already done so as more courts determine that pre-MOA employees are not required to arbitrate under the MOA. DE 125, pp. 3-5. For example, on May 27, 2020 the Arbitrator modified the Award to exclude Eugenia Alvarado, a named plaintiff in a case against one of the Respondents in this proceeding. Finally, the Award was merely "a procedural mechanism to ensure that the arbitration can happen at all" and did not determine liability or damages. Ward, 468 F.Supp. 3d at 605. Accordingly, the Court should dismiss the petition for lack of jurisdiction.

## CONCLUSION

While Proposed Intervenors do not believe intervention is required because non-parties can raise the issues set forth in the Yan Motion to Dismiss, in the event intervention is required to raise these arguments, intervention either by right or permission is proper and should be granted.

Dated: New York, New York
       December 7, 2020

                                        Respectfully submitted,

                                         /s/
                                        Michael Taubenfeld
                                        S. Tito Sinha
                                        Counsel for Proposed Intervenors