UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

1199SEIU UNITED HEALTHCARE WORKERS
EAST,                                           20-cv-3611 (JGK)

                              Petitioner,       MEMORANDUM OPINION
                                                AND ORDER
         - against -

PSA COMMUNITY SERVICES, ET AL.,

                              Respondents.

_____

JOHN G. KOELTL, District Judge:

     In this action, 1199SEIU United Healthcare Workers East

(the "Union") filed a petition to confirm an arbitration award

under Section 301 of the Labor Management Relations Act of 1947

(the "LMRA"). The award, issued on April 17, 2020 (the "Award"),

was rendered pursuant to collective bargaining agreements (the

"CBAs") between the Union and the respondents, a group of home

care agencies. In an Opinion and Order dated February 19, 2021,

this Court confirmed the Award and denied motions of former

employees of certain respondents to intervene and to dismiss the

Union's petition or stay the action. See 1199SEIU United

Healthcare Workers E. v. PSC Cmty. Servs., 520 F. Supp. 3d 588

(S.D.N.Y. 2021) (the "Confirmation Order").

     Two respondents, Family Home Care of Brooklyn and Queens,

Inc. and Care at Home (together, the "Movants"), now seek a

preliminary and/or permanent injunction enjoining two former

members of the Union, Maktumma Teshabaeva and Jin Hua Deng, from further prosecuting a putative class action against the Movants in the New York State Supreme Court. See Teshabaeva v. Family Home Care Servs. of Brooklyn and Queens, Inc., No. 158949/2017 (N.Y. Sup. Ct.) (the "State Court Action").

For the following reasons, the Movants' motion for a preliminary and/or permanent injunction is **denied**.

I.

The Court assumes familiarity with the Confirmation Order, which recites the background of this dispute in detail. See generally Confirmation Order, 520 F. Supp. 3d at 594-98. The facts relevant to resolving the Movants' motion are set forth below and constitute the Court's findings of fact.

The Union is a labor union that serves as the sole and exclusive representative for the Movants' home health aide employees, including for purposes of collective bargaining over the terms and conditions of their employment. Id. at 594. The Movants are licensed home care agencies. Id. At all relevant times, the Union was a party to CBAs with all the respondents, including the Movants. Id. at 594-95. In or about 2015, the Union signed a memorandum of agreement (the "2015 MOA") with the respondents that amended the CBAs. Id. at 595. The 2015 MOA laid out an alternative dispute resolution process through which all claims arising under the New York Labor Law (the "NYLL"), the

2

New York Home Care Worker Wage Parity Law (the "Parity Law"), and the Fair Labor Standards Act (the "FLSA") (collectively, the "Covered Statutes") must be resolved. Id. Specifically, the 2015 MOA required that "all claims brought by either the Union or Employees" for violations of any Covered Statute must first go through a grievance procedure or mediation and, if not resolved through the grievance procedure or mediation, must be submitted to "final and binding arbitration." Id. at 595-96.

Teshabaeva and Deng are former employees of the Movants and both ceased their employment before the Union signed the 2015 MOA. On October 6, 2017, Teshabaeva filed the State Court Action as a putative class action and asserted various causes of action against the Movants, including claims for violations of certain Covered Statutes.[1] See ECF No. 176-1. On January 2, 2019, the Union filed a class action grievance against the Movants and the other respondents on behalf of the Union's home care members "concerning violations of the CBAs regarding wage and hour claims arising under the Covered Statutes." Confirmation Order, 520 F. Supp. 3d at 596. Certain parties then participated in a mediation pursuant to the 2015 MOA. On December 24, 2019, the arbitrator declared that the mediation had concluded and directed the parties to submit briefs addressing the issues of

---

[1] The complaint in the State Court Action was amended by stipulation to add Deng as a named plaintiff on October 9, 2018.

