UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

1199SEIU UNITED HEALTHCARE WORKERS EAST,

*Petitioner*,

-against-

PSC COMMUNITY SERVICES, NEW PARTNERS, INC. d/b/a PARTNERS IN CARE, STELLA ORTON HOME CARE AGENCY, RICHMOND HOME NEEDS, SUNNYSIDE HOME CARE PROJECT, SUNNYSIDE CITYWIDE HOME CARE, FAMILY HOME CARE OF BROOKLYN AND QUEENS, CARE AT HOME, CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, UNITED JEWISH COUNCIL OF THE EAST SIDE HOME ATTENDANT SERVICE CORP., THE FIRST CHINESE PRESBYTERIAN COMMUNITY AFFAIRS HOME ATTENDANT CORP., AZOR HOME CARE, BUSHWICK STUYVESANT HEIGHTS HOME ATTENDANT, INC., CABS HOMECARE, RIVERSPRING LICENSED HOMECARE SERVICES AGENCY, INC., ST. NICHOLAS HUMAN SUPPORTS CORP., WARTBURG, ALLIANCE FOR HEALTH, INC., REGION CARE, INC., SPECIAL TOUCH HOME CARE SERVICES, INC., RAIN, INC., PRESTIGE HOME CARE, INC., PRESTIGE HOME ATTENDANT, INC. d/b/a ALL SEASON HOME ATTENDANT, PERSONAL TOUCH HOME CARE OF N.Y., INC., PRIORITY HOME SERVICES, PREMIER HOME HEALTH CARE, INC., BRONX JEWISH COMMUNITY COUNCIL HOME ATTENDANT SERVICES, CIDNY INDEPENDENT LIVING SERVICES, HOME CARE SERVICES FOR INDEPENDENT LIVING, NEW YORK FOUNDATION FOR SENIOR CITIZENS HOME ATTENDANT SERVICES, COOPERATIVE HOME CARE ASSOCIATES, RISEBORO HOME CARE, INC., FEGS HOME ATTENDANT SERVICES, HOME HEALTH MANAGEMENT SERVICES, INC., SCHOOL SETTLEMENT HOME ATTENDANT CORP., ROCKAWAY HOME ATTENDANT, BRONXWOOD HOME FOR THE AGED, INC., ACCENTCARE OF NY, INC., ISABELLA VISITING CARE, INC., SOCIAL

**<u>AMENDED PETITION TO CONFIRM SECOND ARBITRATION AWARD</u>**

No. 20-cv-3611 (JGK)

CONCERN COMMUNITY DEVELOPMENT CORP., , ABC HEALTH SERVICES REGISTRY, ALLIANCE HOME SERVICES, *collectively identified by the Arbitrator as the* "HOME HEALTH CARE AGENCIES",

Respondents

-------------------------------------------------------------------X

Petitioner, 1199SEIU United Healthcare Workers East ("Union" or "1199SEIU"), by and through their attorneys, Levy Ratner, P.C., respectfully states:

1. In May 2020, the Union petitioned this Court to confirm the April 17, 2020 Arbitration Award of Arbitrator Martin F. Scheinman ("First Award"), pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 1 et seq. of the Federal Arbitration Act, 9 U.S.C. § 1, et seq. See ECF 1.

2. On February 19, 2021, this Court confirmed the First Award. See ECF 159 (520 F. Supp. 3d 588 (S.D.N.Y. 2021)).[1]

3. The Union now petitions this Court to confirm Arbitrator Martin F. Scheinman's February 25, 2022 Arbitration Award resolving the Arbitration in its entirety ("Second Award"). A copy of the Second Award is attached hereto as Exhibit A.

4. Both the First and Second Awards were issued in an arbitration between the Union and Respondent Home Health Care Agencies (collectively, "Employers") concerning more than 100,000 current and former bargaining unit members in a class grievance filed by the

[1] Prior to the Court's confirmation of the First Award, a number of non-parties attempted to intervene or move to dismiss the Union's May 2020 Petition. See ECF 101, 103. Those two motions were denied by this Court and appealed by the proposed intervenors and non-parties to the U.S. Court of Appeals for the Second Circuit. See ECF 161, 162. The appeals are currently pending. See U.S. Court of Appeals, 2d Cir., Case Nos. 21-631(L), 21-633(Con).

