UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————

1199SEIU UNITED HEALTHCARE WORKERS
EAST,                                          20-cv-3611 (JGK)

                  Petitioner,          OPINION AND ORDER

       - against -

PSC COMMUNITY SERVICES, ET AL.,

                 Respondents.

——————————————————————————

JOHN G. KOELTL, District Judge:

    The present motions concern an award rendered in an
arbitration pursuant to Section 301 of the Labor Management
Relations Act of 1947 (the "LMRA") involving the petitioner,
1199SEIU United Healthcare Workers East (the "Union") and the
respondents, a group of home care agencies. In the award, the
arbitrator determined that the respondents had committed various
wages and hours laws violations with respect to over 100,000 of
the respondents' current and former Union member-employees. The
arbitrator ordered the respondents to create and contribute to a
compensation fund of approximately $30 million (the "Fund"). The
Union, which prosecuted the arbitration on behalf of its current
and former members, opted not to take any attorney's fees from
the Fund.

    Twelve former employees of certain respondents (the
"Movants"), seven of whom were expressly excluded from the

award, now seek a preliminary injunction that would prevent the parties from complying with the award, setting up the Fund, and using the Fund to compensate claimants for the respondents' wages and hours violations. The Movants also seek to dismiss the Union's petition to confirm the award (the "Petition," ECF No. 183). None of the respondents have opposed the Petition or confirmation of the award.

Although the Movants purport to bring their motion on behalf of themselves and a relatively small group of former Union members, none of the Movants are named plaintiffs of any certified class of former Union members. The Movants seek to stop enforcement of the award with respect to all current and former Union members, arguing that the Movants and those that they purport to represent would be irreparably harmed if the arbitration award proceeded.

For the following reasons, the Movants' motions to dismiss and for a preliminary injunction are **denied.**

**I**

The Court assumes familiarity with the Court's prior opinion in this action, which confirmed an earlier jurisdictional award of the arbitrator and denied motions of former employees of certain respondents to intervene and to dismiss the Union's petition or to stay confirmation of that award. See 1199SEIU United Healthcare Workers E. v. PSC Cmty.

2

Servs., 520 F. Supp. 3d 588 (S.D.N.Y. 2021) (the "Confirmation Order"). The facts relevant to resolving the Movants' motions are set forth below and constitute the Court's findings of fact.

The Union is a labor union that serves as the sole and exclusive representative for the respondents' home health aide employees, including for purposes of collective bargaining over the terms and conditions of their employment. Confirmation Order, 520 F. Supp. 3d at 594. The respondents are licensed home care agencies. Id. At all relevant times, the Union was a party to collective bargaining agreements ("CBAs") with all the respondents. Id. at 594-95. In or about 2015, the Union signed a memorandum of agreement (the "2015 MOA") with the respondents that amended the CBAs. Id. at 595. The 2015 MOA laid out an alternative dispute resolution process through which all claims arising under the New York Labor Law, the New York Home Care Worker Wage Parity Law, and the Fair Labor Standards Act (collectively, the "Covered Statutes") must be resolved. Id. at 595-96. Specifically, the 2015 MOA required that "all claims brought by either the Union or Employees" for violations of any Covered Statute must first go through a grievance procedure or mediation and, if not resolved through the grievance procedure

or mediation, must be submitted to "final and binding arbitration." Id.[1]

On January 2, 2019, the Union filed a class action grievance against the respondents on behalf of the Union's home care members "concerning violations of the CBAs regarding wage and hour claims arising under the Covered Statutes." Confirmation Order, 520 F. Supp. 3d at 596. Certain parties then participated in a mediation pursuant to the 2015 MOA. On December 24, 2019, the arbitrator declared that the mediation had concluded and directed the parties to submit briefs addressing the issues of (1) whether the claims of former and current Union members were arbitrable; and (2) whether the arbitrator had jurisdiction to adjudicate those claims "irrespective of whether employees' employment terminated prior to the effective date of the" 2015 MOA. Id. at 597.

The arbitrator resolved these questions in an award dated April 17, 2020 (the "First Award"). In relevant part, the arbitrator determined that the claims of former and current Union members were arbitrable and that the arbitrator had jurisdiction to adjudicate those claims even if former employees had ceased their employment before the Union entered the 2015 MOA. See Confirmation Order, 520 F. Supp. 3d at 597. However,

---

[1] Unless otherwise noted, this Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

the arbitrator expressly excluded from the First Award eight former employees of certain respondents whose employment had ceased before the 2015 MOA was executed because state or federal courts had previously concluded that those former employees could not be compelled to arbitrate their claims. Id. The Union filed its petition to confirm the First Award in this Court on May 8, 2020.

