# Exhibit A

**SCHEINMAN**
ARBITRATION & MEDIATION SERVICES

April 17, 2020

**Via E-Mail Only**
Michael P. Collins, Esq.
Bond, Schoeneck & King, P.L.L.C.
600 Third Avenue, 22nd Floor
New York, NY 10016

Patrick G. Brady, Esq.
Michael D. Thompson, Esq.
Epstein, Becker & Green, P.C.
1 Gateway Center, 13th Floor
Newark, NJ 07102

Philip K. Davidoff, Esq.
Jeffrey G. Douglas, Esq.
FordHarrison, L.L.P.
One Grand Central Place
60 East 42nd Street, 51st Floor
New York, NY 10165

Kenneth Kirschner, Esq.
David Baron, Esq.
Hogan Lovells US L.L.P., 7th Floor
390 Madison Avenue
New York, NY 10017

Douglas J. Klein, Esq.
Felice B. Ekelman, Esq.
Ryan C. Chapoteau, Esq.
Jackson Lewis, P.C.
666 Third Avenue, 29th Floor
New York, NY 10017

Lisa M. Griffith, Esq.
Ira D. Wincott, Esq.
Shirley W. Bi, Esq.
Littler Mendelson, P.C.
290 Broadhollow Road, Suite 305
Melville, NY 11747

Richard J. Reibstein, Esq.
Locke Lord, L.L.P.
200 Vesey Street 20th Floor
New York, NY 10281

Robert F. Milman, Esq.
Milman Labuda Law Group, P.L.L.C.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042

Gregory R. Begg, Esq.
Shannon D. Azzaro, Esq.
Peckar & Abramson, P.C.
70 Grand Avenue
River Edge, NJ 07661

James E. McGrath, III, Esq.
Putney Twombly Hall & Hirson, L.L.P.
521 Fifth Avenue, 10th Floor
New York, NY 10175

Scott A. Gold, Esq.
Mark E. Brossman, Esq.
Schulte Roth & Zabel, L.L.P.
919 Third Avenue, 24th Floor
New York, NY 10022

Laureve D. Blackstone, Esq.
Kimberly A. Lehman, Esq.
Levy Ratner, P.C.
80 Eighth Avenue, 8th floor
New York, NY 10011

James Reif, Esq.,
Gladstein Reif & Meginniss, L.L.P.
817 Broadway, 6th Floor
New York, NY 10003

Michael R. Minkoff, Esq.
Borrelli & Associates, P.L.L.C.
910 Franklin Avenue, Suite 200
Garden City, NY 11530

Steven L. Wittels, Esq.
Burkett McInturff, Esq.
Steven D. Cohen, Esq.
Wittels Law, P.C.
18 Half Mile Road
Armonk, NY 10504

**Re:** **Home Health Care Agencies**
**and**
**Local 1199SEIU United Healthcare Workers**
**(Class Action Grievance)**

Dear Counsel:

Enclosed please find my Award in the above referenced matters.

Thank you.

Sincerely,

*Martin F. Scheinman*

Enclosure

MFS/sk

doe.uft.01-19-0002-9543.Andolina.Hyman.trans

```
---------------------------------------X
In the Matter of the Arbitration
                                       X
           between                     X
                                       X
HOME HEALTH CARE AGENCIES,                     Re: Class Action
                                       X           Grievance
                "Employers"            X
                                       X
           -and-                       X
                                       X
LOCAL 1199 SEIU UNITED HEALTHCARE      X
WORKERS,                               X
                                       X
                "Union"                X
---------------------------------------X
```

**APPEARANCES**

    <u>**For the Employers**</u>
    BOND SCHOENECK & KING, P.L.L.C.
      Michael P. Collins, Esq., Of Counsel
      (for PSC Community Services)

    EPSTEIN BECKER & GREEN, P.C.
      Patrick G. Brady, Esq., Of Counsel
      Michael D. Thompson, Esq., Of Counsel
      (for New Partners, Inc. d/b/a Partners in Care)

    FORD HARRISON L.L.P.
      Philip K. Davidoff, Esq., Of Counsel
      Jeffrey G. Douglas, Esq., Of Counsel
      (for Stella Orton Home Care Agency, Richmond Home
      Needs, Sunnyside Home Care Project, Sunnyside
      Citywide Home Care, Family Home Care of Brooklyn
      and Queens and Care at Home)

    HOGAN LOVELLS U.S., L.L.P.
      Kenneth Kirschner, Esq., Of Counsel
      David Baron, Esq., Of Counsel
      (for Chinese-American Planning Council
      Home Attendant Program and United Jewish
      Council of the East Side Home Attendant
      Service Corporation)

JACKSON LEWIS P.C.
  Douglas J. Klein, Esq., Of Counsel
  Felice B. Ekelman, Esq., Of Counsel
  Ryan C. Chapoteau, Esq., Of Counsel
  (for The First Chinese Presbyterian Community
  Affairs Home Attendant Corporation, Azor Home Care,
  Bushwick Stuyvesant Heights Home Attendants, Inc.,
  Cabs Homecare, RiverSpring Licensed Homecare Services
  Agency, Inc., St. Nicholas Human Supports Corporation,
  Wartburg, Alliance for Health, Inc.)

LITTLER MENDELSON, P.C.
  Lisa M. Griffith, Esq., Of Counsel
  Ira D. Wincott, Esq., Of Counsel
  Shirley W. Bi, Esq., Of Counsel
  (for Region Care, Inc.)

LOCKE LORD, L.L.P.
  Richard J. Reibstein, Esq., Of Counsel
  (for Special Touch Home Care Services, Inc.)

MILMAN LABUDA LAW GROUP, P.L.L.C.
  Robert F. Milman, Esq., of Counsel
  (for Ray Inc.)

PECKAR & ABRAMSON, P.C.
  Gregory R. Begg, Esq., Of Counsel
  Shannon D. Azzaro, Esq., Of Counsel
  (for Prestige Home Care, Inc., Prestige
  Home Attendant Inc. d/b/a All Season Home Attendant,
  Personal Touch Home Care of N.Y., Inc.)

PUTNEY TWOMBLY HALL & HIRSON, L.L.P.
  James E. McGrath, III, Esq.
  (limited appearance for Priority Home Services,
  Premiere Home Health)

SCHULTE ROTH & ZABEL
  Scott Gold, Esq., Of Counsel
  Mark Brossman, Esq., Of Counsel
  (co-counsel for Chinese-American Planning Council
  Home Attendant Program)
  (for Bronx Jewish Community Council Home
  Attendant Services, Sydney Independent Living
  Services, Home Care Services for Independent
  Living, New York Foundation for Senior Citizens
  Home Attendant Services, Cooperative Home

Care Associates, Rise Borough Home Care, Inc.,
Fegs Home Attendant Services, Home Health
Management Services Inc.)

**For the Union**
LEVY RATNER, P.C.
   Laureve D. Blackstone, Esq., Of Counsel
   Kimberly A. Lehman, Esq., Of Counsel

GLADSTEIN REIF & MEGINNISS, L.L.P.
   James Reif, Esq., Of Counsel

**Other Appearances**
BORELLI & ASSOCIATES, P.L.L.C.
   Michael R. Minkoff, Esq., Of Counsel
   (for individual Plaintiff Mercedes Pena, represented by
   the firm in pending litigation against The First
   Chinese Presbyterian Community Affairs Home Attendant
   Corp.)

