**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 1199SEIU UNITED HEALTHCARE WORKERS EAST, | |
| Petitioner, | Case No.: 20-cv-03611-JGK |
| v. | |
| PSC COMMUNITY SERVICES, NEW PARTNERS, INC. d/b/a PARTNERS IN CARE, STELLA ORTON HOME CARE AGENCY, RICHMOND HOME NEEDS, SUNNYSIDE HOME CA RE PROJECT, SUNNYSIDE CITYWIDE HOME CARE, FAMILY HOME CARE OF BROOKLYN AND QUEENS, CARE AT HOME, CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, UNITED JEWISH COUNCIL OF THE EAST SIDE HOME ATTENDANT SERVICE CORP., THE FIRST CHINESE PRESBYTERIAN COMMUNITY AFFAIRS HOME ATTENDANT CORP., AZOR HOME CARE, BUSHWICK STUYVESANT HEIGHTS HOME ATTENDANT, INC., CA BS HOMECARE, RIVERSPRING LICENSED HOME CARE SERVICES AGENCY, INC., ST. NICHOLAS HUMAN SUPPORTS CORP., WARTBURG, ALLIANCE FOR HEALTH, INC., REGION CARE, INC., SPECIAL TOUCH HOME CARE SERVICES, INC., RAIN, INC., PRESTIGE HOME CARE, INC., PRESTIGE HOME ATTENDANT, INC. d/b/a ALL SEASON HOME ATTENDANT, PERSONAL TOUCH HOME CARE OF N.Y., INC., PRIORITY HOME SERVICES, PREMIER HOME HEALTH CARE, INC., BRONX JEWISH COMMUNITY COUNCIL HOME ATTENDANT SERVICES, CIDNY INDEPENDENT LIVING SERVICES, HOME CARE SERVICES FOR INDEPENDENT LIVING, NEW YORK FOUNDATION FOR SENIOR CITIZENS HOME ATTENDANT SERVICES, COOPERATIVE HOME CARE ASSOCIATES, RISEBORO HOME CARE, INC., FEGS HOME ATTENDANT SERVICES, HOME HEALTH MANAGEMENT SERVICES, INC., SCHOOL SETTLEMENT HOME ATTENDANT CORP., ROCKAWAY HOME ATTENDANT, BRONXWOOD HOME FOR THE AGED, INC., ACCENTCARE OF NY, INC., ISABELLA VISITING CARE, INC., SOCIAL CONCERN COMMUNITY DEVELOPMENT CORP., ABC HEALTH SERVICES REGISTRY, ALLIANCE HOME SERV ICES, *collectively identified by the Arbitrator as the* "HOME HEALTH CARE AGENCIES", | **MEMORANDUM OF LAW OF CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, INC. IN OPPOSITION TO SECOND MOTION TO INTERVENE** |
| Respondents. | |

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ........................................................................... 1

**RELEVANT FACTS AND PROCEDURAL HISTORY** ...................................... 1

   **I.**    **The CBAs and 2015 MOAs** ................................................................. 1

   **II.**   **The *Chu* Matter Against CPC** ......................................................... 2

   **III.**  **The Union's January 2019 Grievance, the Arbitration Awards and the Instant Proceedings** ........................................................................ 5

**ARGUMENT** ..................................................................................................... 8

   **I.**    **The "Law Of The Case" Doctrine Requires Denial Of The Instant Motion** ..... 8

   **II.**   **In Any Event, The Motion Should Be Denied On The Merits** .......................... 9

       **A.**   **CPC Intervenors Lack Standing to Intervene** .................................. 9

       **B.**   **Proposed Intervenors are Not Entitled to Intervene as of Right** ............... 13

       **C.**   **Permissive Intervention is Not Warranted** .................................... 17

       **D.**   **FED. R. CIV. P. 71 Does Not Cover Standing** ................................ 17

**CONCLUSION** ................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Cases**

*Ass'n of Contracting Plumbers of N.Y., Inc. v. Local Union No. 2 United Ass'n
   of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. &
   Canada,*
   841 F.2d 461 (2d Cir. 1988)..................................................................................9

*Brennan v. N.Y.C. Bd. of Educ.,*
   260 F.3d 123 (2d Cir. 2001)................................................................................14

*Bridgeport Guardians, Inc. v. Delmonte,*
   602 F.3d 469 (2d Cir. 2010)................................................................................13

*Butler, Fitzgerald & Potter v. Sequa Corp.,*
   250 F.3d 171 (2d Cir. 2001)................................................................................15

*Calderon v. Wambua,*
   No. 74 CIV. 4868 LAP, 2012 WL 1075840 (S.D.N.Y. Mar. 28, 2012)............18

*Chan v. Chinese-American Planning Council Home Attendant
   Program, Inc.,*
   180 F. Supp. 3d 236 (S.D.N.Y. 2016)..................................................................3

*Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc.,*
   No. 651947/2016 (N.Y. Sup. Ct. April 12, 2016).......................................*passim*

*Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.,*
   194 F. Supp. 3d 221 (S.D.N.Y. 2016)................................................................18

*Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc.,*
   No. 1:21-cv-02115-AT (S.D.N.Y. 2021).............................................................4

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013)..........................................................................11, 12, 13

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001)..............................................................................13, 14

*Duraku v. Tishman Speyer Properties, Inc.,*
   714 F. Supp. 2d 470 (S.D.N.Y. 2010)..............................................................3, 10