3

(1) whether the claims of former and current Union members were arbitrable; and (2) whether the arbitrator had jurisdiction to adjudicate those claims "irrespective of whether employees' employment terminated prior to the effective date of the" 2015 MOA. Id. at 597.

On January 14, 2020, Teshabaeva and Deng moved the New York State Supreme Court to enjoin arbitration of the claims in the State Court Action. See ECF No. 176-5. On January 24, 2020, the Movants cross-moved to compel arbitration of Teshabaeva's and Deng's claims. See ECF No. 176-4. While these motions were pending, the arbitrator issued the Award on April 17, 2020. In relevant part, the arbitrator determined that the claims of former and current Union members were arbitrable and that the arbitrator had jurisdiction to adjudicate those claims even if former employees had ceased their employment before the Union entered the 2015 MOA. See Confirmation Order, 520 F. Supp. 3d at 597. However, the arbitrator expressly excluded from the Award eight former employees of certain respondents whose employment had ceased before the 2015 MOA was executed because state or federal courts had previously concluded that those former employees could not be compelled to arbitrate their claims.[2] Id.

_____

[2] Teshabaeva and Deng were not part of the group of eight former employees that the arbitrator carved out of the scope of the Award.

The Union filed its petition to confirm the Award in this Court on May 8, 2020. ECF No. 1.[3]

In an order dated July 16, 2020, the New York State Supreme Court granted Teshabaeva and Deng's motion, denied the Movants' cross-motion, and permanently enjoined the claims asserted in the State Court Action from being arbitrated. See ECF No. 176-2 (the "Injunction Order"). The court concluded that because Teshabaeva's and Deng's employment with the Movants ended before the Union entered the 2015 MOA, Teshabaeva and Deng were not bound by the arbitration provisions of the 2015 MOA. Id. at 2. The court also rejected the Movants' contention that the question of arbitrability should be decided by the arbitrator. Id. at 3. The Movants then appealed the Injunction Order to the Appellate Division of the New York State Supreme Court. Neither Teshabaeva and Deng nor any party that appeared in this action apprised this Court of the Injunction Order until the Movants filed the present motion.

On February 19, 2021, while the appeal of the Injunction Order before the Appellate Division was pending, this Court issued the Confirmation Order, which confirmed the Award in

---

[3] Unlike numerous other respondents, the Movants never filed a response to the Union's petition. See ECF Nos. 32-40. Although the Movants appeared in this action on June 3, 2020, they did not take a position on any matters in this action until July 24, 2020, when the Movants filed a letter joining other parties' oppositions to the then-pending motions to dismiss, intervene, and stay. See ECF No. 129.

whole over the objections of several former employees of certain
respondents, most of whom appeared in this action as proposed
intervenors.[4] Gail Yan, whose employment with one of the
respondents ceased before the Union signed the 2015 MOA, did not
seek to intervene but filed a motion to dismiss or stay this
action, arguing that former employees of the respondents were
not bound by the 2015 MOA and that the Court lacked subject
matter jurisdiction over the petition. ECF No. 101-16. The Court
considered Yan's arguments and found them to be without merit.
See Confirmation Order, 520 F. Supp. 3d at 601-05. Yan was
represented by counsel from Virginia & Ambinder, LLP ("Virginia
& Ambinder"), which is the same law firm that is representing
Teshabaeva and Deng in this action and in the State Court
Action. Yan and the proposed intervenors filed a notice of
appeal as to the Confirmation Order on March 19, 2021. ECF No.
163. That appeal is currently pending before the Court of
Appeals for the Second Circuit.

The Appellate Division affirmed the Injunction Order in a
decision dated October 14, 2021. See ECF No. 176-3 (the
"Appellate Division Order"). The court rejected the Movants'
argument that the Confirmation Order precluded Teshabaeva and
Deng from prosecuting the State Court Action because that

---

[4] Neither Teshabaeva nor Deng appeared in this action while the petition to
confirm the Award was pending.

argument was "improperly raised" by the Movants for the first time on appeal. Id. at 2. The court also determined that the Confirmation Order "does not have the res judicata effect urged by the [Movants]" because it "made no findings that affect the merits of the issues raised by [Teshabaeva and Deng] here, and the federal proceeding and the [State Court Action] do not involve the same parties." Id. Finally, the court affirmed the state trial court's conclusion that the question of arbitrability was one for the court, not the arbitrator. Id.