Union alleging that the Employers failed to pay their employees certain wages pursuant to the applicable collective bargaining agreements and a number of state and federal wage and hour laws.

**PARTIES**

5. Petitioner 1199SEIU is a labor organization representing employees in an industry affecting commerce as defined in Section 2(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(5). 1199SEIU represents approximately 60,0000 current home care workers in New York City and the surrounding counties.

6. Employers are licensed home care agencies and employers, each within the meaning of Section 2(2) of the NLRA, 29 U.S.C. § 152(2), engaged in an industry affecting commerce within the meaning of Section 2(7) of the NLRA, 29 U.S.C. § 152(7). They are engaged in the business of providing home care services. The Second Award covers:

A. ABC Health Services Registry, Inc.

B. AccentCare of NY, Inc.

C. Alliance for Health, Inc.

D. Alliance Home Services, Inc.

E. Azor Home Care

F. Bronx Jewish Community Council Home Attendant Services

G. Bushwick Stuyvesant Heights Home Attendants Inc.

H. CABS Home Attendant Services, Inc.

I. Care at Home

J. Chinese-American Planning Council Home Attendant Program, Inc.

K. CIDNY Independent Living Services, Inc.

L. Cooperative Home Care Associates

M. Family Home Care of Brooklyn and Queens

N. FEGS Home Attendant Services

O. First Chinese Presbyterian Community Affairs Home Attendant Corp.

P. Home Care Services for Independent Living

Q. Home Health Management Services, Inc.

R. New Partners Inc. d/b/a Partners in Care

S. New York Foundation for Senior Citizens Home Attendant Services

T. Personal Touch Home Care of N.Y., Inc.

U. Personal Touch Home Care of Long Island, Inc.

V. Personal Touch Home Care of Westchester, Inc.

W. People Care, Inc.

X. Premier Home Health Services, Inc.

Y. Prestige Home Attendant Inc. d/b/a All Season Home Attendant

Z. Prestige Home Care, Inc.

AA. Priority Home Care, Inc.

BB. PSC Community Services, Inc.

CC. RAIN Home Attendant Services, Inc.

DD. Region Care, Inc.

EE. Richmond Home Needs

FF. RiseBoro Home Care, Inc.[2]

GG. RiverSpring Licensed Homecare Services Agency, Inc.

HH. Rockaway Home Services, Inc.

II. School Settlement Home Attendant Services Corp.

JJ. Special Touch Home Care Services, Inc.

KK. St. Nicholas Human Supports Corp.

LL. Stella Orton Home Care Agency, Inc.

MM. Sunnyside Citywide Home Care Services

NN. Sunnyside Home Care Project

OO. United Jewish Council of the East Side Home Attendant Service Corp.

PP. Wartburg Residential Community, Inc. d/b/a No Place Like Home

**JURISDICTION AND VENUE**

7. The Court has continuing jurisdiction in this action pursuant to Section 301 of the LMRA, 29 U.S.C. § 185, and Section 1 et seq. of the Federal Arbitration Act, 9 U.S.C. § 1, et seq.

8. Venue is proper in this district as the hearing was held in this district.

---

[2] Erroneously referred to in the Second Award as Rise Borough Home Care, Inc, due to scrivener's error. See Ex. A at 5.

## STATEMENT OF FACTS

### The Collective Bargaining Agreements

9. 1199SEIU is the sole and exclusive representative of the Employers' home health aide employees for purposes of collective bargaining over the terms and conditions of their employment.

10. 1199SEIU is a party to a collective bargaining agreement with each of the Respondents (collectively, "Agreements" or "CBAs"). While Respondents may have variations in their CBAs, all of the Respondents are parties to substantially similar agreements. Any CBA provision quoted herein or in the accompanying papers is the same among the CBAs. Representative copies of the CBAs, including relevant Memoranda of Agreement, are attached hereto as Exhibits B (CBA), C (2014 Memorandum of Agreement), and D (2015 Memorandum of Agreement), respectively.