The Court granted that petition in the Confirmation Order and denied motions of former employees of certain respondents to dismiss the Union's petition or stay confirmation of the First Award. In the Confirmation Order, the Court concluded that this group of former employees, which included several of the Movants, lacked standing to challenge the First Award because they were not parties to the arbitration and because they did not claim that the Union had breached any duties or engaged in any other malfeasance. Id. at 598-99. The Court also denied these movants' motions to intervene for the purposes of challenging the First Award, concluding that any purported interest that they had in opposing confirmation of the First Award was "too contingent or remote to be cognizable under Rule 24." Id. at 600. The former employees filed an appeal of the Confirmation Order with the Court of Appeals for the Second Circuit and that appeal remains pending. Following the Confirmation Order, the Union and the respondents proceeded to

litigate the merits of the Union's grievance before the arbitrator.

The arbitrator issued the second award resolving the merits of the Union's wages and hours claims on February 25, 2022 (the "Second Award," ECF No. 183-1, together with the First Award, the "Awards").[2] See Petition ¶ 24. In the Second Award, the arbitrator determined that the respondents violated the Covered Statutes during relevant time periods. Id. ¶¶ 28-29. The arbitrator ordered a per capita contribution remedy to compensate the respondents' current and former employees for these violations. Id. ¶ 30. The arbitrator explained that he arrived at the per capita contribution remedy after considering several submissions, including employee affidavits and the respondents' financial records, along with other factors including the financial stability of the home care industry. Id. ¶ 31. The arbitrator ultimately concluded that a "per capita contribution greater than two hundred fifty ($250) dollars is not sustainable and will, inevitably, lead to deserving employees failing to recover upon their meritorious claims." Id. ¶ 31. The parties now intend to establish the Fund, fund it with

---

[2] The arbitrator issued a supplement to the Second Award on March 16, 2022, that corrected certain minor errors in the Second Award. These corrections are not material to any issue before the Court. See ECF No. 212-2.

the respondents' contributions, and disburse awards to claimants in accordance with the arbitrator's directions.

The arbitrator also ordered that: (1) within thirty days of the issuance of the Second Award (on or about March 25, 2022), the respondents should provide certain information to the designated claims administrator and the Union; (2) within thirty-five days of the issuance of the Second Award (on or about March 30, 2022), the designated claims administrator should create a website with information about the Second Award and Fund; (3) within sixty days of the issuance of the Second Award (on or about April 25, 2022), the respondents should fund the Fund and the claims administrator should mail a notice describing the Second Award and the Fund to eligible current and former employees (the "Notice"); (4) within sixty days of the date that the Notice is mailed (on or about June 25, 2022), the recipients must return their claim forms; and (5) no later than forty-five days after the claim forms are due (approximately August 9, 2022), the claims administrator should issue checks to the claimants. See Second Award at 50-65. The Notice contains the following provisions:

> I understand that by submitting a Claim Form, I release my Employers and their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsurers, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through,

under or in concert with any of them ("Releasees"), from any claim that was or could have been asserted by me, or by the 1199 Union on my behalf either in the Arbitration or at any other time, based on facts or circumstances that occurred prior to September 30, 2021. The claims I am releasing include any and all claims under the 1199 Union collective bargaining agreement, the Fair Labor Standards Act, the New York Home Care Worker Wage Parity Law, the New York Labor Law, and any other claims under theories of contract, tort, third party beneficiary and other liability.
. . .
**Question 6. Can I decline to file a claim and pursue my claims elsewhere?** No, pursuant to your collective bargaining agreement and the Award your claims have already been decided and ruled on by the Arbitrator.
. . .
**Question 7. What happens if I do not submit the Claim Form or do not do so in a timely manner?** . . . Please also be advised that even if you do not submit a Claim Form, the Award precludes you from seeking relief, either on your own or through the 1199 Union, beyond what is provided for in the Award . . ..

Second Award, Ex. A, at 5-6.