WITTELS LAW, P.C.
   Steven L. Wittels, Esq., Of Counsel
   Burkett McInturff, Esq., Of Counsel
   Steven D. Cohen, Esq.
   (for individuals and proposed classes represented by
   the firm in pending and potential home care
   litigation)

**Before:** Martin F. Scheinman, Esq., Arbitrator

## BACKGROUND

On January 2, 2019, the Union filed a class action grievance on behalf of its home care bargaining unit members employed by approximately forty – eight (48) agencies ("Employers") with whom the Union has Collective Bargaining Agreements. Therein, the Union claimed employees were not properly paid on 24-hour cases and also asserted other outstanding wage and hour claims arising under the Fair Labor Standards Act, New York Home Care Worker Wage Parity Law, and or the New York Labor Law ("covered statutes").

Thereafter, the Union and virtually all of the Employers, participated in mediation before me in an effort to settle issues underlying their dispute. Some attorneys representing employees on individual claims as Plaintiffs in pending court cases also participated. The mediation concluded without settlement. The parties then proceeded to binding arbitration.

On December 24, 2019, by email, I gave the parties leave to submit briefs addressing three (3) preliminary issues to be argued orally on the first day of hearing, namely,

1.    Are the claims encompassed by the wage and hour related grievances involving current and former 1199 bargaining unit members, including those arising under federal, state and local law, arbitrable?

2.    Does the Arbitrator have jurisdiction to adjudicate the claims asserted in the wage and hour grievances, arising under federal, state and local law, filed by the parties to the Collective Bargaining Agreement ("Agreement")

which encompass all claims arising under the federal, state and local laws named in the Agreement, as well as any pending litigation or administrative actions on the identical claims, irrespective of whether employees' employment terminated prior to the effective date of the Memorandum of Agreement providing Alternative Dispute Resolution language for exclusive mediation/arbitration procedures for wage and hour disputes pursuant to the Agreement between the parties?

3.    What is the role, if any, of counsel for the individual Plaintiffs, collective or putative class in this proceeding?

Thereafter, the parties submitted pre – arbitration briefs.

A hearing was held on January 15, 2020, at the Offices of Schulte, Roth and Zabel in New York City. At that time, all parties were afforded full opportunity to introduce evidence and argument in support of their respective positions. They did so. A stenographic transcript of the hearing was taken. Following the hearing, the parties were given leave to amend their submissions and file responses to the briefs of other parties. Thereafter, an amended brief dated January 21, 2020, was filed by Wittels Law P.C. A responding brief dated January 31, 2020, was filed by Epstein Becker & Green in response to the Wittels Law P.C. amended brief.  A responding brief dated February 6, 2020, was filed by the Union, addressing Wittels Law P.C.'s request for designation as Lead Private Class Counsel in this proceeding. Upon my receipt of same, I declared the record closed.

On February 24, 2020, I re-opened the record at the request of both sides to submit copies of the decision of the United States Court of Appeals for the Second Circuit in *Aguranova v. The Stella Orton Home Care Agency, Inc.* (Summary Order, Case No. 19-78, February 24, 2020), and the decision of the Appellate Division, First Department in *Hichez v.United Jewish Council of the East Side, Home Attendant Corp.* (January 23, 2020). Upon my receipt of same, I again declared the record closed.

**DISCUSSION AND FINDINGS**

**The Issues:**

The following preliminary issues are presented for my determination:

1. Are the claims encompassed by the wage and hour related grievances involving current and former 1199 bargaining unit members, including those arising under federal, state and local law, arbitrable?

2. Does the Arbitrator have jurisdiction to adjudicate the claims asserted in the wage and hour grievances, arising under federal, state and local law, filed by the parties to the Collective Bargaining Agreement ("Agreement") which encompass all claims arising under the federal, state and local laws named in the Agreement, as well as any pending litigation or administrative actions on the identical claims, irrespective of whether employees' employment terminated prior to the effective date of the Memorandum of Agreement providing Alternative Dispute Resolution language for exclusive mediation/arbitration procedures for wage and hour disputes pursuant to the Agreement between the parties?

3. What is the role, if any, of counsel for the individual Plaintiffs, collective or putative class in this proceeding?

**Relevant Contract Language**

**2012 CBA**

\*    \*    \*    \*    \*    \*    \*

**ARTICLE XXVI**
**GRIEVANCE AND ARBITRATION PROCEDURE**

1.   A grievance is defined as any dispute between the Union (on its behalf and/or on behalf of any Employee) with the Employer involving the proper application, interpretation or compliance with the specific written provisions of the Agreement based on facts and circumstances occurring during the term of this Agreement. A grievance is subject to arbitration.

2. Grievances will be resolved in accordance with the following procedure.

\*    \*    \*    \*    \*    \*    \*

Step 4. If the grievance is not resolved at Step 3, the Union and/or Employer may within ten (10) days thereafter request that the matter be submitted for final and binding arbitration under the Labor Arbitration Rules of the American Arbitration Association.

\*    \*    \*    \*    \*    \*    \*

5.   The opinion and award of the arbitrator must be made in writing and is final and binding upon all parties. The arbitrator has full authority to decide the issue or issues in dispute, except that s/he does not have authority to amend, alter, modify, add to, or subtract from the provisions of this Agreement.

\*    \*    \*    \*    \*    \*    \*

**2014 MEMORANDUM OF AGREEMENT**

\*    \*    \*    \*    \*    \*    \*

The Parties agree that given changes in federal and state law imposing new obligations on the Employer and exposing Employers to significantly increased level of litigation, it is in the interest of the Union, Employees, and the Employer to develop an

10

expeditious and effective alternative dispute resolution procedure for the resolution of claims arising under such laws. Accordingly, between the execution of this Agreement and December 1, 2014, or as otherwise agreed by the parties, the parties shall meet in good faith to negotiate such an alternative dispute resolution procedure. If the parties are unable to agree to such a procedure in the allotted time, the Employer may submit the dispute to Martin F. Scheinman for final and binding arbitration.

\*   \*   \*   \*   \*   \*   \*

## 2015 MEMORANDUM OF AGREEMENT

WHEREAS, _____ (the "Employer") and 1199SEIU Healthcare Workers East (the "Union") are party to a collective bargaining agreement dated _____ as amended by a Memorandum of Agreement dated _____, 2014 (the "MOA" collectively, the "CBA"); and

WHEREAS, it is the intent of the parties to further modify and extend the CBA, in accordance with the terms of this Memorandum of Agreement ("this Agreement");

NOW THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

Except as otherwise expressly modified or amended in this Agreement, which is effective January 1, 2016, the CBA will remain in full force and effect through March 31, 2017.

\*   \*   \*   \*   \*   \*   \*

New Article \_\_\_\_ in the CBA, "ALTERNATIVE DISPUTE RESOLUTION", is hereby created, to read in full as follows: [Adopted effective December 1, 2015]

1. The parties agree a goal of this Agreement is to ensure compliance with all federal, state and local wage hour law and wage parity statutes. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state and local wage-hour and wage parity statutes, all claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the "Covered Statutes"), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in this Article.