*Eddystone Rail Co. LLC v. Jamex Transfer Servs. LLC,*
   289 F. Supp. 3d 582 (S.D.N.Y. 2018) ................................................................... 14, 15, 17

*Fleischer v. Barnard Coll.,*
   No. 20-4213, 2021 WL 5365581 (2d Cir. Nov. 18, 2021) ................................................. 10

*Floyd v. City of New York,*
   770 F.3d 1051 (2d Cir. 2014) ........................................................................................ 13

*In re Holocaust Victim Assets Litig.,*
   225 F.3d 191 (2d Cir. 2000) .................................................................................... 13, 15

*Katir v. Columbia Univ.,*
   15 F.3d 23 (2d Cir. 1994) ............................................................................... 6, 9, 10, 11

*Lasky v. Quinlan,*
   558 F.2d 1133 (2d Cir. 1977) ........................................................................................ 18

*In re Manhattan Inv. Fund Ltd.,*
   343 B.R. 63 (S.D.N.Y. 2006) ........................................................................................... 8

*Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Env't Conservation,*
   834 F.2d 60 (2d Cir. 1987) ...................................................................................... 15, 16

*In Re Payment Card Interchange Fee & Merch Discount Antitrust Litigation*
   827 F.3d 223 (2d Cir. 2017) .......................................................................................... 16

*Pontier v. U.H.O. Mgmt. Corp.,*
   No. 10-cv-8828, 2011 WL 1346801 (S.D.N.Y. Apr. 1, 2011) ....................................... 3, 10

*Ransmeier v. Mariani,*
   486 F. App'x 890 (2d Cir. 2012) .................................................................................... 8

*Republic Steel Corp. v. Maddox,*
   379 U.S. 650 (1965) ...................................................................................................... 16

*Rodriguez v. N.Y. Found. for Senior Citizens Home Attendant Servs., Inc.,*
   No. 15-CV-9817 (VEC), 2016 WL 11707094 (S.D.N.Y. July 14, 2016) ...................... 3, 10

*Santore v. Cuomo,*
   No. 1:20-cv-850, 2020 WL 9810016 (N.D.N.Y. Aug. 14, 2020) ....................................... 18

*Sec. Invs. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
   550 B.R. 241 (Bankr. S.D.N.Y. 2016) ............................................................................ 14

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011)...................................................................................................12

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)...................................................................................................11

*State Comm. of Indep. v. Berman*,
   No. 03-cv-4123, 2003 WL 22801908 (S.D.N.Y. Nov. 21, 2003).....................................17

*Town of Chester v. Laroe Estates, Inc.*,
   137 S. Ct. 1645.................................................................................................11, 13

*U.S. Postal Serv. v. Am. Postal Workers Union*,
   564 F. Supp. 545 (S.D.N.Y. 1983) ...............................................................................6

*Union Switch & Signal, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   226 F.R.D. 485 (S.D.N.Y. 2005) ................................................................................15

*United States v. City of New York*,
   198 F.3d 360 (2d Cir. 1999).......................................................................................16

*United States v. Dist. Council of N.Y. City & Vicinity of United Brotherhood of Carpenters & Joiners of Am.*,
   No. 90 CIV. 5722 (CSH), 2002 WL 31873460 (S.D.N.Y. Dec. 24, 2002) ......................17

*Wall St. Assocs., L.P. v. Becker Paribas, Inc.*,
   818 F. Supp. 679 (S.D.N.Y. 1993),
   *aff'd*, 27 F.3d 845 (2d Cir. 1994) .................................................................................8

*Wash. Elec. Coop. Inc. v. Mass. Mun. Wholesale Elec. Co.*,
   922 F.2d 92 (2d Cir. 1990).........................................................................................15

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990)...................................................................................................11

*Wong v. Doar*,
   571 F.3d 247 (2d. Cir. 2009)......................................................................................18

**Rules**

Fed. R. Civ. P. 24 ...............................................................................................*passim*

Fed. R. Civ. P. .................................................................................................7, 16

Fed. R. Civ. P. 24(a)(2) ....................................................................................13, 15

Fed. R. Civ. P. 24(b) .................................................................................................. 17

Fed. R. Civ. P. 71 .............................................................................................. 17, 18

## PRELIMINARY STATEMENT

On February 18, 2021, this Court denied a motion by a few individuals to intervene in this case.  (ECF No. 159) ("Denial Order").  In the Denial Order, Your Honor held that these proposed intervenors lacked standing to intervene and, in any event, did not satisfy the requirements for intervention under Fed. R. Civ. P. 24.  Nonetheless—despite this law of the case—many of these same intervenors now seek the exact same relief in a motion to intervene ("Motion"), which is both procedurally and substantively invalid.

Among the proposed intervenors are three individuals—Mei Kum Chu, Sau King Chung, and Qun Xiang Ling (the "CPC Intervenors")—who were formerly employed by Defendant Chinese-American Planning Council Home Attendant Program, Inc. ("CPC").  CPC submits this brief to oppose the CPC Intervenors' attempt to improperly relitigate matters already decided by this Court and to oppose the merits of the CPC Intervenors' arguments should the Court consider them notwithstanding their procedural impropriety.  For reasons set forth more fully below, the Court should deny the Motion.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Given the voluminous briefing to date, CPC assumes the Court's familiarity with the relevant facts and procedural history of this case.  However, for ease of reference, CPC describes herein the factual and procedural history that is relevant to this Motion.