The Movants then renewed their motion to compel arbitration before the state trial court.[5] The court denied the renewed motion on December 10, 2021. ECF No. 176-8. The court reasoned that factual differences presented by this action and the State Court Action rendered the Confirmation Decision inapposite:

> The Court finds that [the Movants are] not entitled to renewal based on the [Confirmation Order] because the federal court was interpreting the CBA with the 2015 MOU[.] This Court held, and First Department affirmed, that the 2015 MOU did not apply to the plaintiffs here, whose employment ceased prior to 2015. Thus, the federal court's decision or reasoning is not necessarily applicable to the same factual framework as the case here.
> . . .
> [The Movants'] argument concerning preemption is meritless as there is no conflict of state and federal law[.] The simple difference between this case and the federal case is that the facts are different.

---

[5] The Movants also moved for leave to appeal the Appellate Division Order to the New York Court of Appeals, which was denied.

Id. at 2-4; see also id. at 4-5 (rejecting the Movants'
contention that the Confirmation Order had res judicata effect
in the State Court Action as "another meritless argument.").

   The Movants now move for a preliminary and/or permanent
injunction enjoining Teshabaeva and Deng from further
prosecuting the State Court Action. Teshabaeva and Deng contend
that an injunction is unwarranted because (1) the Court lacks
subject matter jurisdiction over this motion under the Rooker-
Feldman doctrine; (2) the Anti-Injunction Act ("AIA") and
related doctrines prohibit the Court from issuing an injunction;
and (3) the Movants have otherwise failed to satisfy their
burden of demonstrating that an injunction should issue.

## II.

### A.

   A threshold matter is whether this Court has subject matter
jurisdiction over this dispute. The Rooker-Feldman doctrine
deprives federal courts of subject matter jurisdiction to
consider "cases brought by state-court losers complaining of
injuries caused by state-court judgments rendered before the
district court proceedings commenced and inviting district court
reviews of those judgments." McKithen v. Brown, 626 F.3d 143,
154 (2d Cir. 2010). The doctrine "directs federal courts to
abstain from considering claims when four requirements are met:
(1) the plaintiff lost in state court, (2) the plaintiff

8

complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." Id. Although federal courts are required to effectuate the policies underlying the federal arbitration statutes, "a party cannot invoke the federal policy in favor of arbitration as a means of improperly appealing a state court ruling." See Wanderlust Pictures, Inc. v. Empire Entm't Grp., No. 01-cv-4465, 2001 WL 826095, at *2 (S.D.N.Y. July 19, 2001).[6]

All the requirements for the application of the Rooker-Feldman doctrine are met in this case. First, there can be no reasonable dispute that the Movants lost on the issue of arbitrability before the state courts. Moreover, the Movants are plainly inviting this Court to review and reverse those state court decisions by enjoining the prosecution of claims in the state court that the state courts decided could proceed.

---

[6] Even if a federal suit is not precluded by the res judicata or collateral estoppel effects of a state court decision, "the Rooker-Feldman doctrine may still prevent maintenance of a federal action if the litigant in federal court seeks relief that would effectively void or reverse a related state court ruling." Yonkers Elec. Contracting Corp. v. Local Union No. 3, Int'l Bhd. Elec. Workers' AFL-CIO, 220 F. Supp. 2d 254, 259 (S.D.N.Y. 2002) (citing Wanderlust, 2001 WL 826095, at *3). For these reasons, the Court may lack subject matter jurisdiction under the Rooker-Feldman doctrine irrespective of the parties' disputes surrounding whether the Injunction and Appellate Division Orders are entitled to preclusive effect.