11. The CBAs contain a grievance and arbitration provision which provides, in relevant part:

> **ARTICLE XXVI**
> **GRIEVANCE AND ARBITRATION PROCEDURE**
>
> 1. A grievance is defined as any dispute between the Union (on its behalf and/or on behalf of any Employee) with the Employer involving the proper application, interpretation, or compliance with the specific written provisions of the Agreement based on facts and circumstances occurring during the term of this Agreement. A grievance is subject to arbitration.
>
> 2. Grievances will be resolved in accordance with the following procedure.
>
> ***
>
> Step 4 -- If the grievance is not resolved at Step 3, the Union and/or Employer may within ten (10) days thereafter request that the matter be submitted for final and binding arbitration under the Labor Arbitration Rules of the American Arbitration Association.

> 3. Notwithstanding the foregoing, a grievance that affects a substantial number of Employees and is outside the authority of the Employer's representatives designated in Steps 1 and 2 may be presented initially at Step 3 of the grievance procedures. This grievance must be presented in writing and within ten (10) days of the occurrence which gave rise to the grievance.
>
> ***
>
> 5. The opinion and award of the arbitrator must be made in writing and is final and binding upon all parties. The arbitrator has full authority to decide the issue or issues in dispute, except that s/he does not have authority to amend, alter, modify, add to or subtract from the provisions of this Agreement.

****

See Ex. B at 28-29 (CBA).

12. In or about 2014, the Union signed a Memorandum of Agreement amending the CBA with each of the Respondents, which provided that, given changes in federal and state law, the Union and subject Employer would meet in good faith to negotiate an "expeditious and effective alternative dispute resolution procedure for the resolution of claims arising under such laws." Specifically, the Parties agreed:

> [G]iven changes in federal and state law imposing new obligations on the Employer and exposing Employers to significantly increased level of litigation, it is in the interest of the Union, Employees, and the Employer to develop an expeditious and effective alternative dispute resolution procedure for the resolution of claims arising under such laws. Accordingly, between the execution of this Agreement and December 1, 2014, or as otherwise agreed by the parties, the parties shall meet in good faith to negotiate such an alternative dispute resolution procedure. If the parties are unable to agree to such a procedure in the allotted time, the Employer may submit the dispute to Martin F. Scheinman for final and binding arbitration.

See Ex. C at 6-7 (2014 MOA).

13. In or about December 2015, the Union signed a Memorandum of Agreement with each of the Respondents that further amended the CBA and that provided for the resolution of

claims under the Fair Labor Standards Act, the New York Home Care Worker Wage Parity Law, and/or the New York Labor Law ("Covered Statutes") pursuant to an alternative dispute resolution process:

> **New Article in the CBA, "ALTERNATIVE DISPUTE RESOLUTION", is hereby created, to read…as follows:**
>
> 1. The parties agree a goal of this Agreement is to ensure compliance with all federal, state and local wage hour law and wage parity statutes. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state and local wage-hour and wage parity statutes, all claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the "Covered Statutes"), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in this Article. The statute of limitations to file a grievance concerning the Covered Statutes shall be consistent with the applicable statutory statute of limitations. All such claims if not resolved in the grievance procedure, including class grievances filed by the Union, or mediation as described below shall be submitted to final and binding arbitration before Martin F. Scheinman, Esq. The Arbitrator shall apply appropriate law and shall award all statutory remedies and penalties, including attorneys' fees, consistent with the FLSA and New York Labor Law in rendering decisions regarding disputes arising under this Article.

See Ex. D at 9 (2015 MOA).