The Union petitioned this Court to confirm the Second Award on March 1, 2022. On March 11, 2022, the Movants moved for a preliminary injunction enjoining the Union, the respondents, and the claims administrator from complying with the directions of the Second Award, including enjoining them from disseminating the Notice and paying out any claims from the Fund. The Movants also moved to dismiss the Petition on the basis that the Court lacks subject matter jurisdiction because of the pending appeal of the Confirmation Order. The Union opposes the Movants' motions, arguing that the requested preliminary injunction should not issue and that the Second Award should be confirmed.

## II

The Union contends that the motions should be denied because the Movants lack standing to seek dismissal of the Petition and the requested preliminary injunction. All twelve Movants are former employees of certain respondents whose respective terms of employment ceased before the 2015 MOA was executed. Seven of the twelve Movants are individuals who were expressly carved out of and are not bound by the Awards (the "Carved-Out Movants").[3] The remaining five Movants were not carved out of the Awards. Four of them had moved to intervene in this case for the purposes of opposing the petition to confirm the First Award.[4] The Court denied those motions to intervene. Gail Yan, the final Movant, did not previously move to intervene in this action but filed a motion to dismiss the petition to confirm the First Award. The Movants purport to bring their motions "for themselves and on behalf of all other individuals they represent and who are Pre-2015 MOA Employees." See ECF No. 190 at 1.

---

[3] They are Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Epifania Hichez, Carmen Carrasco, Eugenia Barahona Alvarado, and Seferina Acosta. See First Award at 44 & n.18; Second Award at 12 n.12.

[4] They are Mei Kum Chu, Sau King Chung, Qun Xiang Ling, and Maria Diaz. Three of the Carved-Out Movants — Hichez, Carrasco, and Acosta — had also moved to intervene in this case for the purposes of challenging the First Award. See Confirmation Order, 520 F. Supp. 3d at 597-98.

The parties in this case are the Union and the respondent home care agencies. The Movants are not parties in this case. Unlike when certain Movants moved to dismiss the petition to confirm the First Award, none of the Movants here filed motions to intervene in this action for the purposes of seeking dismissal of the Petition or the requested preliminary injunction. Instead, they filed their motions and assumed that they were entitled to seek the requested relief as non-parties and non-intervenors.[5] This was procedurally improper. Because the Movants are not parties to this action and have not attempted to intervene for the purposes of moving to dismiss the Petition to confirm the Second Award or to seek a preliminary injunction, they are not entitled to seek dismissal of the Petition or the requested preliminary injunction. See, e.g., E.E.O.C. v. E. Airlines, Inc., 736 F.2d 635, 637 (11th Cir. 1984) (a non-party's "right to move to vacate [a] consent decree was, of necessity, predicated on her ability to intervene successfully in [the action]. Otherwise, [the non-party], as a non-party to the [action] would lack standing to move to vacate the consent

---

[5] Those Movants who moved to intervene for the purposes of opposing confirmation of the First Award appeared to understand that they needed to intervene in order to participate in this case and seek relief from this Court. See, e.g., ECF No. 106 at 1 ("The Court should permit Proposed Intervenors, who all stopped working for CPC or UJC before those Agencies signed the MOA with the Union, to intervene under Fed. R. Civ. Pro. 24 as of right so that they can request that the Court dismiss the Petition [to confirm the First Award] or stay the case.").

decree, or to make any other motion, in the [action].");
Greenbaum v. Islamic Republic of Iran, No. 08-cv-0740, 2008 WL
11336781, at *1 (C.D. Cal. July 7, 2008) (denying non-party's
motion to dismiss because "if a party does not formally
intervene, it does not have a right to be heard.") (citing
Citibank Int'l v. Collier-Traino, Inc., 809 F.2d 1438, 1440 (9th
Cir. 1987)); G-I Holdings, Inc. v. Baron & Budd, No. 01-cv-0216,
2002 WL 1822929, at *1 (S.D.N.Y. Aug. 7, 2002) (denying non-
parties' motion for partial summary judgment: "Until such time,
if ever, that the Movants comply with the formal requirements of
Rule 24(c), the parties to this suit shall not be required to
respond to any motions that the Movants file."). Accordingly,
because the Movants have not sought to intervene in this case
for the purposes of making their motions, the motions are not
properly before this Court and must be denied.[6]

Moreover, there are additional reasons that the Movants
lack standing to pursue their current motions. If non-party
intervenors seek different relief from that which the parties to
an action are seeking, then the intervenors must demonstrate
their Article III standing to pursue that relief. Town of

---

[6] The Union did not raise arguments relating to the Movants' failure to
intervene in their brief in opposition to the Movants' motion. However, this
issue must be addressed because the Movants' failure to make a motion to
intervene is intertwined with the issue of the Movants' standing, which the
Court has an independent obligation to investigate. See, e.g., Dodge v.
County of Orange, 103 F. App'x 688, 689 (2d Cir. 2004).