The statute of limitations to file a grievance concerning the Covered Statutes shall be consistent with the applicable statutory statute of limitations. All such claims if not resolved in the grievance procedure, including class grievances filed by the Union, or mediation as described below shall be submitted to final and binding arbitration before Martin F. Scheinman, Esq. The arbitrator shall apply appropriate law and shall award all statutory remedies and penalties, including attorneys' fees, consistent with the FLSA and New York Labor Law in rendering decisions regarding disputes arising under this Article.

2. Whenever the parties are unable to resolve a grievance alleging a violation of any of the Covered Statutes, before the matter is submitted to arbitration, the dispute shall be submitted to mandatory mediation. The parties hereby designate Martin F. Scheinman, Esq., as Mediator for such disputes. Such mediation shall be requested no more than thirty (30) calendar days following exhaustion of the grievance procedure. Following submission of the dispute to mediation, the parties with the assistance of the Mediator shall establish such procedures as shall expeditiously advance the mediation process, including scheduling of the exchange of relevant information, submission of position statements, and dates for mediation.  In the absence of an agreement, the Mediator shall determine such procedures. Once the matter has been submitted to mediation, the Employer shall be obligated to produce relevant documents as requested by the Union and any objections to production shall be ruled on by the Mediator. The fees of the Mediator shall be shared equally by the Union and the Employer.

3. No party may proceed to arbitration prior to completion of the mediation process as determined by the Mediator. In the event the Union seeks arbitration of a grievance subject to these procedures, the Union shall submit its demand for arbitration to the Employer and the Arbitrator within four (4) months following the Mediator's declaration that mediation has concluded. The Employer shall be obligated to produce relevant documents as requested by the Union and any objections to production shall be ruled on by the Arbitrator. Prior to hearing, if noticed, the Union shall also be entitled to depositions of relevant witnesses. The fees of the arbitrator shall be shared equally by the Union and the Employer. The Employer shall upon notice be entitled to take the deposition of any Employee seeking relief in such arbitration or any other relevant witness.

4. In the event an Employee has requested, in writing, that the Union process a grievance alleging a violation of the Covered Statutes and the Union declines to process a grievance regarding alleged violations of the Covered Statutes, through the grievance/mediation process or to arbitration following the conclusion of mediation, an Employee solely on behalf of herself, may submit her individual claim to mediation, or following the conclusion of mediation, to arbitration. Written notice of the Employee's submission of the dispute to mediation and/or arbitration must be provided to the Employer, the Union, and the Mediator/Arbitrator within thirty (30) calendar days of written notice from the Union, as measured by postmark date, email date, facsimile date, or delivery/attempted delivery date (if such notice is served by overnight delivery service), that it has declined to process the dispute to mediation and/or arbitration. Such claims may be presented by and on behalf of the individual Employee only, with or without counsel. The Mediator/Arbitrator shall have no authority to consider class or collective claims or issue any remedy on a class basis. The fees and expenses of the Mediator/Arbitrator shall be shared equally by the employee and the Employer, unless the arbitrator finds a violation of any of the Covered Statutes, in which case the Employer shall pay the fees and expenses of the Arbitrator.[1]

[bracket supplied]

*   *   *   *   *   *   *   *

## Relevant American Arbitration Association Labor Arbitration Rules (2013)

*   *   *   *   *   *   *   *

3.  Jurisdiction

    (a)  The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

    *   *   *   *   *   *   *   *

---

[1] All of the Employers have Collective Bargaining Agreements or Memoranda of Agreement or had a "me-too provision" which was virtually identical to this provision.

## Positions of the Parties

As a preliminary matter, the Union argues the arbitrator is authorized to determine arbitrability of the underlying grievance. It contends language in the Agreement grants the arbitrator authority over issues concerning interpretation or application of the contract terms, which include arbitrability and scope of any claim submitted for his or her determination.

The Union alleges the Agreement also provides for arbitration to be governed by the Labor Arbitration Rules of the American Arbitration Association ("AAA"). It asserts AAA Rule 3(a) explicitly gives the arbitrator power to determine his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement. In the Union's view, the parties' incorporation of the AAA Rules delegates to the arbitrator full authority to determine the arbitrability and scope of any claim presented.

The Union argues its grievance is arbitrable. It contends federal policy favors arbitration and presumes a dispute is arbitrable where the contract contains an agreement to arbitrate under a broad arbitration clause. The Union alleges the parties' wage and hour Alternative Dispute Resolution Provision ("the ADR Provision"), effective December 1, 2015, is a broad arbitration clause. By its terms, the ADR Provision applies to all federal, state and wage and hour parity statutes and expressly provides

"all claims brought by either the Union or Employees, in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in this Article". Therefore, it insists all of the wage and hour claims underlying its grievance are subject to arbitration, pursuant to the ADR Provision.

The Union cites precedents from the United States Supreme Court and the United States Court of Appeals for the Second Circuit, in support of its contention such wage and hour claims are subject to resolution through collectively bargained mandatory arbitration agreements. It also submits my October 25, 2016, Award in *Chinese – American Planning Council Home Attendant Program, Inc. and 1199SEIU United Healthcare Workers East*, as further support for its position. The Union emphasizes in that case, I found the same ADR Provision invoked herein to be clear, unambiguous, and applicable to the wage and hour claims presented, including claims which arose prior to the parties' adoption of the ADR Provision. It argues that reasoning is sound and should be applied with equal force to the claims encompassed by its class grievance.

As to the second issue, the Union contends an arbitrator has jurisdiction over all claims asserted in the wage and hour grievances, irrespective of whether the employees' employment ended prior to the effective date of the ADR Provision. It maintains the ADR Provision was adopted without temporal

limitation, and therefore applies to all claims, including those which accrued prior to the Provision's effective date. It insists as their federally certified exclusive bargaining agent, the Union is empowered to pursue claims for all employees, regardless of whether their employment has terminated or whether Employers have consented to the Union's pursuit of these claims. In the Union's view, the arbitrability of claims arising during an employee's employment does not turn on whether the Union currently represents the employee. Instead, it insists the claims of former employees, regardless of when their employment ended, are arbitrable so long as the arbitration clause is broad and does not exclude former employees from its coverage.

The Union acknowledges a handful of individual Plaintiffs has raised the question whether wage and hour claims of employees whose employment ended before adoption of the ADR Provision are subject to arbitration. It suggests they did so in an effort to carve out a subset class of employees and enable them to press their claims apart from the Union's class grievance. The Union maintains that effort is based upon an artificial, illusory distinction because employees in the home care industry commonly leave one (1) agency's employ only to work for a different agency that, in all likelihood, is also party to the ADR Provision.