### I.    The CBA and 2015 MOA

CPC is a not-for-profit provider of home health care services to elderly, infirm and disabled residents of New York City.  (Declaration of Kenneth Kirschner ("Kirschner Decl.") ¶ 2.)  Since on or before 2012, CPC has had a collective bargaining agreement ("CBA") with the petitioner in this case, 1199SEIU United Healthcare Workers East (the "Union").  (Kirschner Decl. Ex. A.)

The CBA sets forth the multi-step dispute resolution procedure that employees must pursue to raise complaints against the employers, which culminates in "final and binding arbitration under the Rules of the American Arbitration Association ['AAA']." (Kirschner Decl. Ex. <u>A</u> at 25-26.) Rule 3(a) of the AAA Rules is a delegation of procedural issues to the Arbitrator and provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." (AAA Labor Arbitration Rule 3(a).)

Effective December 1, 2015, CPC entered into a memorandum of agreement—the "2015 MOA"—with the Union. (Kirschner Decl. Ex. <u>B</u>.) Among other things, the 2015 MOA amended the CBA by adding a new alternative dispute resolution provision by which the parties agreed that "all claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ('FLSA'), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the 'Covered Statutes'), in any manner, shall be subject exclusively to the grievance and arbitration procedures described in this Article." (Kirschner Decl. Ex. <u>B</u> at 9.) Included among those procedures is a "mandatory mediation" that employees and/or the Union must exhaust as to any covered claims they might have against a covered employer. (*Id.*) If mediation is not successful, the grieving party must submit its claim(s) "to final and binding arbitration" before Martin F. Scheinman, Esq. (the "Arbitrator"). (*Id.*) Both CPC and the Union are contractually forbidden from contesting confirmation of an arbitration award issued under this provision. (*Id.*)

## II.     The *Chu* Matter Against CPC

On or about April 12, 2016, Fisher Taubenfeld and TakeRoot Justice (then called Urban Justice Center) filed a lawsuit against CPC in state court, on behalf of three named plaintiffs who

left CPC before the 2015 MOA (the "*Chu* matter"). *Mei Kum Chu et al v. Chinese-Am. Plan. Council Home Attendant Program, Inc*., No. 651947/2016 (N.Y. Sup. Ct. April 12, 2016), NYSCEF No. 1. The three *Chu* plaintiffs are the CPC Intervenors here. The *Chu* complaint alleged claims under the Covered Statutes. (*Id*.)

The CPC Intervenors attempted in the *Chu* matter to avoid application of the 2015 MOA's arbitration provision based on the fact that they left CPC before its effective date. (*Id.* ¶¶ 24–26.) However, the CPC Intervenors purported to represent a class in *Chu* that was not limited to pre-MOA employees, but rather was composed mostly of employees who were employed by CPC beyond the effective date of the 2015 MOA. (*Id.* ¶ 16.) Accordingly, CPC moved to dismiss the *Chu* matter or stay it pending resolution of a similar matter brought by Fisher Taubenfeld and TakeRoot Justice on behalf of an overlapping putative class—*Lai Chan v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*, 180 F. Supp. 3d 236 (S.D.N.Y. 2016)—which had been compelled to arbitration. CPC Intervenors are part of the putative class in *Chan* that were compelled to arbitration. (Kirschner Decl. ¶ 5.) The instant Motion fails to address the plethora of federal court cases, like *Chu*, holding that a union can apply collective bargaining agreements to former members. *See e.g.*, *Rodriguez v. N.Y. Found. for Senior Citizens Home Attendant Servs., Inc.*, No. 15-CV-9817 (VEC), 2016 WL 11707094, at *3 (S.D.N.Y. July 14, 2016) (evaluating an 1199 homecare labor agreement materially the same as that in the instant matter, the court compelled arbitration over a former employee's wage-hour claims, where the agreement did not contain any temporal limit on arbitrability); *Duraku v. Tishman Speyer Properties, Inc.*, 714 F. Supp. 2d 470 (S.D.N.Y. 2010) (finding the fact that an ADR provision did "not expressly state that it applies 'retroactively' or to employees who, like plaintiffs, have already elected to pursue their statutory rights in another forum does not relieve plaintiffs of their obligation to abide by the

mediation and arbitration protocol"); *Pontier v. U.H.O. Mgmt. Corp.*, No. 10-cv-8828, 2011 WL

1346801, at *3 (S.D.N.Y. Apr. 1, 2011) (the fact that plaintiff was discharged before his union

entered a supplemental agreement requiring arbitration of Title VII claims "d[id] not relieve

Plaintiff of his obligation to abide by the mediation and arbitration provisions" contained therein)

(citation omitted); *see also* ECF Nos. 140–142.  On April 17, 2017, New York Supreme Court

Justice Carol Edmead granted CPC's motion to stay the *Chu* matter.  (Kirschner Decl. Ex. <u>C</u>.)  The

*Chu* matter remained stayed until March 12, 2019, when, following a conference with the Court,

Justice Edmead dismissed the case without prejudice.  (Kirschner Decl. Ex. <u>D</u>)

 In early 2020, the CPC Intervenors attempted to restore the *Chu* matter to the active docket.

(Kirschner Decl. ¶ 8.)  They initially lost their motion, but moved to reconsider.  (Kirschner Decl.