9

The next question is whether the state court's permanent injunction enjoining arbitration constitutes a "judgment" for the purposes of the Rooker-Feldman doctrine. See Hoblock v. Albany Country Bd. of Elections, 422 F.3d 77, 89 (2d Cir. 2005). "There is some confusion as to the circumstances under which Rooker-Feldman applies to interlocutory orders that do not finally resolve the state litigation." See Ayyad-Ramallo v. Marine Terrace Assocs. LLC, No. 13-cv-7038, 2014 WL 2993448, at *3 n.6 (E.D.N.Y. July 2, 2014). The fact that a state court order does not resolve entirely the state litigation is not necessarily dispositive. See Alroy v. City of New York L. Dep't, 69 F. Supp. 3d 393, 401 n.14 (S.D.N.Y. 2014) (noting that the Court of Appeals for the Second Circuit has "recognized that the Rooker-Feldman doctrine may apply to bar federal suits challenging interlocutory state judgments"); see also Hoblock, 422 F.3d at 89 (observing that "federal suits challenging interlocutory state judgments may present difficult questions as to whether the state proceedings have 'ended' within the meaning Rooker-Feldman on the federal questions at issue." (citing Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 25 (1st Cir. 2005))).

Given the nature of the state court decisions, they are properly categorized as "judgments" within the meaning of the Rooker-Feldman doctrine because they "ended" the state court

10

proceedings with respect to the issue of arbitrability. The
Injunction Order, by its own terms, was a "permanent" resolution
of the question of arbitrability and was subsequently affirmed
on appeal and reaffirmed by the trial court following a renewed
motion by the Movants. Moreover, the fact that decisions such as
the Injunction Order are appealable as of right in the New York
state court system further supports the conclusion that the
Injunction Order constituted a "judgment." See, e.g., Robinson
v. Cusack, No. 05-cv-5318, 2007 WL 2028112, at *6 (E.D.N.Y. July
11, 2007) (preliminary injunction entered by the New York State
Supreme Court was a "judgment" for Rooker-Feldman purposes
because it was "appealable as of right" to the Appellate
Division); see also N.Y. C.P.L.R. § 5701.

Furthermore, the injury that the Movants complain of must
have been caused by the state court judgment. "[A] federal suit
complains of injury from a state-court judgment, even if it
appears to complain only of a third party's actions, when the
party's actions are produced by a state-court judgment and not
simply ratified, acquiesced in, or left unpunished by it."
Hoblock, 422 F.3d at 88. In this case, in the absence of the
Injunction Order, Teshabaeva and Deng would be bound by the
terms of the Confirmation Order and Award and compelled to
prosecute their claims solely before the arbitrator. However,
because of the Injunction Order, the Movants are being forced to

defend the State Court Action and are deprived of their asserted right to defend against Teshabaeva's and Deng's claims solely before the arbitrator, which is the exact injury about which they complain. Cf. KIPP Acad. Charter Sch. v. United Fed'n of Tchrs., AFT NYSUT, AFL-CIO, 723 F. App'x 26, 29-30 (2d Cir. 2018) (explaining that the state court's denial of a motion to stay arbitration did not cause the movant's injury because, "had no [request to stay arbitration] ever been filed in state court, [the movant] would still have to contend with the same injury"). Accordingly, the first three conditions of the Rooker-Feldman doctrine are met.