14. Under the terms of the Alternative Dispute Resolution provision ("ADR Provision"), unresolved grievances concerning violations of the Covered Statutes would be submitted to mandatory mediation before Martin F. Scheinman, Esq. Following the completion of the mandatory mediation process, if the matter remained unresolved, the dispute would proceed to arbitration before Martin F. Scheinman. Specifically, the MOAs provided:

> 2. Whenever the parties are unable to resolve a grievance alleging a violation of any of the Covered Statutes, before the matter is submitted to arbitration, the dispute shall be submitted to mandatory mediation. The parties hereby designate Martin F. Scheinman, Esq., as Mediator for such disputes.

Such mediation shall be requested no more than thirty (30) calendar days following exhaustion of the grievance procedure. Following submission of the dispute to mediation, the parties with the assistance of the Mediator shall establish such procedures as shall expeditiously advance the mediation process, including the scheduling of the exchange of relevant information, submission of position statements, and dates for mediation. In the absence of an agreement, the Mediator shall determine such procedures. Once the matter has been submitted to mediation, the Employer shall be obligated to produce relevant documents as requested by the Union and any objections to production shall be ruled on by the Mediator. The fees of the Mediator shall be shared equally by the Union and the Employer.

3. No party may proceed to arbitration prior to completion of the mediation process as determined by the Mediator. In the event the Union seeks arbitration of a grievance subject to these procedures, the Union shall submit its demand for arbitration to the Employer and the Arbitrator within four (4) months following the Mediator's declaration that mediation has concluded. The Employer shall be obligated to produce relevant documents as requested by the Union and any objections to production shall be ruled on by the Arbitrator. Prior to hearing, if noticed, the Union shall also be entitled to depositions of relevant witnesses. The fees of the arbitrator shall be shared equally by the Union and the Employer. The Employer shall upon notice be entitled to take the deposition of any Employee seeking relief in such arbitration or any other relevant witness.

***

5. The parties agree not to contest court confirmation of an arbitration award rendered under this Article…

See Ex. D at 9-10.

**The Grievance and Mediation**

15. On January 2, 2019, the Union filed a class action grievance on behalf of more than 100,000 current and former home care bargaining unit members ("Employees") employed by forty-two (42) agencies with whom the Union has individual collective bargaining agreements ("CBAs").

16. The Union and many of the Employers participated in a mediation of the grievance for approximately one year in accordance with the procedures set forth in the CBAs.

17. The Parties reached an impasse at mediation, at which time the Arbitration commenced.

**Arbitration of the Grievance**

18. Initially, the Parties submitted bifurcated issues pertaining to arbitrability and jurisdiction to the Arbitrator and on April 17, 2020, the Arbitrator issued the First Award holding, in pertinent part, that:

> 1. The claims encompassed by the wage and hour related grievances involving current and former 1199 bargaining unit members, including those arising under federal, state and local law, are arbitrable.
>
> 2. I have jurisdiction to adjudicate the claims asserted in the wage and hour grievances, arising under federal, state and local law, filed by the parties to the Collective Bargaining Agreement which encompass all claims arising under the federal, state and local laws named in the Agreement, as well as any pending litigation or administrative actions on the identical claims, irrespective of whether employees' employment terminated prior to the effective date of the Memorandum of Agreement providing Alternative Dispute Resolution language for exclusive mediation/arbitration procedures for wage and hour disputes pursuant to the Agreement between the parties. [3]

See Ex. A at 8, 12.

19. Following the issuance of the First Award on the bifurcated issues pertaining to arbitrability and jurisdiction, the Union moved to confirm the First Award before this Court. On February 19, 2021, this Court confirmed the First Award:

---

[3] The Arbitrator excluded the following individuals from the Award in light of court rulings holding their wage and hour claims are not subject to arbitration: Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Boris Pustilnik, Maral Agarunova, Epifania Hichez, Carmen Carrasco, Seferina Acosta, and Eugenia Barahona Alvarado. See Ex. A at 12.

> Because the CBA and 2015 MOA evince a clear consent to arbitrate and delegate questions of arbitrability to the Arbitrator, and because the Arbitrator's Award is sufficient to survive the highly deferential review appropriate for confirmation of LMRA arbitration awards, the Award is confirmed.

ECF 159 (520 F. Supp. 3d 588, 608 (S.D.N.Y. 2021)).