Chester v. Laroe Estates, Inc., 137 S. Ct. 1645, 1651 (2017);

Cross Sound Cable Co., LLC v. Long Island Lighting Co., No. 21-cv-2771, 2022 WL 247996, at *8-10 (E.D.N.Y. Jan. 27, 2022).[7] The Movants are asking this Court to dismiss the Petition and to grant a preliminary injunction barring enforcement of the Second Award. The Movants are plainly seeking different relief from the Union, which seeks confirmation of the Second Award, and the respondents, who do not oppose confirmation. Accordingly, the Movants must demonstrate that they have standing to seek dismissal of the Petition and the requested preliminary injunction.

The Movants lack standing to seek dismissal of the Petition. As the Court explained in the Confirmation Order, in the context of labor arbitrations, "an individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties." Katir v. Columbia Univ., 15 F.3d 23, 24-25 (2d Cir. 1994); see also Confirmation Order, 520 F. Supp. 3d at 598-99 (collecting cases). In order to have

---

[7] This would be the case if the Movants had moved to intervene either as of right or permissively. In Chester, the Supreme Court determined only that an intervenor as of right must demonstrate Article III standing when that litigant is seeking different relief from what the parties are seeking. 137 S. Ct. at 1651. However, lower courts analyzing Chester have explained persuasively that the reasoning employed by the Supreme Court applies equally in the context of permissive intervention. See Cross Sound, 2022 WL 247996, at *9-10 (collecting cases).

standing "to attack an arbitration award under section 301 of the [LMRA]," an employee must make a "showing of fraud or deceit" or demonstrate that "the union breached its statutory duty of fair representation" or "failed to act upon the award." Confirmation Order, 520 F. Supp. 3d at 599. Because the Movants that moved to dismiss the petition to confirm the First Award failed to make such a showing, the Court determined that they lacked standing to seek dismissal of that petition. Id.

The same result is appropriate here. It is undisputed that the Movants were not parties to the arbitration, which only involved the Union and the respondents. Moreover, the Movants still have not alleged that the Union breached any duties, failed to act on the Second Award, or engaged in any fraud or deceit. Accordingly, the Movants lack standing to make their motion to dismiss the Petition.

The Movants also lack standing to seek the requested preliminary injunction. To satisfy the requirements of Article III standing, a party must show that (1) the party has suffered an actual or imminent injury in fact, which is concrete and particularized; (2) there is a causal connection between the injury and defendant's actions; and (3) it is likely that a favorable decision in the case will redress the injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of

establishing these elements." Id. at 561; see also Springer v. U.S. Bank Nat'l Ass'n, No. 15-cv-1107, 2015 WL 9462083, at *3 (S.D.N.Y. Dec. 23, 2015).

The Movants are not suffering any actual or imminent injury in fact that would likely be redressed by a preliminary injunction. The Movants maintain that the arbitrator was without jurisdiction to consider the claims of pre-2015 MOA employees and that these employees are entitled to pursue their claims in other forums. The Movants argue that the Notice misleadingly advises recipients that the arbitration resolved all their potential claims against their former employers and that the recipients cannot prosecute any such claims in state or federal court. The Movants argue that if the Notice were disseminated, all pre-2015 MOA employee-recipients would be injured because the Notice is false, misleading, and would confuse them about where and in what manner they can prosecute their claims.

The prospect of this purported injury is insufficient to confer standing on the Movants. The Carved-Out Movants will not suffer this purported injury because they are expressly excluded from the Awards and so are not bound by any of their provisions. Because they are not bound by the Awards, the Carved-Out Movants' active, ongoing efforts to prosecute their claims in other forums will not be impeded by the Second Award in any way. Moreover, the Carved-Out Movants cannot claim credibly that they

would be confused by any Notice because they and their lawyers are indisputably aware of the court orders enjoining arbitration of their claims and of the fact that they have been carved out of the Awards. The remaining Movants lack standing for similar reasons. They and their lawyers are obviously apprised of any purported issues with the Notice because they are the individuals that are bringing those purported issues to the Court's attention. Because none of the Movants could possibly be confused by the Notice, the Movants will not actually suffer the alleged injuries of which they complain in the absence of the requested preliminary injunction. The Movants therefore do not have standing to seek the requested preliminary injunction. <u>See, e.g.</u>, <u>Goldstein v. Home Depot U.S.A., Inc.</u>, 609 F. Supp. 2d 1340, 1348 (N.D. Ga. 2009) (plaintiff lacked standing to seek an injunction because "the injunction proposed by [the] plaintiff, if granted, would in no way benefit [the] plaintiff.").