The Union agrees a limited number of state courts have ruled employees who left employment prior to the effective date of the ADR Provision are not bound by it and cannot be compelled to arbitrate their claims. However, it insists those decisions are not persuasive because federal labor law standards were not applied and contractual delegations of authority to the arbitrator to determine arbitrability were not followed. The Union emphasizes it was not party to any of those state court cases and is not bound by their results or precluded from pursuing the claims of all employees under its statutory and contractual authority as their federally – certified bargaining representative. It asserts those state court decisions were issued by lower court judges in two (2) actions involving a total of only four (4) employees and involved temporary or preliminary orders and not final judgments.[2] The Union notes its grievance is pending on behalf of the more than one hundred thousand (100,000) employees in the home care industry in New York City and surrounding counties whose Employers are party to

---

[2] The Union identifies four (4) employees named as Plaintiffs in the two (2) state court proceedings: Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera and Leticia Panama Rivas are the three (3) Plaintiffs in *Guzman et al v. The First Chinese Presbyterian Community Affairs Home Attendant Corporation, etc.* (N.Y. Co., Index No. 157401, Freed, J.S.C.). Boris Pustilnik is the sole Plaintiff in *Pustilnik v. Premier Home Health Care Services, Inc.* (N.Y. Co., Index No. 155081/2016, Cohen, J.S.C. (Transcript at page 48).

the ADR Provision. It contends those state court orders do not preclude the Union from pursuing its grievance and do not preclude me from ruling on his jurisdiction.[3]

In further support of the arbitrator's jurisdiction over its grievance, the Union argues having all employees' claims decided in this arbitration will benefit the employees and the home care industry by avoiding fragmented decisions from different tribunals. It alleges undesirable consequences may occur if individual employers are forced into bankruptcy or closure by inconsistent rulings. The Union contends the ADR Provision provides an expeditious forum for the fair resolution of claims and compares favorably to the state and federal judicial processes, where some employees filed claims as early as 2016 and 2017 and are still in the preliminary stages of litigation without a class being certified by any court.

The Union emphasizes its grievance was brought to protect its members' rights under the wage and hour laws and to preserve minimum wage and wage parity law gains which were won by the Union's hard-fought efforts. In the Union's view, fragmentation of claims resolution will destabilize the home care sector and

---

[3] The Union accepts counsel for the Employers in the two (2) state court cases where temporary or preliminary restraining orders issued are in an awkward position, herein. It has, therefore, agreed any decision concerning the four (4) employees who are Plaintiffs in those cases should be reserved to a later date.

impair the ability of current and former employees to recover upon wage and hour claims found to be meritorious.

The Union opposes participation in the arbitration by non-party counsel. It argues arbitration is a private matter. In the Union's view, an arbitrator should not permit outside counsel to represent an individual bargaining unit member in a grievance proceeding brought by the Union, absent contractual authority or the Union's consent. It alleges neither the contract nor the AAA Rules permit the arbitrator to allow outside counsel to represent an individual employee in this proceeding. Instead, the Union insists it retains sole authority, as exclusive bargaining representative of covered employees, to pursue this arbitration on behalf of all current and former members of the bargaining unit.

Since the Union has not consented, it maintains I should not allow representation of individual employees in this proceeding by outside counsel.

Nevertheless, and without prejudice to the foregoing position, the Union advises it will consent to my appointment of a Plaintiffs' "Coordinating Counsel" to facilitate resolution of this dispute. However, its consent is offered on condition the Coordinating Counsel a) will not be co-counsel with the Union, b) will consult with the Union at such times and on such issues as the Union deems appropriate, c) will be the Union's primary

contact for communication with private Plaintiffs' counsel, d) will be allowed to attend in – person proceedings conducted before the arbitrator, (e) will have a limited right to make presentation(s) at in – person proceedings conducted before the arbitrator as may be consented to by the Union, (f) will have no independent right to examine particular witnesses or introduce evidence, but may ask the Union to consider Coordinating Counsel's request(s) to do so, (g) shall have no formal authority to initiate, coordinate or conduct pre – hearing discovery or any right to negotiate stipulations, settlements or other matters with either the Union or the Employers and, (h) shall have the right to make written submissions on behalf of individual Plaintiffs they actually represent.[4]

In short, the Union insists 1) its grievance is arbitrable, 2) I have jurisdiction over all claims asserted in the wage and hour grievances, irrespective of whether the employees' employment ended prior to the effective date of the ADR Provision and 3) representation of individual employees by outside counsel in this arbitration proceeding is not authorized, but the Union would consent to my appointment of a Plaintiffs' Coordinating Counsel upon the conditions set forth above.

---

[4] February 6, 2020, submission by Union's counsel, Laureve D. Blackstone.

The Employers, on the other hand, do not dispute the Union's grievance is arbitrable. Of the eleven (11) law firms appearing in this proceeding on behalf of various Employers, seven (7) have conceded arbitrability on behalf of their clients.[5] These Employers' positions on arbitrability align with the Union's contentions. They acknowledge the parties have, through their Collective Bargaining Agreements, authorized an arbitrator to determine all disputes involving interpretation or application of the Agreement, which perforce includes the arbitrability and scope of the grievance.

These Employers also agree the underlying Agreement expressly incorporates the AAA Rules, which in their view provides additional evidence of the parties' delegation to an arbitrator the authority to determine his or her own jurisdiction and questions of arbitrability. They contend the entire underlying Agreement must be considered, including the 2012 Collective Bargaining Agreement (which authorizes the arbitrator to decide all issues involving application or interpretation of the contract and expressly incorporates the AAA Rules), the 2014 Memorandum of Agreement (by which they

---

[5] The seven (7) Employers' law firms conceding arbitrability of the Union's grievance are: Epstein Becker & Green, Ford Harrison, Hogan Lovells U.S., Littler Mendelson, Locke Lord, Peckar & Abramson and Schulte Roth & Zabel (joining in the submissions of Hogan Lovels and Ford Harrison).

agreed to meet and negotiate an ADR Provision for federal and state law wage and hour claims), and the 2015 Memorandum of Agreement (which establishes their agreed – upon ADR Provision for resolution of statutory wage and hour claims exclusively through arbitration). Said Employers insist when properly read as a whole, rather than in isolation, these contractual provisions constitute a waiver of the judicial forum and empower the arbitrator to determine the gateway issue of arbitrability of the Union's grievance.

These Employers agree the Collective Bargaining Agreements contain a broad arbitration clause encompassing the subject matter of the Union's grievance and constitute a valid agreement to arbitrate the disputes covered by the grievance. They do not dispute under applicable case law, the statutory wage and hour claims covered by the grievance are subject to resolution through the arbitration provisions of the Agreement.

The remaining four (4) law firms appearing for various Employers have taken no position or are neutral on the question of arbitrability.[6]

---

[6] The four (4) Employers' law firms taking no position or remaining neutral on the question of arbitrability are: Bond Schoeneck & King, Jackson Lewis, Milman Labuda and Putney Twombly.

The two (2) law firms appearing for individual Plaintiffs have also conceded the claims of their clients are arbitrable. However, the firm appearing for Mercedes Pena, Borelli & Associates, while agreeing her individual claims are arbitrable, has asked to have Pena's claims arbitrated apart from the Union's grievance, and to allow her to be represented by the firm in the arbitration.[7]

Pena asserts a right under the law to opt out of the Union's class grievance and to pursue her individual claims in arbitration with representation by counsel of her choice. She alleges her wage and hour claims seek to vindicate substantive rights granted by statutes. Pena maintains those rights are independent of any rights created by the Agreement. She contends the Union lacks a contractual basis for pursuing her claims as part of a class grievance because, in her view, the Collective Bargaining Agreement grants no clear or affirmative authority to the Union to conduct a class – wide arbitration.

In the alternative, Pena contends even if the contract is found to authorize class grievance arbitration, she has a right to opt out of the class grievance and to pursue her own arbitration before me with her chosen representative. She urges

---

[7] According to Pena, her claims were originally filed in federal court and were later dismissed voluntarily by her in order to pursue them through arbitration.

the holding in *Hecht v. United Collection Bureau*, 691 F.3d 218, 224 (2d Cir., 2012), requires absent class members be given notice, opportunity to be heard, and opt out rights. For these reasons, Pena asks I allow her to opt out of the Union's class grievance and to pursue arbitration of her individual claims before me, with representation by her chosen counsel.