¶¶ 8–9 & Ex. <u>E</u>.)  On or about February 9, 2021, Justice Edmead granted the motion to reconsider

and allowed CPC Intervenors to amend their *Chu* complaint to limit the putative class only to CPC

employees who left CPC's employ prior to the execution of the 2015 MOA.  (Kirschner Decl. ¶

10); Decision & Order on Mot., *Chu*, No. 651947/2016, NYSCEF No. 112.[1]  Very shortly

thereafter, CPC Intervenors filed an amended complaint.  (Kirschner Decl. ¶ 10); Am. Compl.,

*Chu*, No. 651947/2016, NYSCEF No. 116.  In response, CPC removed the case to federal court.

(Kirschner Decl. ¶ 10); *see also Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*,

No. 1:21-cv-02115-AT (S.D.N.Y. 2021).  The CPC Intervenors then moved to remand.  (Kirschner

Decl. ¶ 11); Mot. to Remand to State Court, *Chu*, No. 21-cv-01225-AT (S.D.N.Y. Mar. 18, 2021),

ECF No. 7.  The federal district court has stayed proceedings pending resolution of the appeal of

---

[1] CPC has appealed the trial court's decision, and that appeal has been stayed given, as set forth below, *Chu*'s removal

to federal court.  Notice of Appeal, *Chu*, No. 651947/2016, NYSCEF No. 114.

this Court's denial of a motion to remand a sister proceeding to this case involving First Chinese Presbyterian Community Affairs Home Attendant Corporation. (Kirschner Decl. ¶ 11); *see also* Order, *Chu*, No. 21-cv-01225-AT (S.D.N.Y. Dec. 3, 2021), ECF No. 22.

Importantly, no class has been certified in *Chu*. (Kirschner Decl. ¶ 12.)

### III.   The Union's January 2019 Grievance, the Arbitration Awards and the Instant Proceedings

On January 2, 2019, the Union filed a grievance that it described as "a class action grievance on behalf of all of [the Union's] home care bargaining unit members . . . concerning claims that employees were not properly paid on 24-hour cases and with respect to any other outstanding wage and hour claims arising under the Covered Statutes" (the "Grievance"). (Kirschner Decl. ¶ 13); (ECF No. 101-13.) The Grievance names some 50 or so respondents (all of the Defendants in this action) and, according to the Union, the Grievance covers some 100,000 bargaining unit members who are or were employed by those agencies. (*Id.*) Counsel for CPC promptly sent the Grievance to counsel for CPC Intervenors, who responded that they had already received it. (Kirschner Decl. ¶ 14 & Ex. <u>F</u>.) CPC Intervenors did not object to the Grievance, claim any harm because of the Grievance or ask any court or the Arbitrator for relief at that time. (*Id.*)

After the Union filed its Grievance, the Arbitrator commenced the mediation process that is a contractually-mandated precursor to binding arbitration. (Kirschner Decl. ¶ 15.) The CPC Intervenors, through the same counsel that represents them in this matter, participated voluntarily in that process throughout 2019. (*Id.*) Unable to reach resolution in mediation, on December 24, 2019, the Arbitrator declared an impasse and decided, pursuant to the CBA, to proceed to arbitration. (Kirschner Decl. ¶ 16.) The Arbitrator scheduled a hearing for January 15, 2020. (*Id.*);

(ECF No. 101-14.)  In advance of the hearing, the Arbitrator requested briefing from the parties concerning the scope of his jurisdiction.  (*Id.*)  The Arbitrator, plainly aware of the various court proceedings and that some individual employees are represented by non-Union counsel, also sought briefing on the role of such counsel in the proceeding.  (*Id.*)  The Arbitrator specifically included CPC Intervenors' counsel on the communication and invited them to attend the hearing and submit briefs.  (*Id.*)  CPC Intervenors declined the Arbitrator's invitation to participate in the proceeding.  (*Id.*)

On April 17, 2020, the Arbitrator issued an award finding that the Grievance was arbitrable and he had jurisdiction over it ("First Award"), and the Union subsequently petitioned this Court to confirm the First Award. (Kirschner Decl. ¶¶ 17–18); (ECF No. 1.)  CPC Intervenors moved to intervene—making fundamentally the same arguments they make now—and this Court denied that motion on the basis, *inter alia*, that CPC Intervenors lacked standing to oppose confirmation of the First Award.  (Kirschner Decl. ¶ 19.)  Your Honor applied the "well established" principle that "an individual employee represented by a union [in a labor arbitration] generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties" unless the employee shows that "the union breached its statutory duty of fair representation."  (ECF No. 159 at 11.) (quoting *Katir v. Columbia Univ.*, 15 F.3d 23, 24–25 (2d Cir. 1994); *U.S. Postal Serv. v. Am. Postal Workers Union*, 564 F. Supp. 545, 550 (S.D.N.Y. 1983)).  Because CPC Intervenors did not show that the Union breached that duty, this Court, correctly, held that "the Proposed Intervenors lack standing to challenge the Award."  (ECF No. 159 at 12.)

The Court also concluded in the alternative that CPC Intervenors "failed to demonstrate that they satisfy the requirements of Rule 24" for intervention as of right or permissive

intervention.  (*Id.*)  With respect to intervention as of right, the Court found that they failed three of the requirements for intervention as of right under Rule 24(a).  *First*, their alleged "interest" in the confirmation proceeding—namely, their "apparent argument that confirmation of the [First] Award may impair their ability to assert their claims in state court"—was "too contingent or remote to be cognizable under Rule 24."  (*Id*. at 14.)  *Second*, any "alleged impairment" of that interest resulting from confirmation of the First Award was too "speculative" to support intervention as of right.  (*Id*. at 16.)  *Third*, CPC Intervenors had "failed to show that their interest in the resolution of their claims against [their employers] is not being adequately represented" by the Union.  (*Id*. at 15.)