Whether the fourth and final condition is satisfied is complicated by the competing timelines of this action and the State Court Action and the roles that the parties have played in each proceeding. Courts in this district have found that the Rooker-Feldman doctrine precludes subject matter jurisdiction where the same party moves to compel arbitration in a state court, loses, and subsequently files a petition in federal court to compel arbitration notwithstanding the state court's decision. See, e.g., Wanderlust, 2001 WL 826095, at *2-5 (finding that the federal court lacked subject matter jurisdiction where a state court denied a party's motion to compel arbitration in February 2001, and that party then filed a federal action seeking the same relief in May 2001). On the

other hand, where a party seeks an injunction from a federal court in aid of arbitration against state court proceedings or litigants before the state court has rendered any relevant decision, federal courts generally have subject matter jurisdiction and may grant injunctive relief, even if the state court action was filed first. See, e.g., Nat'l Union Fire Ins. Co. v. Advanced Micro Devices, Inc., No. 16-cv-5699, 2016 WL 4204066, at *1, 4-5 (S.D.N.Y. Aug. 4, 2016); Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc., 962 F. Supp. 385, 390-91 (S.D.N.Y. 1997).

This dispute presents a situation comparable to those cases where a party first seeks relief from a federal court only after the party was denied that relief from a state court. Teshabaeva and Deng filed the State Court Action against the Movants in 2017 — well before the Union initiated any relevant proceeding before the arbitrator in 2019, obtained the Award in April 2020, and petitioned this Court to confirm the Award in May 2020. No party in the State Court Action sought relief relating to arbitration from any court, state or federal, until January 2020, when the State Court Action had already been pending for over two years. Cf. Wanderlust, 2001 WL 826095, at *3 ("In the typical case, the petitioner moves in a timely fashion to compel arbitration in federal court after a state proceeding has begun.").

13

Critically, the Movants never sought any relief from this Court until December 2021. It was the Union that petitioned for confirmation of the Award in this Court in May 2020, not the Movants, who appeared as respondents in this action. Indeed, unlike other respondents, the Movants never even filed a response to the Union's petition. Instead, the Movants filed a letter in support of other parties' oppositions to the motions to intervene, stay, and dismiss this action in July 2020, only after the state court issued the Injunction Order. And although this Court confirmed the Award in February 2021, the Movants did not seek an injunction from this Court until months later, after the Movants had received multiple adverse rulings from the New York trial and appellate courts. In view of these facts, it is proper to look at the date that the Movants first sought relief in this Court — when they filed the present motion — to determine when the relevant "federal suit commenced," see McKithen, 626 F.3d at 154, not the date on which the Union filed its petition. Accordingly, because the relevant federal dispute between these parties did not commence until after the state courts issued the Injunction and Appellate Orders, the final condition of Rooker-Feldman is satisfied.

The Movants only briefly addressed the Rooker-Feldman doctrine in their papers. They contend primarily that this Court has already rejected any argument relating to the Rooker-Feldman

doctrine in the Confirmation Order. This argument is without merit. While the Union's petition was pending, certain parties had moved to dismiss the petition in part on the basis that the Rooker-Feldman doctrine barred the Union from seeking to confirm the Award in view of prior state court decisions in actions involving former employees and certain respondents. This Court rejected that argument because the "Union was not a party in any of the state court suits that the Proposed Intervenors have presented to this Court that the Proposed Intervenors argue barred the arbitration of claims of former union members against their employers." Confirmation Order, 520 F. Supp. 3d at 604-05. The Court also rejected the argument that Rooker-Feldman should apply because the Union was allegedly in privity with the respondents that were parties to those actions. Id. Here, unlike the Union, the Movants were parties to the State Court Action and lost on the issue of compelling arbitration multiple times. Accordingly, the Confirmation Decision's discussion of the Rooker-Feldman doctrine in inapposite.