20. Between July 2020 and February 2021, the Employers produced extensive discovery pursuant to orders of the Arbitrator dated July 7, 2020 and September 23, 2020 granting the Union's motions to compel discovery, including financial records submitted to the Arbitrator.

21. The July 7, 2020 discovery order granted the Union's motion to compel discovery and required the Employers to provide, inter alia,: (1) the number of service hours worked by Employees in each calendar year; (2) the number of overtime hours worked by Employees in each calendar year; (3) the number of twenty-four hour shifts worked by Employees per calendar year and the cumulative number of all such shifts; (4) sample wage notices, including when notices became compliant with relevant laws; (5) sample wage statements, including when statements became compliant with relevant laws; and (6) financial information demonstrating Employers' ability to pay.

22. The September 23, 2020 discovery order granted the Union's further motion to compel discovery and required the Employers to provide, inter alia: (1) last name, first name, address, telephone number, last four digits of social security number, start date and end date of employment for each employee during the statute of limitations period; (2) annualized payroll data for each calendar year from 2014 to August 2020; (3) the number of twenty-four (24) hour shifts worked by employees, cumulatively during the statute of limitations period; (4) 2018 and

2019 Form 990s for non-profit Employers; and (5) sample wage notices sufficient to establish compliance with New York Labor Law Sections 195 (1) and (3).

23. On or about March 26, 2021, the Arbitrator accepted from the parties a joint stipulation of undisputed facts common to all of the forty-two Employers, facts disputed by the parties, and a statement of affirmative and other defenses asserted by the Employers with legal argument and the Union's responses thereto. Thereafter, approximately two dozen Employers supplemented these submissions with addenda of additional undisputed and disputed facts, and/or defenses unique to a particular employer and providing individualized undisputed and disputed facts as to such Employer's practices, including whether and to what extent their practices and facts differ from the statement of undisputed facts, including submission of documentary evidence. The Union additionally submitted further evidence in support of its grievance, including multiple affidavits from affected employees.

24. On February 25, 2022, the Arbitrator issued the Second Award deciding the merits of the Union's grievance.

25. The Arbitrator transmitted the Second Award to counsel via electronic mail on February 25, 2022.[4]

26. As summarized by the Arbitrator,

[4] The Second Award was initially issued on February 23, 2022 but was superseded by a Modified Award on February 25, 2022 after a number of incorrect agency descriptions were brought to the Arbitrator's attention by the Parties.

> Six (6) categories of claims were presented in the arbitration: 1) Claims for minimum pay rates on Medicaid funded assignments pursuant to the New York Home Care Worker Wage Parity Law, 2) Claims for spread of hours premiums under the New York Minimum Wage Order for Miscellaneous Industries and Occupations, 12 N.Y.C.R.R. Part 142) (hereinafter, the "New York Minimum Wage Order), 3) Claims for overtime compensation under the FLSA, 4) Claims for pay for interruptions of sleep and meal periods occurring during 24 hour shifts, pursuant to New York's Minimum Wage Order as interpreted by the New York State Department of Labor, 5) Claims for travel time and pay, and 6) Claims for wage notice violations under New York's Wage Theft Prevention Act, New York Labor Law §§195(1), 195(3).

See Ex. A at 13.

27. As authorized by the parties, the Arbitrator formulated the issues to be decided as follows:

> 1. Have the Employers violated the Collective Bargaining Agreement by failing to pay employees as required by the New York State Home Care Worker Parity Law ("WPL"), the Fair Labor Standards Act, the New York Labor Law and other applicable federal, state or local wage and hour laws or regulations, by failing to pay a) minimum rates of total compensation required by the WPL, b) overtime pay, c) spread of hours pay, d) pay for interruptions of sleep and meal time on twenty four (24) hour cases, e) travel time pay, and by f) failing to provide requisite statutory wage notices and statements?
>
> 2. If so, what shall be the remedy?

See Ex A at 26-27.