To the extent that the Movants purport to base their standing on the alleged prospective confusion and related injuries to the pre-2015 MOA employees that have not appeared in this action, the Movants' arguments are without merit. To have standing, a party must allege a "concrete and particularized injury" that affects the party "in a personal and individual way." <u>Lujan</u>, 504 U.S. at 560 & n.1. Absent exceptional circumstances that are not present here, a party "must assert

15

his or her own legal rights and interests" to have Article III standing and "cannot rest a claim to relief on the legal rights or interests of third parties." <u>Dava v. City of New York</u>, No. 15-cv-8575, 2016 WL 4532203 at *10 (S.D.N.Y. Aug. 29, 2016) (quoting <u>Powers v. Ohio</u>, 499 U.S. 400, 410 (1991)). Accordingly, the Movants must demonstrate that they themselves would be injured and misled by the Notice if requested preliminary injunction did not issue; relying on the risk of confusion to parties not before this Court is insufficient. The Movants have failed to make such a showing because they cannot claim plausibly that the Notice would cause them any confusion.[8]

The Movants advance a single argument in support of their contention that they have standing to bring the present motions. During the pendency of the appeal of the Confirmation Order, the Union moved to dismiss the appeal on the basis that the appellants — a group of litigants that includes five of the Movants — lacked standing to prosecute the appeal.[9] In a motions

---

[8] This conclusion is not disturbed by the fact that certain Movants are named plaintiffs in putative class actions pending in state court and purport to seek relief here on behalf of potential class members. As the Movants conceded at argument on the present motions, the state courts have not yet certified any classes in those actions. In any event, in the context of class actions, "a court must analyze the injuries allegedly suffered by the named plaintiff, not unnamed members of the potential class, to determine whether the plaintiff has Article III standing." <u>Mason v. Reed's Inc.</u>, 515 F. Supp. 3d 135, 141 (S.D.N.Y. 2021) (citing <u>Warth v. Seldin</u>, 422 U.S. 490, 502 (1975)).

[9] Specifically, the Union argued in its motion to dismiss the appeal that Yan lacked Article III standing and that Guzman, Herrera, Rivas, and Alvarado lacked appellate standing. <u>See</u> <u>1199SEIU United Healthcare Workers E. v.</u>

order dated September 1, 2021, the panel denied the motion to dismiss, explaining that "one or more of the Appellants" "have made a threshold showing that they have interests plausibly affected by the judgment." 1199SEIU United Healthcare Workers E. v. Chinese-American Planning Council Home Attendant Program, No. 21-631-cv, ECF No. 74 at 2 (2d Cir. Sept. 1, 2021) (citing NML Cap., Ltd. v. Republic of Argentina, 727 F.3d 230, 239 (2d Cir. 2013)). The denial of the motion to dismiss was "without prejudice to the [Union's] renewing its arguments to the merits panel." Id. The Movants contend that this order constrains this Court to find that the Movants have standing to seek dismissal of the Petition and the requested preliminary injunction. Reply at 9.

This argument is without merit. First, the issues raised in the Union's motion to dismiss the appeal related to whether the appellants had standing to prosecute the appeal of the order that confirmed the First Award. However, no Movant previously sought any injunction from this Court or from the court of appeals. The motions order therefore did not concern any issues related to the Movants' standing to seek a preliminary injunction directed to the Second Award. Accordingly, the motions order has no bearing on the question of whether the

---

Chinese-American Planning Council Home Attendant Program, No. 21-631-cv, ECF No. 50 (2d Cir.).

Movants have standing to seek the requested preliminary
injunction.