The law firm appearing for individuals and proposed classes represented by the firm in pending and potential home care litigation, Wittels Law P.C., concedes the claims of its current and potential clients are arbitrable. However, it argues any resulting arbitration Award will not be binding upon absent class members unless the Union's class grievance arbitration is fundamentally fair, protects absent members' due process rights, affords fair and adequate mechanisms for determination of their claims on an individual basis, allows pre-trial exploration of all claims, and affords adequate and zealous representation by class representatives and counsel.[8] Wittels Law P.C. argues for its appointment as lead private Plaintiffs counsel in this proceeding. It contends such role will benefit the process by assuring adequate protection of the class.

---

[8] Epstein Becker & Green claims Wittels Law P.C.'s arguments about the elements of what are required in an eventual Award on the merits are outside the scope of the arbitrability issue pending before me.

As to the second issue, the Employers do not dispute I have jurisdiction over all claims asserted in the wage and hour grievance, irrespective of whether the employees' employment ended prior to the effective date of the ADR Provision. Of the eleven (11) Employers' law firms appearing in this proceeding, seven (7) have answered this issue in the affirmative, conceding my jurisdiction over all claims asserted in the grievance no matter if the employee's employment ended before or after the effective date of the ADR Provision.[9] In general, they cite the parties' broad agreement to resolve all claims under the covered statutes through arbitration, without any temporal limitation on when the claims accrued, and without regard to whether the claims are currently pending in litigation or administrative actions.[10]

---

[9] The seven (7) Employers' law firms are: Epstein Becker & Green, Ford Harrison, Hogan Lovells U.S., Littler Mendelson, Locke Lord, Peckar & Abramson and Schulte Roth & Zabel (joining in the submissions by Hogan Lovels and Ford Harrison).

[10] Locke Lord points out its client, Special Touch Home Care Services, Inc., has a separate Collective Bargaining Agreement with the Union, effective January 1, 2016 (amended by side letter dated June 23, 2016, with its own ADR process). It concedes under its Agreement, the claims presented by the Union's grievance are within my jurisdiction irrespective of whether a worker's employment ended before the effective date of its ADR protocol.

The remaining four (4) Employers' law firms have taken no position or are neutral on how the second issue presented for my determination should be decided.[11]

The two (2) law firms appearing for individual Plaintiffs do not take a direct position on the second issue.

Borelli & Associates does not address whether I have jurisdiction over all claims irrespective of whether the employment of Pena terminated before the effective date of the ADR Provision. Instead, it argues, on behalf of Pena, the parties did not clearly and unambiguously authorize resolution of a class grievance at arbitration. Pena alleges paragraphs 1 and 4 of the ADR Provision support her position. She contends

---

[11] The four (4) Employers' law firms taking no position or remaining neutral on the second issue are: Bond Schoeneck & King, Jackson Lewis, Milman Labuda, and Putney Twombly. Of the multiple Employers represented by Jackson Lewis, none have affirmatively argued for or against my jurisdiction over claims irrespective of whether the employee left employment before the effective date of the ADR Provision. One (1) of the Employers (The First Chinese Presbyterian Community Affairs Home Attendant Corporation) alleges it is defending against a putative wage and hour class action in state court brought by three (3) former employees (Guzman, Herrera, Rivas) who stopped working for it prior to the effective date of the ADR Provision, and is preliminarily enjoined by the Court from having to appear at the arbitration hearing held on January 15, 2020. In its submission, First Chinese discusses the pertinent facts, but takes no position on how this second issue should be decided. The remaining Employers represented by Jackson Lewis who filed briefs agree the second issue is within my authority to determine, but take no position on how the issue should be decided.

paragraph 1 of the ADR Provision is ambiguous as to the arbitrator's authority to decide any class wide wage and hour final and binding arbitration. Pena maintains paragraph 4 is silent as to the Union's authority to present a class wide wage and hour grievance at arbitration. She suggests the more than 135,000 members of the class are absent and their claims are beyond my contractual authority to determine.

Wittels Law P.C. also takes no position on how the second issue should be decided. It claims relevant case law is unsettled and points to court decisions for and against an arbitrator's assertion of jurisdiction over all claims under the ADR Provision irrespective of whether the employment of the employees terminated before its effective date. The firm also cites to a further case where the court ruled whether such jurisdiction exists is a question for the arbitrator to decide.

Even if arbitral jurisdiction is found to exist irrespective of whether an employee's employment terminated before adoption of the ADR Provision, Wittels Law P.C. insists adequate representation of the class is required. It suggests the interests of the Union are not always aligned with those of the employees, presenting a clear need for an approach that will have the Union, the Employers, and counsel for the outside Plaintiffs working together, and separately, to ensure a fair

and proper proceeding consistent with principles of due process and asserted notice and opt out class action requirements.

As to the third issue of what shall be the role in this arbitration of the attorneys for individual Plaintiffs, the Employers' law firms diverge in their answers to this question. Some note the only parties to this proceeding are the Union and the Employers, not the individual Plaintiffs. They argue the attorneys for individual Plaintiffs are properly considered counsel for non-parties, lack standing to participate, and should, therefore, have no role in this arbitration. Others maintain the filed grievance belongs to the Union as collective bargaining representative for the universe of employees whose claims are covered by the grievance. They contend the contract provides for class – wide claims to be asserted only by the Union, and therefore it is the Union's decision whether to permit any participation by attorneys for individual Plaintiffs. Still others argue the attorneys for individual Plaintiffs should have no formal role in this arbitration, or no role at all, unless invited by the Union with the Employers' consent. Some maintain individual Plaintiffs' attorneys have interests which diverge from the interests of the employee class represented as a whole by the Union, because settlement discussions might be driven by the potential for fee awards to the Plaintiffs' attorneys rather than the best interests of the

class members, all of whom are represented by the Union. They allege while private counsel might play a role in this proceeding, such role should complement, not compete, with the Union, in order to avoid conflicting claims prosecutions in this arbitration.

The Employers' law firms agree no class of Plaintiffs has yet been certified in any of the wage and hour court cases presently pending for individually named Plaintiffs. Nevertheless, some of these firms acknowledge non – Union attorneys for individual Plaintiffs already participated in the mediation preceding this arbitration. They urge those attorneys should be allowed to continue doing so in some fashion during this arbitration, provided the Union's role as primary representative for the employees is preserved and parameters are instituted to avoid undue delay or duplication, with protective orders issued as needed for confidentiality and other issues. These firms argue providing a role for individual Plaintiffs' attorneys will benefit the parties by avoiding burdensome litigation those Plaintiffs might otherwise institute.

Five (5) of the Employers' law firms have taken no position on what role shall be played by individual Plaintiffs' attorneys in this arbitration.[12]

The two (2) law firms appearing for individual Plaintiffs argue they should be allowed to participate in this arbitration.

Borelli & Associates argues Pena has a right to be heard on her claims through counsel of her choosing. Pena contends any class – wide Award issued upon the Union's grievance will not pass judicial muster unless class members are given notice and opportunity to opt out and then be represented on their individual claims through their own counsel. She maintains doing otherwise would deny due process to absent class members. Pena alleges determination of individual claims on a class – wide basis will not safeguard members' rights to know what is happening to their claims. She, therefore, urges I allow her chosen attorneys to present her individual claim at arbitration.