CPC Intervenors did not move to reargue or reconsider.  (Kirschner Decl. ¶ 20.)  On March 22, 2021, CPC Intervenors filed an appeal, on a non-expedited basis.  (Kirschner Decl. ¶ 21.)  CPC Intervenors perfected the appeal on April 15, 2021.  (*Id*.)   The appeal was fully briefed as of February 15, 2022 and has been pending since.  (*Id*.)

Meanwhile, the Arbitration continued.  On February 25, 2022, the Arbitrator issued a second award ("Second Award").  (Kirschner Decl. ¶ 22.)  Therein, the Arbitrator found that CPC and other Respondents had violated certain Covered Statutes and ordered, as a remedy, that the Respondents fund a pool of approximately $35 million to distribute to affected home care attendants.  (*Id*.)  To effect this remedy, the Arbitrator ordered CPC to provide, no later than March 28, 2022, detailed personnel information for home care attendants from 2008 through 2021.  (Kirschner Decl. ¶ 23.)  At substantial effort and expense, CPC complied.  (*Id*.)  The Arbitrator also ordered CPC to fund its substantial portion of the $35 million fund no later than April 26, 2022.  (*Id*.)  CPC has complied with that obligation as well.  (*Id*.)

# ARGUMENT

## I.       The "Law Of The Case" Doctrine Requires Denial Of The Instant Motion

"The law of the case doctrine requires that courts adhere to their own decisions rendered at an earlier stage of the litigation unless there are cogent or compelling reasons not to, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Wall St. Assocs., L.P. v. Becker Paribas, Inc.*, 818 F. Supp. 679, 683 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 845 (2d Cir. 1994). Where, as here, a court denies a party's motion to intervene, any "renewed attempt to intervene is foreclosed by the doctrine of law of the case." *Ransmeier v. Mariani*, 486 F. App'x 890, 892 (2d Cir. 2012) (denying party's motion to intervene, explaining that "in deciding [petitioner's] second motion to intervene, Judge [] was not just *permitted*, he was *required* to follow our prior ruling") (emphasis in original). Courts in this district have further held that new arguments based on existing evidence at the time of the first motion, do not render the law of the case doctrine inapplicable. *See In re Manhattan Inv. Fund Ltd.*, 343 B.R. 63, 67 (S.D.N.Y. 2006) (refusing to entertain a motion that would be a re-litigation of an issue already decided). In fact, such situation would be "a particularly suitable occasion for application of the doctrine, as it comports with the basic principle that parties must raise their arguments at the first opportunity or waive them." (*Id.*)

Here, the Court already denied a substantially identical motion to intervene in a well-reasoned opinion in which Your Honor held that CPC Intervenors (i) lack standing to challenge the Arbitrator's awards and (ii) do not satisfy the requirements of Rule 24 for intervention. CPC Intervenors have not pointed to a change in controlling law, new evidence, nor clear error that would create a "cogent or compelling" reason for this Court to depart from the Denial Order. CPC

Intervenors do not assert otherwise—they do not even attempt to contend with or distinguish the Court's prior decision.  For this reason alone, the Motion should be denied.

## II.      In Any Event, The Motion Should Be Denied On The Merits

For reasons already argued and decided, and as set forth below, the Motion should be denied should the Court consider CPC Intervenors' claims notwithstanding the law of the case.

### A.      CPC Intervenors Lack Standing to Intervene

CPC Intervenors lack standing for reasons set forth in CPC's opposition to CPC Intervenors' prior motion to intervene (*see* ECF No. 109), and in its brief to the Second Circuit Court of Appeals in this case (Resp'ts-Appellees Br., *1199SEIU United HealthCare Workers E. v. PSC Cmty. Servs.*, No. 21-633 (2d Cir. Jan. 18, 2022), ECF No. 84), which CPC incorporates herein by reference.  For ease of reference, those reasons are as follows.

*First*, CPC Intervenors were not parties to the arbitration.  Accordingly, established Second Circuit precedent makes clear that CPC Intervenors "do[] not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties." (ECF No. 159 at 11) (quoting *Katir*, 15 F.3d at 24–25.)[2]  Indeed, courts in this circuit have long recognized that

---

[2] The Proposed Intervenors do not confront this general rule, but instead rely on *Association of Contracting Plumbers* for the proposition that non-parties are permitted to intervene. *See Ass'n of Contracting Plumbers of N.Y., Inc. v. Local Union No. 2 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 841 F.2d 461, 466 (2d Cir. 1988). Such reliance is misplaced.  Primarily, *Association of Contracting Plumbers* addressed an exception to the general rule wholly inapplicable to the facts at hand.  Indeed, the court in *Association of Contracting Plumbers* expressly acknowledged the general rule that individual employees lack standing absent a showing that the union breached its duty of fair representation and explained that "allowing an individual employee to challenge the

an employee has standing to challenge the result of an arbitration between the union and employer *only* if the employee shows that the "union breached its duty of fair representation." *Katir*, 15 F.3d at 24; *see also Fleischer v. Barnard Coll.*, No. 20-4213, 2021 WL 5365581, at *4 n.1 (2d Cir. Nov. 18, 2021) (summary order) (employee "did not have standing to challenge the arbitration . . . directly," and could "only challenge the arbitration through her claim against the union for breach of its duty of fair representation").