The Movants also cite Doctor's Associates, Inc. v. Distajo, 107 F.3d 126 (2d Cir. 1997) ("DAI"), in support of the argument that the Rooker-Feldman doctrine should not apply here. In that case, certain plaintiffs filed a state court action against Doctor's Associates, Inc. ("DAI") in December 1994. Id. at 137. DAI failed to appear in the state court action. Id. DAI then

petitioned a federal court to compel arbitration of those claims
in January 1995. Id. The state court entered a default judgment
against DAI on February 7, 1995, and on February 13, 1995, the
federal court granted DAI's petition to compel arbitration and
enjoined the plaintiffs from further prosecuting their state
court suit. Id. After the Court of Appeals for the Second
Circuit vacated the district court's injunction on grounds not
relevant here, the district court entered a temporary
restraining order ("TRO") on December 5, 1995, again enjoining
the plaintiffs from further prosecuting their state suit. Id.
The state court was made aware of the court of appeals' vacatur
of the original injunction but not of the district court's
subsequent TRO. Id. On December 6, 1995, the state court entered
a judgment awarding the plaintiffs damages. Id. The plaintiffs
then argued that the state court judgment stripped the federal
courts of jurisdiction to entertain DAI's petition to compel
arbitration. The court of appeals found that the Rooker-Feldman
doctrine did not apply, reasoning that DAI was not "attempting
to appeal from any of the state court decisions" in part because
"DAI filed its petitions to compel arbitration . . . before the
state courts had made any rulings on the merits in [the state
court actions]." Id. at 138 (emphasis in original). DAI is
therefore inapposite because unlike DAI, the Movants did not

seek relief from this Court until after the state courts issued their adverse rulings.[7]

In sum, this dispute is effectively an appeal from state court decisions that was initiated by the state court losers after they received those adverse rulings and this motion seeks to relieve the Movants of the alleged injuries caused by the state court rulings. This is precisely the sort of situation in which the Rooker-Feldman doctrine applies. Accordingly, the Movants' motion for a preliminary and/or permanent injunction is dismissed for lack of subject matter jurisdiction.

**B.**

Teshabeava and Deng argue alternatively that the motion should be denied under the AIA, the Full Faith and Credit Act ("FFCA"), and related preclusion doctrines.

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "But this power is not boundless."

---

[7] DAI is also distinguishable because unlike DAI, against whom the state court issued a default judgment, the Movants appeared in the State Court Action and had full and fair opportunities to present their arguments to the state courts. The state courts considered and rejected those arguments. Moreover, the state court plaintiffs in DAI admitted that they failed to apprise the state court of the district court's TRO. Here, by contrast, the parties seeking to enjoin the state court proceedings did not inform this Court of the Injunction Order while the Union's petition was pending, and only brought it to this Court's attention after the Award was confirmed and the Movants had received two further adverse rulings from the state trial and appellate courts.

Nix v. Office of Comm'r of Baseball, No. 17-cv-1241, 2020 WL
6482877, at *2 (S.D.N.Y. Nov. 4, 2020). Any federal court
injunction directed to state court proceedings must comply with
the AIA, which generally prohibits the issuance of such
injunctions except in certain narrow circumstances.[8] 28 U.S.C. §
2283; Nix, 2020 WL 6482877, at *2 (citing Chick Kam Choo v.
Exxon Corp., 486 U.S. 140, 146 (1998)). The scope of the
exceptions to the AIA must also be construed consistently with
the FFCA, which provides that state courts judgments "shall have
the same full faith and credit in every court within the United
States . . . as they have by law or usage in the courts of such
State . . . from which they are taken." 28 U.S.C. § 1738;
Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 524
(1986). Furthermore, whether to grant an injunction of state
court proceedings, "even where warranted, is discretionary."
Staffer v. Bouchard Transp. Co., Inc., 878 F.2d 638, 644 (2d
Cir. 1989).

The Movants invoke the so-called "relitigation exception"
to the AIA, which empowers a federal court "to issue an
injunction to protect its judgments from further litigation in
state courts." See Tyco Int'l Ltd v. Walsh, No. 02-cv-4633, 2010

---

[8] "It is well settled that the [AIA] applies to injunctions that prohibit a
person from litigating in a state court, as well as injunctions that directly
stay proceedings in a state court." Smith v. Woosley, 399 F.3d 428, 431 (2d
Cir. 2005). Accordingly, the fact that the Movants seek an injunction
directed to Teshabaeva and Deng does not change the analysis under the AIA.