28. As to the first issue, the Arbitrator ruled that:

> [R]equired wages were underpaid to these employees, in varying amounts, during the coverage periods at issue. I recognize not all of the Employers violated the coverage statutes to the same degree or for the same periods of time, and a few of the Employers had no liability at all for claims made under certain of the covered statutes. Nevertheless, I conclude, in general, violations were committed by all of the Employers during their coverage periods, resulting in underpayment of required wages to the affected home health aides.

Id. at 46.

29. The Arbitrator based this conclusion on the Parties' 2015 MOA containing the ADR Provision which had "the goal of ensuring compliance with the wage and hour provisions of the covered statutes." See Ex. A at 45. The Arbitrator found that, "required wages were underpaid to these employees . . . during the coverage periods at issue." Id. at 46. The Arbitrator arrived at this conclusion based on "the parties' submissions, including their joint stipulation of facts, addenda to the joint stipulation of facts, evidence of the Employers' pay practices, and assertions made during conference and hearings held during the course of this proceeding." Id.

30. As to the second issue, the Arbitrator awarded a per capita contribution remedy to provide a mechanism for prompt funding and payment of proven wage claims. Id. at 48-49. The Arbitrator concluded that "[s]uch a remedy is fair to the individual employees, who will benefit by creation of a fund for prompt recovery of claims" and that payment of a uniform contribution rate was appropriate "in the interests of arbitral economy, efficiency and stability of the home care industry." Id. at 49.

31. The Arbitrator explained that he had arrived at the per capita contribution after "considering fully the parties' submissions including employee affidavits submitted by the Union, relevant Employer financial records submitted by virtually all Employers, the level of funding needed to assure fair compensation to the employees, and the financial stability of the industry." Id. at 54. Balancing a number of factors, including the need to avoid serious disruption of the delivery of essential services, the Arbitrator came "to the inevitable conclusion a per capita contribution greater than two hundred fifty ($250) dollars is not sustainable and will, inevitably, lead to deserving employees failing to recover upon their meritorious claims." Ex. A at 55.

32. The Arbitrator designed the remedy awarded to address a number of issues he identified. Specifically, the Arbitrator found that, while all the Employers had failed to pay required wages, calculating exact amounts owed to specific employees would be "impractical, if not impossible" and would "require the expenditure of substantially more legal time and expense, while causing employees to miss work to attend hearings." Id. at 47. While severity of violation varied, the Arbitrator found that all Employers had liability. Id. at 48. While "the amount being required of all Employers is less than what they would face even if their alleged uniqueness was calculated" id. at 50, "such a remedy is fair to the individual employees, who will benefit by creation of a fund for prompt recovery of claims." Id. at 49. The Arbitrator concluded that "[c]ommon sense and the interests of arbitral economy favor a remedy which fairly compensated employees for their losses, while avoiding depletion of resources through years of costly, individual hearings." Id. at 48. The Arbitrator grounded this remedy in the intent of the Parties to adopt a "fair and expeditious process for resolving their disputes." Id. By doing so, the Arbitrator reasoned, the Parties had also "empowered [the Arbitrator] to fashion a remedy which takes into account conditions in the industry and existing realities affecting the Employers and employees alike." Id.

33. Specifically, the Arbitrator awarded as follows:

> 1. A Special Wage Fund (hereinafter, the "Fund") shall be created by contributions from the forty-two (42) Employers in this proceeding . . . .
>
> 2. The coverage periods for the Employers are as follows:
>
> Alliance for Health: June 8, 2012 – October 31, 2021
>
> Chinese-American Planning Council Home Attendant Program, Inc.: April 1, 2008 – October 31, 2021

First Chinese Presbyterian Community Affairs Home Attendant Corp.: September 2, 2010 – October 31, 2021

New Partners Inc. d/b/a Partners in Care: July 14, 2011 – October 31, 2021

PSC Community Services, Inc: July 12, 2012 – October 31, 2021

United Jewish Council of the East Side Home Attendant Service Corp.: June 14, 2011 – October 31, 2021