Second, the motions order does not compel this Court to
find that the Movants have standing to seek dismissal of the
Petition. The motions order was without prejudice and
constituted an interim, non-final resolution of the issue of the
appellate standing of certain parties involved in the appeal.
The issue of appellate standing was addressed in the parties'
subsequent briefs and will be revisited by the merits panel,
which may ultimately determine that the appellants lack
appellate standing. See, e.g., Rezzonico v. H & R Block, Inc.,
182 F.3d 144, 148-52 (2d Cir. 1999) (merits panel dismissing an
appeal after the motions panel denied a motion to dismiss the
appeal). Unless and until the court of appeals finally resolves
an issue relevant to the Movants' standing to challenge
confirmation of the Second Award, the Court is bound to follow
Katir, 15 F.3d 23, and its progeny, which provide plainly that
the Movants lack standing to move to dismiss the Petition. See
id. at 24-25.

Accordingly, because the Movants lack standing to seek
dismissal of the Petition or the requested preliminary
injunction, the Movants' motions are dismissed.

**III**

Irrespective of whether the motions are procedurally proper and whether the Movants have standing to bring the motions, the motions should be denied on the merits.

**A.**

A preliminary injunction "is one of the most drastic tools in the arsenal of judicial remedies," Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007), and it "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). Courts consider the following factors in determining whether a preliminary injunction pending appeal should issue: (1) whether the movant will suffer irreparable injury absent the injunction, (2) whether a party will suffer substantial injury if the injunction is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected. See LaRouche v. Kezer, 20 F.3d 68, 72 (2d Cir. 1994); Columbus Ale House, Inc. v. Cuomo, No. 20-cv-4291, 2020 WL 6507326, at *1 (E.D.N.Y. Nov. 5, 2020). The "probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay." Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002).

With respect to irreparable injury, the Movants contend that allowing the parties to disseminate the Notice would cause irreparable harm in the form of "mass confusion" among pre-2015 MOA employees. The Movants argue that the Notice is incorrect, misleading, and will improperly dissuade the pre-2015 MOA employees from prosecuting their claims against their former employers in state or federal court, which the Movants maintain this group of employees are entitled to do. The Movants also contend that the danger of disseminating the Notice with allegedly false and misleading information is particularly acute because the pre-2015 MOA employees, and home health aides in general, tend to comprise a socio-economically vulnerable population.

The Movants have failed to make the required showing of irreparably injury. First, the Movants have not demonstrated that the Notice is misleading. To the contrary, the Notice is consistent with the Awards and this Court's Confirmation Order. And to the extent that the Movants believe the Notice is misleading, they are fully aware of their contentions and could not be deceived by the Notice. Second, if the court of appeals ever found that the Notice were inaccurate, corrective notices could be disseminated to mitigate any confusion, which demonstrates that any alleged harm is not irreparable.

Additionally, the Movants' claim of irreparable harm is undercut by the way in which they have litigated this case. After the Confirmation Order, the Movants were aware that the arbitration was proceeding to the merits phase and would involve the claims of pre-2015 MOA employees. Despite this, none of the Movants sought an expedited appeal of the Confirmation Order and consequently, oral argument in the appeal of that order has not yet been scheduled. The Movants also did not seek an order from this Court or the court of appeals staying the arbitration pending the appeal of the Confirmation Order.[10] If the Movants thought that the Second Award would irreparably harm the pre-2015 MOA employees, then they could have sought relief at some point in the past year rather than seeking injunctive relief only after the arbitration was completed.

Although the Movants and those that they purport to represent would not be irreparably harmed in the absence of an injunction, the requested preliminary injunction would undoubtedly harm a large group of current and former Union

---

[10] On May 15, 2020, certain Movants moved a state court to stay the arbitration after the arbitrator issued the First Award. The defendants removed that action to this Court. See Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corp., No. 20-cv-3929 (S.D.N.Y. filed May 20, 2020). Certain Movants then filed a motion to remand the case but did not renew their request to stay the arbitration either before this Court or the court of appeals. This Court denied the motion to remand but certified an interlocutory appeal of that order. See Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corp., No. 20-cv-3929, 2021 WL 1852038 (S.D.N.Y. May 7, 2021). That appeal remains pending.

members. There is no dispute that the arbitrator properly exercised jurisdiction over and finally resolved the claims of some large fraction of a group of 100,000 of the respondents' current and former employees.[11] The arbitrator determined that the respondents violated the Covered Statutes with respect to these Union members and found that they are entitled to compensation for these violations. Despite this, the Movants seek an injunction enjoining enforcement of the entirety of the Second Award, which would result in unnecessarily delayed payouts to all post-2015 MOA employees. In view of this harm, it would be improper to allow twelve Movants that purport to represent the interests of a relatively small group of former employees to frustrate enforcement of the Second Award. Moreover, even the pre-2015 MOA employees would suffer some harm if the requested preliminary injunction issued because the disbursement of their awards from the Fund would be delayed.