Wittels Law P.C., contends outside counsel should be allowed to participate. It urges Wittels Law P.C. be appointed as lead counsel for individual Plaintiffs, to assure adequate representation of the class. Wittels Law P.C. maintains by virtue of its expertise prosecuting class actions, it is well

---

[12] The five (5) Employers' law firms taking no position on this issue are: Bond Schoeneck & King, Jackson Lewis, Milman Labuda, Putney Twombly and Littler Mendelson.

positioned to vigorously pursue the case and thereby "level the playing field" of the parties' respective counsel. Wittels Law P.C. contends its participation will benefit all parties by contributing its expertise in notification and other class action procedures. It argues the Agreement does not constrain my ability to assure adequate representation of the class by granting the firm a participatory role. The firm refers to its resume and asks for consideration of the proposed order filed with its brief. It notes the proposed order prescribes its role and responsibilities as potential lead counsel for individual Plaintiffs, all toward the goal of assisting in the outcome of this proceeding.

**Opinion**

Certain preliminary comments are appropriate.

As arbitrator, my role is a limited one. It is to interpret the parties' Agreement as written. If the parties' Agreement is clear on its face, and if from the parties' chosen words their intentions are manifest, then I am without power or authority to deviate from those intentions. In addition, I must interpret the Agreement to give effect to all provisions, and to avoid nullifying language adopted by the parties.

With these principles in mind, I turn to the facts presented.

At this preliminary stage of the arbitration, three (3) issues are presented for my determination. They are decided below in sequence.

**1.  Are the claims encompassed by the wage and hour related grievances involving current and former 1199 bargaining unit members, including those arising under federal, state and local law, arbitrable?**

Upon my careful consideration of the evidence and arguments presented, I find the claims encompassed by the wage and hour related grievances involving current and former 1199 bargaining unit members, including those arising under federal, state and local law, are arbitrable.

Where the Agreement contains a broad arbitration clause, the presumption of arbitrability attaches. This is a fundamental principle of arbitral jurisprudence. The ADR Provision adopted by the parties broadly states, in pertinent part:

* * * * * * *

> **1. The parties agree a goal of this Agreement is to ensure compliance with all federal, state and local wage hour law and wage parity statutes. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state and local wage-hour and wage parity statutes, <u>all claims</u> brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the "Covered Statutes"), in any manner, shall be subject <u>exclusively</u>, to the grievance and arbitration procedures described in this Article.**

> **(underlining supplied)**

                    *    *    *    *    *    *    *

I find the foregoing language clear and unmistakable in its
meaning. By their chosen language, the parties agreed to
arbitrate all claims brought by either the Union or employees
for redress of violations of any of the covered statutes. By
providing for arbitration of all such claims, I conclude they
intended arbitration be the exclusive forum for resolution of
these claims, and clearly and unmistakably waived access to the
judicial forum. Since the parties have adopted a broad
arbitration clause, the claims encompassed by the Union's
grievance are presumptively arbitrable. The presumption has not
been overcome, or even challenged.

     I also agree with the Union's contention under Article XXVI
of their Agreement, the parties have authorized an arbitrator to
determine all disputes " … involving the proper application,
interpretation or compliance with the specific written
provisions of the Agreement …", and have vested him or her with
"… full authority to decide the issue or issues in dispute …".
(2012 Collective Bargaining Agreement, *supra*). By their
customary meaning, these broad terms authorize an arbitrator to
decide all issues, which would include not only the merits of
the underlying claims, but also issues presented whether claims
are within an arbitrator's jurisdiction.

The evolution of the parties' Agreement makes plain they intended an arbitrator decide whether the claims encompassed by the Union's grievance are arbitrable. By incorporating the AAA Rules into their 2012 Collective Bargaining Agreement, I find they intended grievances would be resolved by arbitration conducted in accordance with those Rules. It is undisputed AAA Rule 3(a) vests the arbitrator with authority to determine the extent of his or her jurisdiction and the scope of matters to be arbitrated. (AAA Rule 3(a), *supra*).[13] By any reasonable interpretation, the parties' incorporation of this Rule is further evidence they intended to delegate such authority to the arbitrator.[14]

In their 2014 Memorandum of Agreement, the parties agreed to meet and negotiate a provision for alternative dispute resolution of statutory wage and hour claims. Completion of that

---

[13] During the January 15, 2020, hearing, Hogan Lovels asserted the delegation clause incorporating the AAA Rules, including Rule 3(a)'s delegation of authority to the arbitrator to determine issues of arbitrability, has been in the parties' Collective Bargaining Agreement since 2000 or earlier. This fact was not disputed. (Transcript at pages 62 – 63).

[14] In *Troshin v. Stella Orton Home Care Agency, Inc.* (N.Y. Co., 1/14/20), the Court (Lebovits, J.S.C.) ruled arbitrability is for the arbitrator, not the court, to determine, under Article XXVI of the 2012 Collective Bargaining Agreement. The Court found the Agreement contains a broad arbitration clause and incorporates AAA Rules delegating authority to the arbitrator "… to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement".

task was accomplished in their 2015 Memorandum of Agreement, wherein they adopted the ADR Provision for resolution of statutory wage and hour claims. Obviously, the parties did not intend to erase provisions of their 2012 Collective Bargaining Agreement calling for arbitration of all grievances to be conducted pursuant to the AAA Rules. This is not surprising. Parties commonly build upon prior agreements in their subsequent contracts and only excise prior accords when they specifically so indicate. Consistent with this fundamental rule of labor relations, I find the recitals to their 2015 Memorandum of Agreement demonstrate they intended to "modify and extend" the provisions of their Collective Bargaining Agreement, without stating any intention to eliminate adherence to the AAA Rules when arbitrating grievance disputes. (2015 Memorandum of Agreement, *supra*). Notably, at no time during this proceeding has any party to the Agreement taken a contrary view. No one has disputed the continuing application of AAA Rule 3(a) to arbitration of the Union's January 2, 2019, grievance. Nor has any party argued incorporation of AAA Rule 3(a), in the 2012 Collective Bargaining Agreement, was somehow abrogated by the adoption of the 2015 ADR Provision for wage and hour claims.[15]

---

[15] The 2015 Memorandum of Agreement states, "Except as otherwise expressly modified or amended in this Agreement, which is effective January 1, 2016, the CBA will remain in full force and effect through March 31, 2017". (2015 Memorandum of Agreement,

Thus, I conclude the parties intended all grievance arbitrations, including the Union's pending grievance, be conducted pursuant to the AAA Labor Arbitration Rules, including Rule 3(a)'s grant of authority to an arbitrator to determine arbitrability of claims encompassed by the grievance. Frankly, no other reasonable interpretation exists.

Significantly, during the entire course of this proceeding, no party to the Agreement argues the claims encompassed by the grievance are not arbitrable. In their written brief, and statements during the hearing, both the Union, and those Employers addressing the issue, have conceded my authority to determine arbitrability of the Union's grievance. They agree the claims encompassed by the grievance are arbitrable. As well, the two (2) law firms appearing for named and unnamed individual Plaintiffs also concede arbitrability of their clients' claims. Neutral position statements from other Employers provide no basis for altering my conclusion these claims are arbitrable and within my jurisdiction. When the parties to the Agreement concur the grievance is arbitrable, there is no basis to find otherwise.