CPC Intervenors have not alleged in this case that the Union breached its duty of fair representation, nor provided any evidence to support such a claim. In fact, CPC Intervenors have not submitted any facts in support of their Motion at all. Rather, CPC Intervenors baselessly assert that they need not show the Union breached its duty to have standing because "the Union had no such authority in the first place." (ECF No. 243 at 5.)[3] This is false. Countless federal court cases

---

arbitration award would undermine the union's ability to pursue grievances on behalf of all its members and would destroy the employer's confidence in the union's authority." (*Id.*)

[3] Notwithstanding CPC Intervenors' argument that the Union had no duty of fair representation to them that it can breach, we understand that the Court is in receipt of a letter from Sarah Ahn, dated April 27, 2022, (the "Letter") arguing the opposite. The Letter informed the Court that CPC Intervenor Chu, on behalf of her co-workers, filed a duty of fair representation ("DFR") claim against the Union. As an initial matter, CPC Intervenor Chu is already represented by counsel in this case, and Ms. Ahn is not one of them. The Letter should be given no consideration. Ms. Ahn did not file a notice of appearance or a motion to submit papers on behalf of Ms. Chu or Ms. Chan. Further, to the extent any CPC Intervenor has asserted a DFR claim with the NLRB, the Court should be aware that former CPC employees already filed two unsuccessful DFR claims against the Union—once in 2016 and again in 2020. The 2020 claim challenged the Union's ability to bring the Grievance that is the subject of the Arbitration. Both were dismissed, and the 2020 charge was further denied on appeal. Thus, even if the charges were *filed*, CPC Intervenors

have affirmed that a union does in fact have a duty to fairly represent its current and former employees. *See e.g.*, *Rodriguez*, 2016 WL 11707094; *Duraku,* 714 F. Supp. 2d 470; *Pontier*, 2011 WL 1346801.[4]  The Union thus owes a duty of fair representation to the Proposed Intervenors. Only if the Union were to breach such duty—which Proposed Intervenors admit it has not—would standing be conferred to the Proposed Intervenors in this matter.  *See Katir*, 15 F.3d at 24.

*Second*, CPC Intervenors lack standing for a second, independent reason: They fail to show that they will suffer a non-speculative injury-in-fact sufficient to confer standing under Article III of the Constitution, thereby precluding intervention.  *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645,  1651.  To establish Article III standing, a litigant must show that he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Where a party's theory of standing rests on an alleged future injury, the injury-in-fact "must be *certainly impending*," and "allegations of *possible* future injury" are not sufficient.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (alteration omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

---

still have not shown, as they must to establish standing, that the Union actually "breached its duty of fair representation."  *Katir*, 15 F.3d at 24.

[4] CPC Intervenors also seem to argue that they need not show the Union breached its duty of fair representation to have standing in this matter because the labor agreements did not "clearly and unmistakably" delegate the question of threshold arbitrability to the arbitrator, and thus, they argue that the Union had no authority to represent the CPC Intervenors in arbitration in the first place.  (Intervenor Br. at 5.)  CPC Intervenors are trying to rehash the issue of the arbitrability of their claims which Your Honor has already decided and settled, after consideration of the very same cases CPC Intervenors now again cite.  (*See* ECF No. 159.)

Here, the lone injury CPC Intervenors allege is that "the Second Award purports to resolve most of the CPC Intervenor's statutory wage claims in arbitration" and that such resolution may "*potentially* impact[] the rights of the CPC Intervenor-class representatives from moving to certify classes" in their other pending litigation. (Intervenors Br. at 4) (emphasis added).  Injury-in-fact cannot be based on the *potential* of better recovery in a different forum or the *potential* impact the Second Award may have in CPC Intervenors' other litigations.  *Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 590 (S.D.N.Y. 2018) (finding "that reason alone is insufficient to demonstrate an injury in fact because it is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case." (internal quotations omitted).  As such, CPC Intervenors' theory of injury is too speculative to satisfy the injury-in-fact requirement because it depends on the actions of an independent third party—in this case, a state or federal court considering CPC Intervenors' claims in pending or future litigation.  *Clapper*, 568 U.S. at 413 (explaining it is typically "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.").  Accordingly, this speculative "injury" is insufficient to establish standing.

CPC Intervenors also argue that they have standing on behalf of the putative class members in the *Chu* matter.  (Intervenors Br. at 13.)  But this Court already held, "To the degree that the CPC Intervenors argue they are intervening on behalf of a class, they lack standing, because they have not pointed to any class that has been certified."  (Denial Order at 11, Fn.7.)  *See also* Point I *supra*.  The Court was correct: A purported class representative may not obtain relief on behalf of a putative class until a class is actually certified.  *See generally Smith v. Bayer Corp.*, 564 U.S. 299, 316 n.11 (2011).  Nor should the CPC Intervenors be permitted to establish standing based on the hypothetical injuries of employees who were never employed by CPC.  Thus, to the extent

CPC Intervenors claim they have standing based on their representation of absent members of a putative class, their claim to standing is predicated on multiple layers of speculation. It depends not only on the assertion that a court might give preclusive effect to a confirmed Second Award at some point in the future, but also on the highly speculative assertion that a court will even certify CPC Intervenors' class. That "highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410.

The bottom line: Because CPC Intervenors lack standing, they cannot intervene as of right. *See Town of Chester*, 137 S. Ct. at 1651.