WL 3447910, at *3 (S.D.N.Y. Sept. 1, 2010). This exception authorizes an injunction "to protect against relitigation of claims or issues that actually have been decided by the federal court," id., and can be invoked when a state court is presented with issues that a federal court has already resolved in an interlocutory or final order. See ACLI Gov't Secs., Inc. v. Rhoades, 963 F.2d 530, 533-34 (2d Cir. 1992); Staffer, 878 F.2d at 643 (noting that under the relitigation exception, "a federal court may halt state litigation that might undermine some of the res judicata or collateral estoppel effects of a federal judgment"). The Movants contend that the issue of whether Teshabaeva's and Deng's claims must be arbitrated was finally resolved by this Court in the Confirmation Order and that the Movants are therefore entitled to an order enjoining the state court proceedings in which those exact same issue are being relitigated. Teshabaeva and Deng dispute that the Confirmation Order was a final judgment and argue that because the state trial and appellate courts have already found that the Confirmation Order is not entitled to preclusive effects in the State Court Action, any injunction would run afoul of the FFCA and Parsons Steel and its progeny.

In Parsons Steel, the United States Supreme Court determined that once a state court has issued a "final judgment" rejecting a litigant's claim that a state proceeding is barred

by the preclusive effect of a prior federal judgment, "the
[FFCA] prevents the federal court from invoking the [AIA] to
protect and effectuate its judgment at the litigant's request."
Golub Corp. v. Curry Rd. Ltd., 99 F.3d 400, 1995 WL 732677, at *3
(2d Cir. 1995)(citing Parsons Steel, 474 U.S. at 522-26); see
also Parsons Steel, 474 U.S. at 524 ("We believe that the [AIA]
and the [FFCA] can be construed consistently, simply by limiting
the relitigation exception of the [AIA] to those situations in
which the state court has not yet" decided the res judicata
effect, if any, of a related federal judgment). The Supreme
Court explained that once a state court has "finally rejected a
claim" that a federal judgment is entitled to res judicata
effect, "then the [FFCA] becomes applicable and federal courts
must turn to state law to determine the preclusive effect of the
state court's decision." Id. However, even if the state court's
ruling determining the res judicata effect of a federal judgment
is not entitled to preclusive effect under state law, district
courts must still "decide the propriety of a federal-court
injunction under the general principles of equity, comity, and
federalism." Id. at 526.

    Here, principles of equity, comity, and federalism
strongly counsel against the issuance of an injunction. The New
York trial and appellate courts have expressly and unambiguously
determined that the Confirmation Order is not entitled to

20

preclusive effect in the State Court Action under New York law. The parties dispute whether the Injunction and Appellate Division Orders are properly categorized as final or interlocutory, but the resolution of that question is not dispositive here. At least two courts of appeal applying Parsons Steel have found that "the interests in preventing possible relitigation" are almost always outweighed by "heightened comity concerns" where, as here, a state court has issued an order, final or not, determining the preclusive effect of a federal court judgment. See, e.g., Ramsden v. AgriBank, FCB, 214 F.3d 865, 870-71 (7th Cir. 2000) ("We believe that a rule that restricts a federal court's discretion to enjoin state court proceedings once the state court expressly and unambiguously decides a res judicata defense, whether or not there has been a final judgment on the entire claim in state court, best reconciles the conflicting concerns identified in Parsons Steel."); see also Brother Records, Inc. v. Jardine, 432 F.3d 939, 944 (9th Cir. 2005) ("Even if the [state court decision determining the preclusive effect of a federal judgment] is not final and preclusive, we conclude that the district court did not abuse its discretion in giving it effect . . . .. The [state court's] decision on res judicata was sufficiently definitive that [equity, comity, and federalism] are satisfied by according great weight to the state court's ruling.").