All other Employers: January 2, 2013 – October 31, 2021

3. Within thirty (30) calendar days from issuance of this [Second] Award, each of the Employers shall provide to the Claims Administrator ("Administrator") . . . [specified] information for each home aide in its employ during its coverage period [and through October 31, 2021] . . . .[5]

4. Within sixty (60) calendar days after the issuance of this [Second] Award, each Employer listed in paragraph 1, above, shall contribute the sum of two hundred fifty ($250) dollars for each home aide in its employ during all or part of its coverage period. If an employee worked for more than one (1) employer, each Employer shall be bound to separately contribute two hundred fifty ($250) dollars for that employee. All contributions shall be paid to the Claims Administrator named below. . . .

5. The Fund shall be allocated sixty (60%) percent to 24-hour shift claims and forty (40%) percent to total hours inclusive of 24-hour shifts. A fifteen (15%) percent enhancement shall be added to the 24-hour shifts and total hours for the coverage period ending December 31, 2015, in calculating the amounts to be paid to the employees. . . .

6. [addressing how disbursements will be structured as it related to wages and payroll taxes] . . . .

7. [directing Employers and Claims Administrator to exchange information] . . . .

8. [providing for costs and fees to be calculated and deducted from the Fund] . . . .

---

[5] The Arbitrator specifically excluded the following individuals: Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Boris Pustilnik, Maral Agarunova, Epifania Hichez, Carmen Carrasco, Seferina Acosta, and Eugenia Barahona Alvarado. Ex. A at 52-53, 67.

9. [giving attorneys 30 days to submit applications for attorneys' fees and expenses to be determined by the arbitrator though noting that the Union has advised they will be returning to the Fund any attorneys' fees awarded to the Union, for disbursement to employees] . . . .

10. In the event there are funds remaining on hand after distribution to employees has been made, those funds shall be deposited to the jointly administered 1199SEIU Home Care Industry Education Fund, which is a benefit fund to which all Employers contribute and which operated for the benefit of educating and training home care employees.

11. Each aide who timely provides a claim form shall receive a minimum of ten ($10) dollars . . . .

12. Employees of Employer who fails to provide data or funding directed by my Award shall not receive payment for the portion of time they worked for such employer, unless or until the data and funding is received. The Union may seek provisional remedies before me in order to ensure my Award is not ineffectual, by requesting attachment, undertaking, an increased *pro rata* distribution, or such other relief as may be proper to achieve compliance with my Award by such Employer.

13. [identifying notice and claim form as Exhibit A] . . . .

14. [directing methods of notice by Claims Administrator, cut off times for claims to be submitted, and payment method and timeline] . . . .

15. [appointing Arden Claims Services, LLC, as Claims Administrator] . . . .

Id. at 50-64.

34. The Arbitrator rejected some Employers' arguments that their exposure to damages was lower than others due to a higher degree of compliance. Id. at 49. The Arbitrator was "convinced their argument [was] outweighed by the overarching interest of the Union and all Employers as a whole in maintaining the viability of the industry and its workforce." Id. Individualized hearings for each Employer's specific circumstances would require enormous time and expense and the Arbitrator concluded that it made "no sense to issue an award requiring employees wait several more years before their claims are determined and collection of damages

can be attempted." As a result, the Arbitrator concluded that, "in these particular circumstances, a per capita contribution remedy is the only reasonable course." Id.

35. Section 301 of the LMRA, 29 U.S.C. § 185, provides that suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

36. The Second Award should be confirmed and entered as a judgment of this Court pursuant to LMRA Section 301, 29 U.S.C. § 185.

37. 1199SEIU has not applied for the same or similar relief before this or any other court.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner 1199SEIU respectfully prays for an Order confirming the Second Award of the Arbitrator herein.

Dated: March 1, 2022
New York, New York

LEVY RATNER, P.C.

*/s Laureve Blackstone*
By: Laureve Blackstone
Attorneys for Petitioner
*1199SEIU United Healthcare Workers East*
80 Eighth Avenue
New York, New York 10011
(212) 627-8100
(212) 627-8182 (fax)
lblackstone@levyratner.com