Next, the Movants argue that they have a substantial possibility of success on appeal and in large part rehash certain arguments that were previously presented to this Court and rejected in the Confirmation Order.[12] However, the

---

[11] The Union's and the Movants' counsel were both unable to provide a specific estimate of how many former Union members are solely pre-2015 MOA employees.

[12] For example, the Movants once again invoke Agarunova v. Stella Orton Home Care Agency, Inc., 794 F. App'x 138 (2d Cir. 2020). As this Court explained in the Confirmation Order, Agarunova does not support the Movants' arguments. In that case, the court of appeals declined to address the argument that the question of arbitrability was delegated to the arbitrator because that

substantial questions with respect to the standing of the Movants, combined with the careful reasoning of the arbitrator in the Awards – which are owed deference – undermine the alleged likelihood of success on the merits. See, e.g., United States v. New York City Bd. of Educ., 620 F. Supp. 2d 413, 417 (E.D.N.Y. 2009) (denying injunction pending appeal because "neither the threat of irreparable harm nor the likelihood of success on appeal is sufficiently one-sided to justify disturbing what the Court believes to be the legally correct result.").

Finally, the public interest would be undermined if the injunction issued. The public interest would be promoted if the arbitrator's decision were complied with and the group of more than 100,000 current and former Union members were promptly compensated for their injuries.[13] By contrast, the public interest would not be served by allowing twelve pre-2015 MOA employees to delay payouts to this entire class of individuals based on the prospect of remote and speculative injuries. Moreover, it is unclear when, if ever, the pending state court litigations involving certain pre-2015 MOA employees will be resolved favorably and whether any recovery obtained in those

---

argument was not properly raised before the district court. See Confirmation Order, 520 F. Supp. 3d at 608.

[13] As noted above, the group of individuals that are entitled to recovery pursuant to the Second Award are socio-economically vulnerable. This underscores the public interest in ensuring that funds are promptly distributed.

actions will be any more substantial than that awarded in the Second Award.[14] The public interest in ensuring that compliance with the Second Award is not delayed is further underscored by the fact that the Union's counsel forewent recovering legal fees from the Fund, which increased the total sum available to the claimants. See Second Award at 55 n.13.

Accordingly, the Movants have failed to demonstrate their entitlement to the requested preliminary injunction. The motion for a preliminary injunction is therefore denied.

**B.**

The Movants argue that the Petition should be dismissed because the pending appeal of the Confirmation Order strips this Court of subject matter jurisdiction to consider the Petition.

"The filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Motorola Credit Corp. v. Uzan, 388 F.3d 39, 53 (2d Cir. 2004) (quoting

---

[14] At oral argument, counsel for the Movants represented that some of the state court actions involving pre-2015 MOA employees "have been proceeding since 2016; others were filed in 2017, 2018. All predate the arbitration." ECF No. 233 at 14. Certain Movants are named plaintiffs in a subset of these ongoing state court actions. In the state court actions in which the Movants are named plaintiffs, as of the date of this Opinion, no Movant has been certified as a class representative and no Movant has achieved a favorable award. Counsel further represented that out of all the pending state court litigations involving pre-2015 MOA employees, only one has been settled so far, and that in all but one of these cases, the putative classes have not yet been certified. Id. at 13-14, 29.

<u>Griggs v. Provident Consumer Discount Co.</u>, 459 U.S. 56, 58
(1982)). A pending appeal "only divests the district court of
jurisdiction respecting the questions raised and decided in the
order that is on appeal." <u>Id.</u> Accordingly, the issue of this
Court's jurisdiction over the Petition turns on whether
questions relating to the confirmation of the Second Award are
"involved in" the pending appeal of the Confirmation Order.