---

*supra*). By this provision, I find express language is needed to remove AAA Rule 3(a) from the Collective Bargaining Agreement. No such language exists. Therefore, in extending their Collective Bargaining Agreement, the parties continued their longstanding incorporation of the AAA Rules, including AAA Rule 3(a).

Therefore, for all of the foregoing reasons, I find the claims encompassed by the wage and hour related grievances involving current and former 1199 bargaining unit members, including those arising under federal, state and local law, are arbitrable.

**2. Does the Arbitrator have jurisdiction to adjudicate the claims asserted in the wage and hour grievances, arising under federal, state and local law, filed by the parties to the Collective Bargaining Agreement ("Agreement") which encompass all claims arising under the federal, state and local laws named in the Agreement, as well as any pending litigation or administrative actions on the identical claims, irrespective of whether employees' employment terminated prior to the effective date of the Memorandum of Agreement providing Alternative Dispute Resolution language for exclusive mediation/arbitration procedures for wage and hour disputes pursuant to the Agreement between the parties?**

Upon my careful consideration of the evidence and arguments presented, I conclude my jurisdiction extends to adjudicating all such claims, irrespective of whether an employee's employment terminated prior to the effective date of the Memorandum of Agreement providing Alternative Dispute Resolution language for exclusive mediation/arbitration procedures for wage and hour disputes pursuant to the Agreement between the parties. By clear and plain language, I am persuaded the ADR Provision broadly applies to all claims arising under the covered statutes, without regard to whether the claim accrued before the Provision was adopted.

Nowhere in the ADR Provision is there any temporal limitation expressed. Had the parties intended to limit their arbitration remedy to claims accruing after the Provision's effective date, they could easily have added language to that effect. Plainly, the parties did not do so. Instead, I find they adopted a broad clause providing for arbitration of all claims arising under the covered statutes, without restriction. By any reasonable interpretation, the ADR Provision demonstrates the parties intended all such claims be resolved exclusively through their agreed – upon arbitration process, regardless of whether employment ended before the ADR Provision's effective date.

In my October 25, 2016, Opinion and Award in *Chinese – American Planning Council Home Attendant Program, Inc. and 1199 SEIU United Healthcare Workers East*, I ruled the same ADR Provision applies retroactively to claims accruing before its effective date. I did so based upon the parties' express language arbitration was to be the exclusive remedy for "all claims" arising under the covered statutes, and after taking into account the absence in the contract language of any temporal limitation upon covered claims. I found persuasive Judge Forrest's decision in *Chan et al v. Chinese – American Planning Council Home Attendant Program, Inc.*, (S.D.N.Y. (Feb. 23, 2016) on the issue of retroactivity, where she compelled

arbitration of wage claims under the same ADR Provision and

stated:

> Plaintiffs seek to avoid this mandatory
> arbitration clause by arguing that the agreement
> to arbitrate embodied in the 2015 MOA cannot apply
> retroactively to claims that may have accrued
> prior to the execution of the 2015 MOA. This
> argument is meritless. The Second Circuit has
> indicated that, in the absence of a provision
> placing a temporal limitation on arbitrability, an
> arbitration provision may cover claims that
> accrued prior to the execution of the agreement to
> arbitrate. Smith/Enron Cogeneration Ltd. P'ship,
> Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d
> 88, 98-99 (2d Cir. 1999); see also Arrigo v. Blue
> Fish Commodities, Inc., 408 F. App'x 480, 481-82
> (2d Cir. 2011) (summary order); Duraku v. Tishman
> Speyer Properties, Inc., 714 F. Supp. 2d 470, 474
> (S.D.N.Y. 2010).

My determination jurisdiction extends to all claims

encompassed by the Union's grievance, irrespective of whether

employment ended before the effective date of the ADR Provision,

is consistent with my prior Award and equally apt in the context

of the Union's class grievance. More fundamentally, my

determination honors the intent of the contracting parties. They

provided arbitration as their exclusive forum for resolving all

claims arising under the covered statutes, and did so without

limitation as to whether the claims accrued before or after

adoption of their ADR Provision. [16]

---

[16] In *Agarunova v. The Stella Orton Home Care Agency, Inc.*
(*supra*), the Court did not address the delegation argument
pending before me in this proceeding.

For all these reasons, I find my jurisdiction extends to all claims encompassed by the Union's grievance, irrespective of whether employment ended before the effective date of the ADR Provision.

**3. What is the role, if any, of counsel for the individual Plaintiffs, collective or putative class in this proceeding?**

This proceeding is being conducted pursuant to the parties' negotiated ADR Provision covering all wage and hour claims. The Union has filed its grievance as exclusive bargaining agent for its members, in order to redress their wage and hour claims through the arbitration process agreed upon with the Employers. The parties to this proceeding are the Union, as representative for the universe of claimants, and the Employers. Strictly speaking, individual employees are not parties to the arbitration, but are instead, part of the whole represented, herein, by the Union.

Nevertheless, counsel for some individual employees who filed wage and hour claims in state or federal court participated in the earlier mediation. They were allowed to do so in an effort to obtain a global settlement of all pending wage and hour disputes affecting the parties. Frankly, I found their participation in that process valuable.

Now, however, we are at the arbitration stage, where the Union has standing as the exclusive representative for all

claimants whose claims are subject to arbitration with the Employers. As such, I recognize the Union's right to exclusively represent all employees in this proceeding, including those whose claims have previously been the subject of complaints filed by their private counsels in one (1) court or another on their behalf as Plaintiffs. Allowing those counsel to represent those Plaintiff employees in this arbitration would undermine the Union's standing and ability to represent the whole of its membership in the prosecution of its grievance. It would also disrupt the ability of the Employers and Union to navigate this dispute within the confines of their collective bargaining relationship. Each would face the prospect of potentially conflicting strategies and tactics between the Union, as representative of the whole, and attorneys representing non –party individuals.

On balance, I believe in the circumstances of this particular case, there is a limited, proper role for Plaintiffs' counsel that can be helpful to the process without invading the province of the parties. To that end, I will allow limited participation by individual Plaintiffs' counsel to the following extent: I shall appoint a Plaintiffs' Coordinating Counsel under the condition that he or she a) will not be co-counsel with the Union, b) will consult with the Union at such times and on such issues as the Union deems appropriate, c) will be the Union's

primary contact for communication with private Plaintiffs'
counsel, d) will be allowed to attend in-person proceedings
conducted before me, (e) will have a limited right to make
presentation(s) at in - person proceedings, if any, conducted
before me as may be consented to by the Union, subject to
Employers' objections, (f) will have no independent right to
examine particular witnesses or introduce evidence, but may ask
the Union to consider Coordinating Counsel's request(s) to do
so, subject to Employers' objections, (g) shall have no formal
authority to initiate, coordinate or conduct pre - hearing
discovery or any right to negotiate stipulations, settlements or
other matters with either the Union or the Employers and, (h)
shall have the right to make written submissions on behalf of
individual Plaintiffs they actually represent. These roles will
be subject to revision or restriction by me upon application, or
*sua sponte*.[17]

Before concluding, I will address assertions made by the
law firms for individual Plaintiffs during their arguments on
the three (3) identified issues.

I reject Pena's contention the Union lacks authority to
arbitrate a class grievance. Paragraph 1 of the ADR Provision,

---

[17]  To the extent documents are produced and Plaintiffs' counsel
want to examine them, if relevant, documents from an individual
Employer shall be made available only to a Plaintiff's counsel
with a pending matter with that Employer.