### B.    Proposed Intervenors are Not Entitled to Intervene as of Right

Even if this Court concludes that CPC Intervenors have standing, they cannot satisfy the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) for reasons set forth in CPC's opposition to CPC Intervenors' prior motion to intervene (*see* ECF No. 109) and opposition to CPC Intervenors' appeal of the Denial Order (*see* Resp'ts-Appellees Br., No. 21-633, ECF No. 84), which are hereby incorporated by reference.

To intervene as of right, CPC Intervenors must: (i) file a timely motion; (ii) show "an interest in the litigation"; (iii) show that their interests "may be impaired by the disposition of the action"; and (iv) show that their interests are "not adequately protected by the parties to the action." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001). "Failure to meet any one of these requirements suffices for a denial of the motion." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197–98 (2d Cir. 2000); *see D'Amato*, 236 F.3d at 84. Here, Proposed Intervenors cannot meet the final three requirements.

*First*, the Proposed Intervenors cannot establish "an interest" in the petition for confirmation sufficient to support intervention as of right. (*Id.*) "[F]or an interest to be

'cognizable' under Rule 24, it must be 'direct, substantial, and legally protectable.'" *Floyd v. City of New York*, 770 F.3d 1051, 1060 (2d Cir. 2014) (per curiam) (quoting *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010)).  "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule."  *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (citation omitted).

CPC Intervenors assert that "their interests may be impaired because the Second Award purports to finally resolve their statutory wage clams for a sum certain that is far less than full satisfaction of their claims, or for nothing if they do not timely file a claim form to participate in the arbitration wage fund" and the Second Award "may" impair their efforts to move for class certification  (Intervenor Br. at 7–8.)  This is not enough for intervention.  Interests that are "contingent upon the occurrence of a sequence of events"—including the uncertain actions of another court that considers the Second Award in its own proceedings—are not sufficient. *Brennan*, 260 F.3d at 129.  Other courts in this Circuit have rejected identical purported interests as too remote and contingent.  *See Eddystone*, 289 F. Supp. 3d at 592–93 ("The Proposed Intervenors' apparent interest, as best this Court can discern, is the right to challenge the Arbitration Award because confirmation of such award will adversely affect their ability to mount a defense in [another action] . . . .  But that winding articulation of the Proposed Intervenors' interest merely underscores its contingent and remote nature."); *see also Sec. Invs. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 550 B.R. 241, 250 (S.D.N.Y. 2016) (holding that the mere possibility that an adverse judgment might arguably impair intervenor's ability to defend other actions brought against them does not satisfy the "interest" requirement for intervention).  This Court already so found, and should do so again if need be.

*Second*, even if CPC Intervenors had an interest sufficient to support intervention, they have not shown that their interests "may be impaired by the disposition" of the confirmation petition. *D'Amato*, 236 F.3d at 84. The Second Circuit has held that "potential obstacles to the pursuit of an independent lawsuit do not 'impair or impede the applicant's ability to protect [its] interest,' Fed. R. Civ. P. 24(a)(2), to an extent warranting intervention as of right." *In re Holocaust Victim Assets Litig.*, 225 F.3d at 199. That is particularly so when those "potential obstacles" are as speculative as they are here. Any "hypothetical effect of an adverse judgment on any rights that the Proposed Intervenors may have" in pursuing other claims is therefore "not the type of practical impairment contemplated by Rule 24(a)(2)." *Eddystone*, 289 F. Supp. 3d at 594 (alteration omitted) (quoting *Union Switch & Signal, Inc. v. St. Paul Fire & Marine Ins. Co.*, 226 F.R.D. 485, 488 (S.D.N.Y. 2005)).

*Third*, the Proposed Intervenors failed to show that their interest in the resolution of their claims is not being adequately represented by the Union. The Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). In those circumstances, there is a "presumption of adequate representation by the party already in the action," and the burden is on the putative intervenor to "rebut" that presumption. (*Id.* at 179–80); *see Wash. Elec. Coop. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990) ("Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured."). Disagreement on a tactical or legal matter that does not prevent the existing party from advocating vigorously for the shared ultimate outcome is not sufficient to rebut evidence of an identity of interest, and a district judge's determination with

respect to adequacy of representation is afforded deference.  *See Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Env't Conservation*, 834 F.2d 60, 62 (2d Cir. 1987).

In this case, the Union more than adequately represents the interests of CPC Intervenors. In general, unions are presumed to share an "ultimate objective" and "identity of interest" with their members where a collective bargaining agreement grants a union authority to resolve disputes on behalf of its members.  *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965) (holding that a former employee "must afford the union the opportunity to act on his behalf").  CPC Intervenors rely on *In Re Payment Card Interchange Fee & Merch Discount Antitrust Litigation* to support their contention that the Union did not adequately represent them because the Union filed the arbitration for the sole purpose of "limited recovery of unpaid wages," whereas the Proposed Intervenors seek to maximize their recovery.  (Intervention Br. at 8.) That case does not help CPC Intervenors.  It addressed the interests of a class representative in the context of class certification, not the interests of a union, which is presumed to share an identity of interests with its members.  *See In Re Payment Card Interchange Fee & Merch Discount Antitrust Lit.*, 827 F.3d 223 (2d Cir. 2017).