21

Because the state trial and appellate courts have already considered the effect of the Confirmation Order and decided unambiguously that it does not preclude the State Court Action, the interests of equity, comity, and federalism would be undermined if this Court were to review those decisions. See Parsons Steel, 474 U.S. at 526. To the extent that "further state court proceedings would undermine" the Confirmation Order, those concerns are best addressed by arguments before other courts. See Ramsden, 214 F.3d at 871 n.1; see also Parsons Steel, 474 U.S. at 525 ("Challenges to the correctness of a state court's determination as to the conclusive effect of a federal judgment must be pursued by way of appeal through the state-court system and certiorari from [the Supreme Court].").

Accordingly, regardless of whether this Court has subject matter jurisdiction over the motion, the Court declines to enjoin the State Court Action.

## C.

For similar reasons, the Movants have also failed to satisfy their burden of demonstrating that they are entitled to an injunction.

A preliminary injunction "is one of the most drastic tools in the arsenal of judicial remedies," Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007), and it "should not be granted unless the movant, by a clear showing,

22

carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997). "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." <u>N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.</u>, 883 F.3d 32, 37 (2d Cir. 2018). A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." <u>Faiveley Transp. Malmo AB v. Wabtec Corp.</u>, 559 F.3d 110, 118 (2d Cir. 2009).

The Movants contend that the loss of their right to arbitrate Teshabaeva's and Deng's claims constitute an irreparable harm. Although "it is well established that losing the ability to enforce an arbitration agreement is a form of irreparable harm," <u>see</u> <u>Nat'l Union Fire Ins.</u>, 2016 WL 4204066, at *5, the Movants' claim of injury is difficult to reconcile with the way in which they litigated this action and the State Court Action. The Movants did not seek an order regarding arbitration from any court until more than two years after the State Court Action was filed and after Teshabaeva and Deng first sought an order enjoining arbitration. And even though the Confirmation Order was issued in February 2021, the Movants did not seek any injunction from this Court until months after they

continued to litigate and lose before the state courts. That the
Movants "failed to seek injunctive relief until after [they]
received an unfavorable decision in state court further
undercuts the sense of urgency that ordinarily accompanies a
motion for preliminary relief and suggests that there is, in
fact, no irreparable injury." See Kwik Ticket Inc. by Shamah v.
Spiewak, No. 20-cv-1201, 2020 WL 1643485, at *2 (E.D.N.Y. Apr.
2, 2020) (quoting Tough Traveler, Ltd. v. Outbound Prod., 60
F.3d 964, 968 (2d Cir. 1995)).

The Movants also cannot demonstrate a likelihood of success
on the merits. The crux of the Movants' argument is that under
the Confirmation Order, they are entitled to arbitrate
Teshabaeva's and Deng's claims and be free from having to
litigate them in state court. The state trial and appellate
courts have considered and rejected this argument. This Court
declines to revisit those conclusion for the reasons discussed
above.

Finally, the requested injunction is not in the public
interest. There is a strong public interest, as expressed in the
Rooker-Feldman doctrine, AIA, and FFCA, in ensuring that lower
federal courts do not preside over appeals lodged by state court
losers seeking to overturn adverse state court decisions. See
e.g., Tyco, 2010 WL 3447910, at *3 ("Proceedings in state courts
should normally be allowed to continue unimpaired by

intervention from lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the Supreme] Court.") (quoting Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 287 (1970))); Wanderlust, 2001 WL 826095, at *2 ("[A] party cannot invoke the federal policy in favor of arbitration as a means of improperly appealing a state court ruling.").

Accordingly, the Movants have failed to demonstrate their entitlement to a preliminary and/or injunction.

### CONCLUSION

The foregoing constitutes the Court's findings of fact and conclusions of law. The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, the Movant's motion for preliminary and/or permanent injunction is **denied.**

The Clerk is directed to close Docket No. 169.

**SO ORDERED.**

**Dated:**     **New York, New York**
            **February 16 , 2022**

John G. Koeltl
United States District Judge