The appeal of the Confirmation Order and the pending
Petition to confirm the Second Award raise distinct questions.
The questions currently before the court of appeals concern the
arbitrability of the pre-2015 MOA employees' claims and whether
this Court's confirmation of the arbitrator's jurisdictional
determinations was correct. By contrast, the Petition concerns
the merits of the entirety of the Second Award, which resolved
the wages and hours claims of approximately 100,000 current and
former Union members and fashioned a remedy that the arbitrator
deemed to be appropriate in view of several competing
considerations. These circumstances are illustrative of the
general principle that merits issues on the one hand, and issues
of jurisdiction and arbitrability on the other, are distinct
inquiries that turn on the resolution of different questions.
<u>See, e.g.</u>, <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp</u>,
460 U.S. 1, 20-21 (1983) ("Although [the party] will have to
litigate the arbitrability issue in federal rather than state

court, that dispute is easily severable from the merits of the underlying disputes."); Weingarten Realty Invs. v. Miller, 661 F.3d 904, 909 (5th Cir. 2011) ("[T]he merits are not an aspect of arbitrability. A determination on the arbitrability of a claim has an impact on what arbiter — judge or arbitrator — will decide the merits, but that determination does not itself decide the merits."). Accordingly, because the questions raised and decided in the Confirmation Order are distinct from those raised by the Petition to confirm the Second Award, this Court has jurisdiction to consider the Petition.

This conclusion is supported by the decision of the Court of Appeals for the Second Circuit in Motorola, 388 F.3d 39. In that case, the district court had denied the defendants' motion to compel arbitration. Id. at 53. The defendants appealed that decision and while that appeal was pending, the district court proceeded to hold a bench trial and decide the merits of the case. Id. at 46, 53. The defendants filed a second appeal from the district court's decision on the merits. In that appeal, the defendants argued that the pending appeal of the order denying the motion to compel had divested the district court of jurisdiction to proceed with the case. The court of appeals found this argument to be without merit and "explicitly adopt[ed] the Ninth Circuit's position that further district court proceedings are not 'involved in' an appeal of an order

26

refusing arbitration." Id. at 54 (citing Britton v. Co-op
Banking Grp., 916 F.2d 1405, 1412 (9th Cir. 1990) ("Since the
issue of arbitrability was the only substantive issue presented
in this appeal, the district court was not divested of
jurisdiction to proceed with the case on the merits.")).

While the facts of Motorola and this case are not perfectly
analogous, Motorola suggests that pending appeals from decisions
involving issues of arbitrability do not divest district courts
of jurisdiction to consider the merits of an underlying dispute.
Just as the district court in Motorola had jurisdiction to
resolve the merits of the parties' dispute notwithstanding the
pending appeal of the arbitrability decision, this Court
currently has jurisdiction to consider the Petition to confirm
the Second Award, which resolved the merits of the parties'
dispute. The Movants' motion to dismiss the Petition is
therefore denied.

**IV**

The Union filed the Petition and a memorandum of law in
support of the Petition on March 1, 2022. As of the date of this
Opinion, no party has filed a cross-motion to vacate the Second
Award. In its opposition to the Movants' motions to dismiss and
for a preliminary injunction, the Union reiterated that the
Court should grant the Petition and confirm the Second Award. In
their reply brief, the Movants requested a briefing schedule

regarding a potential cross-motion to partially vacate the Second Award if the Court denied the Movants' motion to dismiss. The Movants contend that confirmation of the Second Award on the current papers is premature and would prejudice the Movants.

The Movants are correct that the time to file a motion to vacate has not yet passed. See, e.g., Loc. Union 522, Int'l Bhd. of Teamsters, AFL-CIO v. Renewal Arts Contracting & Env't Corp., No. 02-cv-781, 2004 WL 213011, at *1 (S.D.N.Y. Feb. 4, 2004) (90-day statute of limitations for a party seeking to challenge an LMRA award). Accordingly, the Movants should be given an opportunity to file a cross-motion to partially vacate the Second Award.

It is doubtful that the Movants have standing to bring such a motion. In their motion, the Movants should explain why they have standing to challenge the Second Award notwithstanding this Opinion and the Confirmation Order. The Movants should also either file a motion to intervene for the purposes of challenging the Petition or explain why they should be permitted to seek partial vacatur of the Second Award as non-parties and non-intervenors.

The parties should submit a joint proposed scheduling order regarding any potential cross-motions to partially vacate the Second Award and motions to intervene by April 11, 2022.

28

**CONCLUSION**

The foregoing constitutes the Court's findings of fact and conclusions of law. The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, the Movants' motions to dismiss and for a preliminary injunction are **denied.**

The Clerk is directed to close Docket No. 188.

**SO ORDERED.**

**Dated:     New York, New York**
**April 2, 2022**

_____
John G. Koeltl
**United States District Judge**

29