*supra*, refers explicitly to class grievances being filed by the Union, in the following language: "All such claims if not resolved in the grievance procedure, <u>including class grievances filed by the Union</u>, or mediation as described below shall be submitted to final and binding arbitration before Martin F. Scheinman, Esq.". (underlining supplied). By this passage, I find the parties clearly intended to authorize the Union to pursue class grievances encompassing the wage and hour claims of its bargaining unit members.

Similarly, Pena's citation of Paragraph 4 of the ADR Provision, *supra*, to support her argument no class grievances are authorized by the Agreement, is without merit. Paragraph 4 is not applicable, here. That paragraph is triggered where the Union denies an employee's written request to undertake a wage and hour grievance. Upon such a denial, paragraph 4 provides the employee a right to pursue his or her individual grievance through the mediation and arbitration procedures of the ADR Provision and to present his or her individual claim at arbitration, with or without counsel. Obviously, the Union has filed a grievance covering the entire class of individual claims, including Pena's pending claim. In these circumstances, Paragraph 4 is not triggered.

To the extent Pena and Wittels Law P.C. assert a right to opt out of the Union's class grievance and pursue arbitration of

43

claims through their chosen counsel, and claim certain procedures are required for an Award on the merits to be binding, I find those assertions are beyond the scope of the three (3) issues presented for my determination at this time. However, in deciding this matter on the merits, I may give consideration to a special procedure permitting written documentation by certain individual employees who assert their circumstances are unique and not reflective of a determination covering all of the employees represented by the Union. The process I will follow during the proceeding on the merits will assure the notice and due process rights of all current and former employees shall be addressed.

Finally, this arbitration proceeding shall not be binding upon those individual Plaintiffs whose claims have been held not subject to arbitration by state or federal court(s). These are the four (4) Plaintiffs identified by the Union as referenced in footnote no. 2, *supra*, as well as Maral Aguranova, Epifania Hichez, Carmen Carrasco and Seferina Acosta.[18]

---

[18] Aguranova is the Plaintiff in *Aguranova v. The Stella Orton Home Care Agency, Inc.*, *supra*, whose claim was held not subject to arbitration by the federal court as indicated in the Summary Order of the Second Circuit, dated February 24, 2020. Hichez, Carrasco and Acosta are the Plaintiffs in *Hichez v.United Jewish Council of the East Side, Home Attendant Corp.*, *supra*, whose claims were held not subject to arbitration as set forth in the Order of the Appellate Division, First Department, dated January 23, 2020.

In all, the preliminary issues presented for my
determination are decided as follows:

1.   The claims encompassed by the wage and hour related
grievances involving current and former 1199 bargaining
unit members, including those arising under federal, state
and local law, are arbitrable.

2.   I have jurisdiction to adjudicate the
claims asserted in the wage and hour grievances, arising under
federal, state and local law, filed by the parties
to the Collective Bargaining Agreement which encompass all
claims arising under the federal, state and local laws named in
the Agreement, as well as any pending litigation or
administrative actions on the identical claims, irrespective of
whether employees' employment terminated prior to the effective
date of the Memorandum of Agreement providing Alternative
Dispute Resolution language for exclusive mediation/arbitration
procedures for wage and hour disputes pursuant to the
Agreement between the parties.

3. I shall appoint a Plaintiffs' Coordinating Counsel under
the condition that he or she a) will not be co-counsel with the
Union, b) will consult with the Union at such times and on such
issues as the Union deems appropriate, c) will be the Union's
primary contact for communication with private Plaintiffs'
counsel, d) will be allowed to attend in – person proceedings

conducted before me, (e) will have a limited right to make presentation(s) at in – person proceedings, if any, conducted before me as may be consented to by the Union, subject to Employers' objections, (f) will have no independent right to examine particular witnesses or introduce evidence, but may ask the Union to consider Coordinating Counsel's request(s) to do so, subject to Employers' objections, (g) shall have no formal authority to initiate, coordinate or conduct pre – hearing discovery or any right to negotiate stipulations, settlements or other matters with either the Union or the Employers and, (h) shall have the right to make written submissions on behalf of individual Plaintiffs they actually represent. These roles will be subject to revision or restriction by me upon application, or *sua sponte*.

4.   Wittels Law P.C. shall be designated as Plaintiffs' Coordinating Counsel under the foregoing conditions.

5.   This Award shall not be binding upon the following individuals in light of Court rulings holding their wage and hour claims not subject to arbitration: Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Boris Pustilnik, Maral Agarunova, Epifania Hichez, Carmen Carrasco and Seferina Acosta.

6.   My office shall arrange arbitration of these claims on the merits.

**AWARD**

1.    The claims encompassed by the wage and hour related grievances involving current and former 1199 bargaining unit members, including those arising under federal, state and local law, are arbitrable.

2.    I have jurisdiction to adjudicate the claims asserted in the wage and hour grievances, arising under federal, state and local law, filed by the parties to the Collective Bargaining Agreement which encompass all claims arising under the federal, state and local laws named in the Agreement, as well as any pending litigation or administrative actions on the identical claims, irrespective of whether employees' employment terminated prior to the effective date of the Memorandum of Agreement providing Alternative Dispute Resolution language for exclusive mediation/arbitration procedures for wage and hour disputes pursuant to the Agreement between the parties.

3.    I shall appoint a Plaintiffs' Coordinating Counsel under the condition that he or she a) will not be co-counsel with the Union, b) will consult with the Union at such times and on such issues as the Union deems appropriate, c) will be the Union's primary contact for communication with private Plaintiffs' counsel, d) will be allowed to attend in – person proceedings conducted before me, (e) will have a limited right to make presentation(s) at in – person proceedings, if any, conducted before me as may be consented to by the Union, subject to Employers' objections, (f) will have no independent right to examine particular witnesses or introduce evidence, but may ask the Union to consider Coordinating Counsel's request(s) to do so, subject to Employers' objections, (g) shall have no formal authority to initiate, coordinate or conduct pre – hearing discovery or any right to negotiate stipulations, settlements or other matters with either the Union or the Employers and, (h) shall have the right to make written submissions on behalf of individual Plaintiffs they actually represent. These

roles will be subject to revision or restriction by me upon application, or *sua sponte*.[19]

4.    Wittels Law P.C. is designated Plaintiffs' Coordinating Counsel in this proceeding, under the foregoing conditions.

5.    This Award shall not be binding upon the following individuals in light of Court rulings holding their wage and hour claims not subject to arbitration: Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Boris Pustilnik, Maral Agarunova, Epifania Hichez, Carmen Carrasco and Seferina Acosta.

6.    My office will contact the parties to arrange arbitration of this matter on the merits, subject to the limitations set forth in numbers 3, 4 and 5 of this Award.

April 17, 2020.

                    Martin F. Scheinman, Esq.
                    Arbitrator

STATE OF NEW YORK    )
                       )    ss.:
COUNTY OF NASSAU    )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

April 17, 2020.

                    Martin F. Scheinman, Esq.
                    Arbitrator

Home Health Agencies.1199.class action grievance.awd

---

[19]  To the extent documents are produced and Plaintiffs' counsel want to examine them, if relevant, documents from an individual employer shall be made available only to a Plaintiff's counsel with a pending matter with that Employer.