Proposed Intervenors further assert that the Union failed to adequately represent them because it failed to prosecute certain statutory wage violations.  (Intervention Br. at 11.)  As this Court previously concluded, however, the "Union has acted with diligence" in pursuing Proposed Intervenors' claims on their behalf, and shares Proposed Intervenors' ultimate objective of prevailing on their wage-hour claims.  (ECF No. 159 at 16.)  Differing views on the best way to pursue claims do not render representation inadequate.  *See United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999) ("Representation is not inadequate simply because . . . the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of

success of a particular litigation strategy."); *cf. Nat. Res. Def. Council*, 834 F.2d at 61–62 ("A putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party.").

In sum, CPC Intervenors are not entitled to intervene as of right under Rule 24(a).

### C.    Permissive Intervention is Not Warranted

Proposed Intervenors argue in the alternative that the Court should grant them leave to intervene under FRCP 24(b), which allows permissive intervention to anyone who, on a timely motion, "has a claim or defense that shares with the main action a common law or fact."  Whether to permit intervention is wholly within the discretion of the trial court, and the "principal consideration . . . is whether the intervention will unduly delay or prejudice the application of the rights of the original parties."  *Eddystone*, 289 F. Supp. 3d at 595 (quotations and citations omitted).   However, "the considerations that render [a proposed intervenor] ineligible for intervention as of right . . . militate strongly as well against granting permissive intervention under Rule 24(b)."  (*Id.*)(quoting *State Comm. of Indep. v. Berman*, No. 03-cv-4123, 2003 WL 22801908, at *1 (S.D.N.Y. Nov. 21, 2003)).  Accordingly, the Proposed Intervenors' "inchoate fear that any judgment confirming the Arbitration Award may be enforced against them" in other proceedings "does not warrant permissive intervention."  (*Id.*)

### D.    Fed. R. Civ. P. 71 Does Not Cover Standing

CPC Intervenors make one new argument that they did not make when the Court denied their first motion to intervene.  Specifically, they now argue that they have standing to intervene under Fed. R. Civ. P. 71, which provides, "When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."  This argument fails for several reasons.

First and foremost, Rule 71 does not confer an independent basis for standing. It is well-settled that "Rule 71 does nothing to disturb the requirement of standing to sue." *United States v. Dist. Council of New York City & Vicinity of United Brotherhood of Carpenters & Joiners of Am.*, No. 90 CIV. 5722 (CSH), 2002 WL 31873460, at *8 (S.D.N.Y. Dec. 24, 2002) (citing 13 *Moore's Federal Practice* (3d ed.1997) at 71–5). That is, Rule 71 "cannot be used by a party to enforce an order in an action in which he [does not have] standing to sue." *Santore v. Cuomo*, No. 1:20-cv-850 (MAD/CFH), 2020 WL 9810016, at *2 (N.D.N.Y. Aug. 14, 2020) (internal quotations omitted). In fact, the cases CPC Intervenors cite dealing with consent decrees in their brief explicitly state that a nonparty must independently have standing in a matter for Rule 71 to apply. *See Lasky v. Quinlan*, 558 F.2d 1133, 1137 (2d Cir. 1977) (holding Rule 71 "cannot be used by a party to enforce an order in an action in which he no longer has standing to sue"); *see also Calderon v. Wambua*, No. 74 CIV. 4868 LAP, 2012 WL 1075840, at *7 (S.D.N.Y. Mar. 28, 2012) (party has standing *independent* of its Rule 71 enforcement action). In other words, Rule 71 is not an independent basis for standing—and as set forth *supra*, CPC Intervenors do not have standing.

Finally, even if Rule 71 applied and conveyed standing, CPC Intervenors do not have an order to enforce in this case. On the contrary, they rely on—and completely mischaracterize—an order issued by the Honorable Katherine B. Forrest in 2016 remanding *Chu* back to state court. *Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 194 F. Supp. 3d 221, 228 (S.D.N.Y. 2016). The only relief issued by that order was remand. Though Judge Forrest had before her a motion by CPC to compel arbitration, Judge Forrest expressly declined to rule on that motion, finding that "the Court lacks authority to consider" it. (*Id.* at 230.) Nonetheless, in dicta that was entirely irrelevant to the issue of remand, Judge Forrest wrote that the *Chu* plaintiffs were not bound by the 2015 MOA because they left CPC before the 2015 MOA effective date. It is this

six-year-old dicta that CPC Intervenors argue erroneously is an "order" that can be enforced in this matter through Rule 71.  *See Wong v. Doar*, 571 F.3d 247, 257 (2d. Cir. 2009); *see also Ryan v. Allen*, 992 F. Supp. 152, 156 (N.D.N.Y. 1998).

## CONCLUSION

Accordingly, the Court should deny Proposed Intervenors' motion to intervene.


Dated:       New York, New York             Respectfully submitted,
             May 3, 2022


                                             /s/  Kenneth Kirschner
                                            Kenneth Kirschner, Esq.
                                            David Baron, Esq.
                                            HOGAN LOVELLS US LLP
                                            390 Madison Avenue
                                            New York, New York 10017
                                            Tel.: (212) 918-3000
                                            Fax: (212) 918-3100
                                            kenneth.kirschner@hoganlovells.com
                                            david.baron@hoganlovells.com

                                            *Attorneys for CPC*

## <u>CERTIFICATION</u>

Pursuant to Judge Koeltl's Individual Rules of Practice the undersigned hereby certifies that this affidavit complies with the word count limitation in that rule:

1. Exclusive of the exempted portions, the affidavit contains 6,062 words.

2. As permitted, the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

 May 3, 2022

          Respectfully submitted,

          */s/  Kenneth Kirschner*
          Kenneth Kirschner, Esq.