**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────

**1199SEIU UNITED HEALTHCARE WORKERS**
**EAST,**                                          **20-cv-3611 (JGK)**

                    **Petitioner,**          **OPINION AND ORDER**

        **- against -**

**PSC COMMUNITY SERVICES, ET AL.,**

                    **Respondents.**

────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    The present motions concern an award rendered in an
arbitration pursuant to Section 301 of the Labor Management
Relations Act of 1947 (the "LMRA") involving the petitioner,
1199SEIU United Healthcare Workers East (the "Union") and the
respondents, a group of home care agencies (the "Award," ECF No.
183-1). In the Award, the arbitrator determined that the
respondents had committed various wage and hour laws violations
with respect to over 100,000 of the respondents' current and
former Union member-employees. Among other things, the
arbitrator ordered the respondents to create and contribute to a
compensation fund of approximately $30 million (the "Fund") and
to disburse the funds to eligible claimants. The Union
petitioned this Court to confirm the Award on March 1, 2022. See
ECF No. 183 (the "Amended Petition").

1

On March 11, 2022, twelve former employees of certain respondents moved for a preliminary injunction enjoining the parties from creating the Fund and otherwise implementing the Award. These movants also moved to dismiss the Amended Petition for lack of subject matter jurisdiction. The Court denied these motions in an Opinion and Order dated April 7, 2022. See 1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs., No. 20-cv-3611, 2022 WL 1046464 (S.D.N.Y. Apr. 7, 2022) (the "Preliminary Injunction Order").

On April 26, 2022, thirteen former employees of three respondents, Employers Alliance for Health ("Alliance"), the First Chinese Presbyterian Community Affairs Home Attendant Corporation, Inc. ("FCP"), and the Chinese-American Planning Council Home Attendant Program ("CPC") (the "Movants") moved to intervene in this action for the purpose of seeking partial vacatur of the Award. The Movants also moved to vacate the aspects of the Award that pertain to themselves and certain former employees of those respondents.

For the following reasons, the Movant's motion to intervene for the purpose of seeking partial vacatur of the Award is **denied.** The Movant's motion to vacate the Award in part is **denied.** The Union's Amended Petition to confirm the Award is **granted.**

**I**

**A**

The Court assumes familiarity with the Preliminary Injunction Order and its Opinion and Order dated February 19, 2021, in which the Court confirmed an earlier jurisdictional award of the arbitrator and denied motions of former employees of certain respondents to intervene and to dismiss the Union's petition to confirm that award or to stay confirmation of that award. See 1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs., 520 F. Supp. 3d 588 (S.D.N.Y. 2021) (the "First Confirmation Order"). The facts relevant to resolving the current motions are set forth below.

By way of brief background, in the jurisdictional award issued on April 17, 2020, the arbitrator determined that pursuant to the collective bargaining agreements ("CBAs") between the Union and the respondents, the arbitrator had arbitral jurisdiction to adjudicate the wage and hours claims of former and current Union members irrespective of whether their employment terminated prior to the effective date of a 2015 memorandum of agreement between the Union and the respondents (the "Pre-2015 MOA Employees"). First Confirmation Order, 520 F. Supp. 3d at 597. The Union petitioned this Court to confirm that award, which the Court granted in the First Confirmation Order.

Several former employees of certain respondents had moved to intervene in this action and moved to dismiss that petition. The Court found these former employees' arguments against confirmation of the first jurisdictional award to be without merit and denied their motion to intervene, finding that they lacked standing to challenge the award and that any purported interest that they had in opposing confirmation of the award was "too contingent or remote to be cognizable under Rule 24."[1] First Confirmation Order, 520 F. Supp. 3d at 600. These former employees filed a non-expedited appeal of the First Confirmation Order with the Court of Appeals for the Second Circuit, which is currently pending. Following the First Confirmation Order, the Union and the respondents proceeded to litigate the merits of the Union's grievance before the arbitrator.

The arbitrator then issued the Award on February 25, 2022.[2] The Award is discussed in the Preliminary Injunction Order in detail and that discussion is incorporated here by reference. See Preliminary Injunction Order, 2022 WL 1046464, at *2-3. In sum, the arbitrator determined that the respondents violated wage and hour laws during the relevant time period and ordered

---

[1] Unless otherwise noted, this Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

[2] The arbitrator issued a supplement to the Award on March 16, 2022, that corrected certain minor errors in the Award. See ECF No. 212-2. For the purposes of this Opinion and Order, references to the "Award" include the arbitrator's March 16, 2022, supplement.

the respondents to contribute to the Fund on a per capita basis. The arbitrator arrived at the per capita contribution remedy after weighing several competing considerations, including the financial stability of the home care industry. The arbitrator ultimately concluded that a "per capita contribution greater than two hundred fifty ($250) dollars is not sustainable and will, inevitably, lead to deserving employees failing to recover upon their meritorious claims," and ordered the creation and financing of the Fund accordingly. Amended Petition ¶ 31. Once fully financed, the Fund will exceed $30 million.

B

In the Preliminary Injunction Order, the Court denied the motion by twelve non-party movants for a preliminary injunction enjoining the parties' compliance with the Award. In that Order, the Court also denied these movants' motion to dismiss the Amended Petition for lack of subject matter jurisdiction. Eight of the twelve movants who filed those motions are now in the group of Movants presently before the Court.[3]

In the Preliminary Injunction Order, the Court found that the movants lacked standing to seek the requested preliminary

---

[3] The twelve Movants who filed the motions for a preliminary injunction and to dismiss were Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Gail Yan, Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Qun Xiang Ling, Epifania Hichez, Carmen Carrasco, Seferina Acosta, and Maria Diaz. Guzman, Herrrea, Rivas, Yan, Alvarado, Chu, Chung, and Ling are now part of the current group of Movants, along with Rafaela Cruceta, Virtudes Duran, Wai Kam Lou, Yue Ming Wu, and Cui Ying Mai.

injunction and dismissal of the Amended Petition. See Preliminary Injunction Order, 2022 WL 1046464, at *3-6. The Court also found the movants' argument that the pending appeal of the First Confirmation Order stripped this Court of subject matter jurisdiction over the Amended Petition to be without merit. Id. at *8-9. In so holding, the Court reasoned that questions relating to the confirmation of the Award are not "involved in" the pending appeal of the First Confirmation Order. Id.

Finally, in the Preliminary Injunction Order, the Court afforded the movants an opportunity to file a motion to vacate the Award in part and directed the movants to explain in that motion why they have standing to challenge the Award notwithstanding the Preliminary Injunction Order and the First Confirmation Order. Id. at *10. The Court also directed the movants to "either file a motion to intervene for the purposes of challenging the [Amended] Petition or explain why they should be permitted to seek partial vacatur of the [Award] as non-parties and non-intervenors." Id.

### C

On April 26, 2022, the thirteen Movants filed a motion to vacate the Award in part and a motion to intervene for the purpose of seeking partial vacatur of the Award. The Union opposed both motions and CPC filed a brief in opposition to the

6

request to intervene by Chu, Chung, and Ling (the "CPC Movants").

The thirteen Movants are former employees of either CPC, FCP, or Alliance. The CPC Movants are former employees of CPC who ceased to be CPC employees before CPC entered the 2015 MOA. All three CPC Movants are named plaintiffs in an action against CPC alleging wage and hour violations that was filed in the New York State Supreme Court on April 12, 2016. See Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc., No. 651947/2016 (N.Y. Sup. Ct., filed April 12, 2016) (the "Chu Action"). After CPC removed the Chu Action to federal court, Judge Forrest granted the CPC Movants' motion to remand and the case was remanded back to the state court. See Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc., 194 F. Supp. 3d 221 (S.D.N.Y. 2016). On April 17, 2017, the state court stayed the Chu Action pending resolution of a putative class action against CPC that was also pending in this district before Judge Forrest, Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc., No. 15-cv-9605 (S.D.N.Y., filed Dec. 8. 2015) (the "Chan Action"). The CPC Movants are members of the proposed class in the Chan Action.

In the Chan Action, Judge Forrest concluded that the Pre-2015 MOA Employees of CPC were bound by the arbitration provisions of the 2015 MOA and granted CPC's motion to compel

arbitration. Chan v. Chinese-Am. Plan. Council Home Attendant Program, Inc., 180 F. Supp. 3d 236, 241-42 (S.D.N.Y. 2016). After the state court lifted the stay in the Chu Action in 2021, CPC again removed the case to federal court. See Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc., No. 21-cv-2115 (S.D.N.Y., filed Mar. 11, 2021). Judge Torres then stayed the Chu Action pending resolution of the appeal of this Court's order denying a motion to remand in Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corporation, No. 20-cv-3929 (S.D.N.Y., filed May 20, 2020) (the "Guzman Action"). No class has been certified in the Chu Action.

Guzman, Herrera, Rivas, and Alvarado comprise a second set of Movants (the "Carved-Out Movants"). See Preliminary Injunction Order, 2022 WL 1046464, at *3 & n.3. These Movants are former employees of either FCP or Alliance and are the named plaintiffs in either the Guzman Action or a related case, Alvarado v. Alliance for Health, Inc., No. 20-cv-3930 (S.D.N.Y. filed May 20, 2020) (the "Alvarado Action"). These Movants were expressly carved out of the arbitrator's awards because courts had previously enjoined arbitration of their claims. Consequently, the Carved-Out Movants are not bound by the arbitrator's awards.

The Guzman and Alvarado Actions concern alleged wage and hour violations and were both filed in state court and then

removed to this Court. The plaintiffs filed motions to remand in both actions, which this Court denied in an Opinion and Order dated February 18, 2021. See Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corp., 520 F. Supp. 3d 353 (S.D.N.Y. 2021). This Court then certified an interlocutory appeal of that Opinion and Order. That appeal is pending and has been consolidated with the appeal of the First Confirmation Order before the Court of Appeals for the Second Circuit. See Guzman Action, ECF No. 42; Alvarado Action, ECF No. 41. No motions for class certification were filed and no classes were certified in the Guzman or Alvardo Actions.

With respect to Wu and Mai, in their brief in support of their motion to intervene, the Movants represented that "signed declarations" from Wu and Mai were "forthcoming, and will be filed as soon as they are executed." Mot. to Intervene at 2 n.5. In their opposition brief, the Union correctly noted that Wu and Mai had not, at that point, submitted any facts in support of their request to intervene. The Movants then appended documents from the New York State Home Care Registry to their reply brief which appear to show that (1) Wu is a former employee of CPC; (2) Mai is a former employee of FCP; and (3) both Wu's and Mai's respective terms of employment ended before their former employers entered the 2015 MOA. See ECF No. 254-2. The Movants never filed signed declarations from Wu or Mai with the Court.

9

Yan did not submit any evidence relating to her relationship to this dispute in connection with the pending motions. However, in a declaration filed in support of her motion to dismiss the petition to confirm the first jurisdictional award, Yan declared that she worked for FCP from approximately June 2010 to June 2014. See ECF No. 101-6.

Cruceta, Duran, and Lou each submitted declarations in which they declared that they are former employees of FCP and that they each ceased their respective terms of employment before FCP entered the 2015 MOA. See ECF Nos. 242-5, 242-6, 242-7. The Union submitted a declaration by Bobby Hocson, the Union's director of management information systems, who declared that the Union keeps records containing their members' dates of employment. ECF No. 249 ¶¶ 1-2. Mr. Hocson declared that the Union's records indicate that Lou's employment did not end until approximately August 2016 and that Duran's employment ended in approximately August 2010. Id. ¶¶ 3-4.

In sum, the CPC Movants are named plaintiffs in the Chu Action and the Carved-Out Movants are named plaintiffs in either the Guzman or Alvarado Actions. No classes have been certified in any of those actions. The Movants submit that Yan, Curceta, Duran, Lou, Wu, and Mai are each class members of at least one of the proposed classes in the Guzman, Alvarado, or Chu Actions. See Mot. to Intervene at 3. The Union contends that Lou and

Duran are not Pre-2015 Employees because Lou's employment
continued after the 2015 MOA was executed and because Duran's
last day of employment pre-dated the time period covered by the
Award.

## III

The Movants contend that they have standing to seek partial
vacatur of the Award and that they satisfy the requirements to
intervene permissively and of right for the purpose of
challenging parts of the Award. The Union argues that the
Movants' motion to intervene should be denied because all the
Movants lack standing to seek partial vacatur of the Award and
have otherwise failed to demonstrate that they meet the
requirements of Federal Rule of Civil Procedure 24.

Rule 24(a)(2) provides for intervention as of right to any
party who can "(1) file a timely motion; (2) show an interest in
the litigation; (3) show that its interest may be impaired by
the disposition of the action; and (4) show that its interest is
not adequately protected by the parties to the action." First
Confirmation Order, 520 F. Supp. 3d at 599. Although permissive
intervention is left to the discretion of the district court,
courts consider substantially the same factors whether the claim
for intervention is of right under Rule 24(a)(2) or permissive
under Rule 24(b)(1)(B). Id. The court of appeals has instructed
that a "failure to satisfy any one of these four requirements is

11

a sufficient ground to deny the application." Floyd v. City of New York, 770 F.3d 1051, 1057 (2d Cir. 2014). Additionally, a request to intervene as of right or permissively must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).

Moreover, if proposed intervenors seek different relief from that which the parties to an action are seeking, then the proposed intervenors must demonstrate that they have Article III standing to pursue that relief. Preliminary Injunction Order, 2022 WL 1046464, at *4 (citing Chester v. Laroe Estates, Inc., 137 S. Ct. 1645, 1651 (2017)). Although the Supreme Court in Chester determined only that a proposed intervenor as of right must demonstrate Article III standing in this context, lower courts analyzing Chester have explained persuasively that the reasoning employed by the Supreme Court applies equally in the context of permissive intervention. See, e.g., Cross Sound Cable Co., LLC v. Long Island Lighting Co., No. 21-cv-2771, 2022 WL 247996, at *9-10 (E.D.N.Y. Jan. 27, 2022) (collecting cases).

### A

There is no dispute that the Movants are seeking to intervene for the purpose of pursuing different relief from the Union, which seeks confirmation of the Award, and the respondents, who do not oppose confirmation. See, e.g., Mot. to Intervene at 8. Accordingly, each Movant's request to intervene

12

must be denied unless that Movant can demonstrate the Movant's standing to seek partial vacatur of the Award.

In the First Confirmation Order and the Preliminary Injunction Order, the Court found that various former employees of the respondents (including some of the current Movants) lacked standing to oppose confirmation of the first jurisdictional award and to seek dismissal of the Amended Petition and a preliminary injunction enjoining enforcement of the Award. The Court explained in both Opinions that in the context of labor arbitrations, "an individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties." First Confirmation Order, 520 F. Supp. 3d at 598 (quoting Katir v. Columbia Univ., 15 F.3d 23, 24-25 (2d Cir. 1994)). In order to have standing "to attack an arbitration award under section 301 of the [LMRA]," an employee must make a "showing of fraud or deceit" or demonstrate that "the union breached its statutory duty of fair representation" or "failed to act upon the award." First Confirmation Order, 520 F. Supp. 3d at 599.

These Movants, like the movants who opposed confirmation of the first jurisdictional award and the movants who sought dismissal of the Amended Petition and a preliminary injunction enjoining enforcement of the Award, were not parties to the

13

arbitration. Moreover, as before, there is no dispute that the Movants have failed to make a showing of fraud or deceit or demonstrate that the Union breached a duty of fair representation or failed to act upon the Award.[4] Accordingly, Katir compels the conclusion that the Movants lack standing to challenge the Award, as it did in the contexts of the First Confirmation Order and the Preliminary Injunction Order.

The Movants advance several unpersuasive arguments in support of their alleged standing to seek partial vacatur of the Award notwithstanding Katir. The Movants first point to Ass'n of Contracting Plumbers of City of N.Y., Inc. v. Local Union No. 2 United Ass'n of Journeymen, 841 F.2d 461 (2d Cir. 1988), and its progeny. In Contracting Plumbers, the court of appeals determined that a national union that was not party to an arbitration involving its local union and several workers' associations had standing to seek vacatur of the resulting arbitration award. Id. at 463. The court of appeals reasoned

_____

[4] On April 27, 2022, the Court received a letter from Sarah Ahn of the Flushing Workers Center, a non-party, in which Ms. Ahn wrote that Chan and Chu had "filed charges" against the Union with the National Labor Relations Board ("NLRB") and requested that this Court not confirm the Award until the NLRB rendered a final decision. See ECF No. 247. On June 9, 2022, Region 29 of the NLRB dismissed the charges filed by Chu and Chan, concluding that "there is insufficient evidence to establish that the Union violated the [National Labor Relations Act] as alleged or in any other manner encompassed [in the] charge." ECF No. 261 at 3. In any event, in their motion, the Movants did not argue that the Union violated any duties. To the contrary, the Movants argued that the Union did not owe the Movants any such duties. See Mot. to Intervene at 5-6. Accordingly, there is no basis on which to conclude that the Union breached any duty of fair representation.

14

that because the arbitration award prevented the national union
from "exercising its constitutional authority to establish work
jurisdiction among its local unions," the national union had "a
sufficient stake in the outcome" of the proceedings and
consequently had standing to seek vacatur of the arbitration
award. Id. at 466-67. In making that determination, the court of
appeals explained:

> We are not persuaded by those cases which have held that
> an individual union member, who was not a party to the
> arbitration, lacked standing under § 10 [of the Federal
> Arbitration Act] to challenge the results of an
> arbitration between his union and his employer, absent
> a showing that the union breached its duty of fair
> representation. These courts have reasoned that allowing
> an individual employee to challenge the arbitration
> award would undermine the union's ability to pursue
> grievances on behalf of all its members and would destroy
> the employer's confidence in the union's authority. The
> situation here is quite the opposite. Refusing to
> recognize the [national union's] standing to challenge
> the arbitration awards and injunctions would undermine
> one of the primary reasons for the [national union's]
> existence: to avoid trade line jurisdiction disputes
> between the local unions.

Id. at 467.

The Contracting Plumbers court therefore recognized the
general rule that non-party individual union members may not
challenge awards rendered in arbitrations between their union
and employer and made clear that its holding regarding a non-
party national union's standing to challenge an award did not
disturb that rule. The conclusion that Contracting Plumbers does
not remedy the Movants' lack of standing is underscored by the

court of appeals' decision in <u>Katir</u>, which post-dated
<u>Contracting Plumbers</u> and is squarely on point.

The Movants next argue that they need not contend that the
Union breached its duty of fair representation to have standing
to seek partial vacatur of the Award because the Union was not
authorized to represent any Pre-2015 MOA Employees when the
Union entered into the 2015 MOA and then later prosecuted the
arbitration. In support of this theory, the Movants rely on
various state court decisions that found that certain Pre-2015
MOA Employees were not bound by the arbitration provisions of
the 2015 MOA. Therefore, according to the Movants, the Union
cannot have breached a duty of fair representation to the Pre-
2015 MOA Employees because the Union owed this group of former
employees no such duty. <u>See</u> Mot. to Intervene at 6 (citing cases
including <u>Williams v. Teamsters Local Union No. 727</u>, No. 03-cv-
2122, 2003 WL 22424726, at *2 (N.D. Ill. Oct. 22, 2003)
(concluding that a union did not owe a plaintiff a duty of fair
representation in connection with a dispute between the
plaintiff and the union that arose after the plaintiff became an
employer and ceased to be a member of the collective bargaining
unit that was represented by the union)).

The movants who sought to intervene for the purpose of
challenging the first jurisdictional award made a similar

16

argument, which the Court found to be without merit. As explained in the First Confirmation Order:

> The [movants] argue that the Union cannot represent its former employees, either in assenting to the 2015 MOA or in initiating the grievance, and thus — at least — former employees did not "consent" to arbitration. But this misconceives the relationship between a Union and its bargaining unit members and oversimplifies the CBA at issue. As the "exclusive bargaining" agent for home care employees of the Respondents, the Union had authority to enter into CBAs and subsequent agreements, on behalf of its bargaining unit members. The [movants'] arguments that former employees cannot be bound by a CBA or cannot be represented by their Union in arbitration are without merit. To accept that conclusory argument would essentially allow Union members to opt-out of their obligations under a collective bargaining agreement by simply withdrawing from their union prior to bringing suit. Indeed, courts in this Circuit have compelled former employees to arbitrate claims under CBA alternative dispute provisions, including in instances where supplemental agreements were executed after the plaintiff ceased employment.

First Confirmation Order, 520 F. Supp. 3d at 607-08.

The Movants' argument is therefore irreconcilable with the First Confirmation Order and the first jurisdictional award, in which the arbitrator determined that the claims of Pre-2015 MOA Employees were arbitrable. Accordingly, because the Union had the authority to enter the 2015 MOA and prosecute the arbitration on behalf of the Pre-2015 MOA Employees, under Katir, the Movants' failure to allege a breach of the Union's duty of fair representation in connection with these activities is dispositive on the issue of the Movants' standing.

**B**

The Movants advance several additional unpersuasive arguments in support of their alleged standing. To satisfy the requirements of Article III standing, a party must show that (1) the party has suffered an actual or imminent injury in fact, which is concrete and particularized; (2) there is a causal connection between the injury and defendant's actions; and (3) it is likely that a favorable decision in the case will redress the injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561; see also Springer v. U.S. Bank Nat'l Ass'n, No. 15-cv-1107, 2015 WL 9462083, at *3 (S.D.N.Y. Dec. 23, 2015). The Movants generally contend that they have standing to challenge the Award because the Award (1) purports to resolve their wage and hour claims for a sum that is less than "full satisfaction" of those claims; and (2) "potentially impact[s]" the ability of certain Movants from moving to certify classes in the Guzman, Alvarado, and Chu Actions. See Mot. to Intervene at 4, 7. These arguments are without merit as to all the Movants.

First, the Carved-Out Movants lack standing to seek partial vacatur of the Award for substantially the same reasons that they lacked standing to seek a preliminary injunction enjoining enforcement of the Award. As explained in the Preliminary

18

Injunction Order, the Carved-Out Movants are not bound by the Award and the Award did not resolve any claims that they may have against their former employers. Consequently, the Carved-Out Movants' "active, ongoing efforts to prosecute their claims in other forums will not be impeded by the [Award] in any way." Preliminary Injunction Order, 2022 WL 1046464, at *5. The Carved-Out Movants dispute this, arguing that confirmation of the Award potentially impacts their ability to seek certification of the putative classes in the Guzman and Alvarado Actions, in which the Carved-Out Movants are the named plaintiffs. But the Carved-Out Movants have pointed to no legal authority that supports the proposition that confirmation of an arbitration award that could have a speculative impact on a potential forthcoming motion for class certification in a separate action is a legally cognizable injury in fact.[5] See,

---

[5] The Movants rely on inapposite cases including Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326 (1980), United States Parole Comm'n v. Geraghty, 445 U.S. 388 (1980), and their progeny. These cases generally stand for the proposition that named plaintiffs in putative class actions have standing to appeal adverse rulings on class certification even if the named plaintiffs' individual claims have been mooted or fully satisfied by the defendants. See Bais Yaakov of Spring Valley v. Educ. Testing Serv., 251 F. Supp. 3d 724, 739-40 (S.D.N.Y. 2017) (discussing and summarizing Roper and Geraghty). Specifically, in Roper, the Supreme Court reasoned that the satisfaction of a named plaintiff's individual claim did not moot the entire action "so long as the [named plaintiff] retained an economic interest in class certification." 445 U.S. at 333. Accordingly, if named plaintiffs in this context were not permitted to appeal denials of class certification, then their ability to protect this economic interest would be completely extinguished. This total impairment to seek review of a denial of class certification is not comparable to the claimed purported injury here – the abstract risk of a potential impediment to class certification caused remotely, if at all, by confirmation of an arbitration award in a separate proceeding to which the named plaintiffs are not parties. Significantly, the claims of the Carved-Out

e.g., Eddystone Rail Co., LLC v. Jamex Transfer Servs. LLC, 289
F. Supp. 3d 582, 590-91 (S.D.N.Y. 2018) (proposed intervenors
lacked standing to seek vacatur of an arbitration award where
their alleged injury in fact was that confirmation of the award
would adversely affect their defenses in a separate action to
which the proposed intervenors were parties).

Moreover, appeals of interlocutory orders in the Guzman and
Alvarado Actions are currently pending before the court of
appeals. Motions for class certification have not yet been filed
in either action. Any such motions could only be filed at some
indeterminate time after the appeals in those cased are
resolved. Accordingly, any admittedly "potential[]" impact of
the Award on the Carved-Out Movants' purported ability to seek
class certification is remote, speculative, and insufficient to
constitute an injury in fact. See Mot. to Intervene at 4.

For similar reasons, the CPC Movants do not have standing
based on their alleged interest in class certification in the
Chu Action. No motion for class certification has been filed yet
and the action is stayed pending resolution of the appeals in
the Guzman and Alvarado Actions. Accordingly, any alleged injury

---

Movants have not been resolved by the Award, much less denied, and the
Carved-Out Movants are therefore not comparable to the plaintiffs in the
cases cited by the Movants.

to the CPC Movants based on a potential impediment to class certification is speculative and not cognizable.

Next, all the Movants that were not carved out from the Award do not have standing based on their dissatisfaction with how their claims were resolved in the arbitration. Katir is on point and dispositive. In Katir, the petitioner's union initiated an arbitration with Columbia University, the employee's former employer, after the petitioner was fired. 15 F.3d at 24. The arbitrator determined that Columbia had "just cause" to fire the petitioner and the petitioner's union did not seek to vacate the resulting award. Id. The petitioner then filed an action seeking vacatur of that award. Id.

The court of appeals determined that the petitioner's dissatisfaction with the resolution of arbitration did not confer standing upon the petitioner in the absence of an allegation that the union breached a duty of fair representation. Id. at 24-25. Likewise, the Movants here may be dissatisfied with the damages awarded by the arbitrator, but under Katir this dissatisfaction with the resolution of the arbitration cannot be a legally cognizable injury without an allegation that the Union breached its duties.[6]

---

[6] The Union also contends that Duran and Lou lack standing for the additional reason that they are not Pre-2015 MOA Employees because their terms of employment ended too early and too late, respectively. The Movants dispute this and submit that Duran's and Lou's correct dates of employment show that they are properly classified as Pre-2015 MOA Employees. The Movants further

Finally, the Movants argue that they have standing pursuant to Federal Rule of Civil Procedure 71 to intervene for the purposes of enforcing various state and federal court orders. Rule 71 provides that "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." The Movants contend that they obtained orders in the Alvarado, Guzman, and Chu Actions that in substance provide that their claims are not arbitrable and that they have standing under Rule 71 to enforce those orders in this action.

The order from the Alvarado Action on which the Movants rely concluded that "Alvarado is not bound by the arbitration provision" of the CBA and 2015 MOA. Lorentti-Herrara v. Alliance for Health, Inc., 104 N.Y.S.3d 103, 104 (App. Div. 2019). The Movants cite two orders from the Guzman Action, in which the state courts found that the claims of Guzman, Herrera, and Rivas could not be arbitrated. Guzman v. The First Chinese Presbyterian Community Affairs Home Attendant Corp., No.

---

argue that the Court may not resolve these factual disputes in favor of the Union at this stage of the proceedings. Although it is accurate that all well-pleaded allegations in a proposed intervenor's pleading are accepted as true when resolving a motion to intervene, see, e.g., Avaras v. Clarkstown Cent. Sch. Dist., No. 15-cv-2042, 2021 WL 5180832, at *1 (S.D.N.Y. Nov. 8, 2021), the Movants' motion to intervene here was not accompanied by any pleading. Cf. Fed. R. Civ. P. 24(c) (motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.") (emphasis added). In any event, irrespective of whether Duran and Lou are in fact pre-2015 MOA employees, they lack standing for the same reasons that the other Movants lack standing.

157401/2016, 2019 WL 1502944, at *3 (N.Y. Sup. Ct. Apr. 5, 2019) ("Since [Guzman, Herrara, and Rivas] left the employ of [FCP] prior to December 1, 2015, the effective date of the 2015 MOA, the mandatory ADR provision of the 2015 MOA was inapplicable to them."); ECF No. 245-11 (enjoining arbitration of Guzman's, Herrara's, and Rivas's claims).

These orders do not support the Alvarado, Guzman, Herrara, and Rivas's standing pursuant to Rule 71 to seek partial vacatur of the Award. There can be no reasonable dispute that these orders have been implemented and fully complied with given that all four of these Movants were expressly carved out of the Award. Accordingly, confirmation of the Award does not affect these Movants' ability to prosecute their claims in other forums or infringe on any rights conferred by these state court orders.

The CPC Movants rely on the order from the <u>Chu</u> Action in which Judge Forrest granted the CPC Movants' motion to remand and denied CPC's motion to compel arbitration as moot for lack of subject matter jurisdiction. See <u>Chu v. Chinese-Am. Plan.</u> <u>Council Home Attendant Program, Inc.</u>, 194 F. Supp. 3d 221 (S.D.N.Y. 2016). In the course of rendering that decision, Judge Forrest suggested that the CPC Movants were not bound by the 2015 MOA. See <u>id.</u> at 228-29. The CPC Movants contend that this constituted a holding of Judge Forrest's order and can be enforced here pursuant to Rule 71.

This argument is without merit. The "relief" that Judge Forrest ordered in her decision was remanding the Chu Action and denying CPC's motion to compel for lack of subject matter jurisdiction. There is no dispute that the CPC Movants obtained that relief. There is therefore no basis for using Rule 71 to enforce Judge Forrest's order here. Judge Forrest's observations about the 2015 MOA were dicta and did not constitute an aspect of the relief afforded to the CPC Movants. See also First Confirmation Order, 520 F. Supp. 3d at 608 n.17 (explaining that the passage from the Chu Action on which the Movants now rely "clearly was dicta").

For these reasons, all the Movants lack standing to seek partial vacatur of the Award. Accordingly, the Movants' motion to intervene for the purposes of seeking partial vacatur of the Award is denied.

C

For largely the same reasons that the Movants lack standing, the motion to intervene should also be denied because the Movants lack a sufficient interest in this litigation under Rule 24. The Carved-Out Movants lack an interest in this dispute because they are not bound by the Award and confirmation of the Award will not impede their ability to prosecute their claims in other forums. All the Movants that claim an interest in the confirmation of the Award based on the Award's potential impact

24

on their ability to seek class certification in other actions should not be permitted to intervene because any such interest is speculative, remote, and contingent. See, e.g., Eddystone, 289 F. Supp. 3d at 592-93 ("The Proposed Intervenors' apparent interest, as best this Court can discern, is the right to challenge the Arbitration Award because confirmation of such award will adversely affect their ability to mount a defense in [a separate action]. . . . But that winding articulation of the Proposed Intervenors' interest merely underscores its contingent and remote nature.").

Finally, the Movants that claim an interest in this proceeding because the Award resolves their wage and hour claims for an unsatisfactory amount should not be permitted to intervene for the purpose of challenging the Award. Because the Union was authorized under the LMRA, CBAs, and 2015 MOA to prosecute the arbitration on behalf of the Movants and to resolve their claims, the Movants do not have a cognizable interest in this action absent a showing that the Union breached its duties. See F. W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Loc. No. 781, 629 F.2d 1204, 1210 (7th Cir. 1980) ("[I]ndividual employees may not intervene in or maintain suits under the collective bargaining agreement to set aside arbitration awards reached in pursuance of the grievance procedure, particularly in opposition to the union, so long as

the union has represented the employees fairly. These principles, and the policies underlying them, reflect the philosophy of collective bargaining incorporated in the LMRA and exemplify the fundamental policy of entrusting labor disputes and grievances to the good faith discretion of exclusive bargaining agents."); U.S. Postal Serv. v. Am. Postal Workers Union, 564 F. Supp. 545, 550 (S.D.N.Y. 1983) (quoting Acuff v. Papermakers and Paperworkers, AFL-CIO, 404 F.2d 169, 171 (5th Cir. 1968)) ("It would be paradoxical in the extreme if the union, which is authorized to decide whether a grievance is to be pursued to the arbitration stage at all, could not be authorized to assume full responsibility for a grievance it did pursue, without the intervention of the individual union member immediately concerned."); Int'l Longshore & Warehouse Union, Loc. 142 v. McCabe Hamilton & Renny Co., No. 08-cv-458, 2009 WL 2143639, at *2-4 (D. Haw. July 14, 2009); see also Rodriguez v. New York Found. for Senior Citizens Home Attendant Servs., Inc., No. 15-cv-9817, 2016 WL 11707094, at *3 (S.D.N.Y. July 14, 2016); Germosen v. ABM Indus. Corp., No. 13-cv-1978, 2014 WL 4211347, at *6 & n.16 (S.D.N.Y. Aug. 26, 2014).

Accordingly, because all the Movants lack standing and because they have not demonstrated that they have a sufficient interest in this action to warrant intervention as of right or permissively, the Movants' motion to intervene is denied.

26

**IV**

The Union has petitioned this Court to confirm the Award and the respondents have not opposed its confirmation. The Movants filed a motion to vacate the aspects of the Award that relate to the Movants and all Pre-2015 MOA Employees of Alliance, FCP, and CPC.[7]

"Section 301 of the [LMRA] provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1998); 29 U.S.C. § 185. The LMRA "establishes a federal policy of promoting industrial stabilization through collective bargaining agreements, with a particular emphasis on private arbitration of grievances," and a "clear preference for the private resolution of labor disputes." Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016). "Under [the LMRA's] framework of self-government, the collective bargaining agreement is not just a contract, but 'a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate,'" that "are negotiated and refined over time

---

[7] Because the Movants lack standing to seek partial vacatur of the Award and may not intervene in this action, the Movants' motion to vacate the Award in part is moot. However, for the sake of completeness, the arguments advanced in that motion are addressed here and, for the reasons explained below, are without merit.

by the parties themselves so as to best reflect their priorities, expectations, and experience." Id.

Accordingly, a federal court's review of an LMRA arbitration award is "narrowly circumscribed and highly deferential." A&A Maint. Enter., Inc. v. Ramnarain, 982 F.3d 864, 868 (2d Cir. 2020). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp., 143 F.3d 704, 713 (2d Cir. 1998) (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987)). Instead, a court's role is "simply to determine whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." New York City & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus. of New York, Inc., 826 F.3d 611, 618 (2d Cir. 2016). "Because it is the arbitrator's view of the facts and the meaning of the contract for which the parties bargained, . . . [i]t is the arbitrator's construction of the contract and assessment of the facts that are dispositive, 'however good, bad, or ugly.'" Nat'l Football League Mgmt. Council, 820 F.3d at 536 (quoting Oxford Health Plans LLC v.

28

Sutter, 569 U.S. 564, 573 (2013)). The Supreme Court has explained that district courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract," or "improvident, even silly" mistakes. Misco, 484 U.S. at 36, 39; see also Nat'l Football League Mgmt. Council, 820 F.3d at 536. Accordingly, an arbitration award is to be confirmed if there is even a "barely colorable justification" for the decision. United States Steel & Carnegie Pension Fund v. Dickinson, 753 F.2d 250, 252 (2d Cir. 1985).

The Union argues persuasively that the Award is thorough, rational, and well-founded. As summarized in the Preliminary Injunction Order:

> The arbitrator determined that the respondents violated the Covered Statutes during relevant time periods. The arbitrator ordered a per capita contribution remedy to compensate the respondents' current and former employees for these violations. The arbitrator explained that he arrived at the per capita contribution remedy after considering several submissions, including employee affidavits and the respondents' financial records, along with other factors including the financial stability of the home care industry. The arbitrator ultimately concluded that a per capita contribution greater than two hundred fifty ($250) dollars is not sustainable and will, inevitably, lead to deserving employees failing to recover upon their meritorious claims.

Preliminary Injunction Order, 2022 WL 1046464, at *2.

In making these determinations, the arbitrator also relied on "the parties' submissions, including their joint stipulation

of facts, addenda to the joint stipulation of facts, evidence of the [respondents'] pay practices, and assertions made during conference and hearings held during the course of this proceeding." Amended Petition ¶ 29. The arbitrator further explained that in rendering the Award, he was guided by the parties' intention of adopting a "fair and expeditious process for resolving that disputes" and empowering the arbitrator "to fashion a remedy which takes into account conditions in the industry and existing realities affecting the [respondents] and employees alike." Id. ¶ 32. A review of the Award demonstrates that the arbitrator carefully balanced these considerations when he fashioned a remedy that resulted in a Fund of more than $30 million for over 100,000 current and former Union members.

The Movants advance no arguments that go to the substantive merits of the Award.[8] Accordingly, because an arbitration award rendered pursuant to the LMRA is entitled to a high level of deference and because the Award is reasonable and well-founded, the Award should be confirmed.

---

[8] Although the Movants did not advance any arguments in their motion to vacate the Award in part that go to the merits of the Award, Chan and Chu appear to have raised issues relating to the Award's compensation formula in their charge before the NLRB. In its decision dismissing the charge, Region 29 of the NLRB found the arguments by Chan and Chu to be without merit. See ECF No. 261 at 2-3 ("Contrary to what you have claimed, the [Award] does not arbitrarily distribute funds equally to all employees in the class, but rather compensates employees consistent with a formula that accounts for which employees had worked 24-hour shifts.").

In support of their argument that the Award should be
vacated in part, the Movants largely recycle arguments that this
Court has previously considered and found to be without merit.
The Movants first argue that the arbitrator exceeded his power
because he resolved the claims of the Pre-2015 MOA Employees of
Alliance, FCP, and CPC even though these former employees are
not bound by the 2015 MOA. The Movants contend that the
arbitrator's prior rulings regarding arbitrability and arbitral
jurisdiction in the first jurisdictional award were erroneous
and that this Court should review the arbitrator's threshold
determination of the arbitrability of the Pre-2015 MOA
Employees' claims under a de novo standard of review. But in the
case on which the Movants rely for this argument, First Options
of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995), the Supreme
Court explained that "a court must defer to an arbitrator's
arbitrability decision when the parties submitted that matter to
arbitration." Id. at 943. And in the First Confirmation Order,
this Court already concluded that:

> The CBA delegated questions of arbitrability to the
> Arbitrator by reference to the AAA Rules. Although the
> question of whether the parties have submitted a
> particular dispute to arbitration, i.e., the question of
> arbitrability, is presumptively an issue for judicial
> determination, the matter may be committed to the
> arbitrator if the parties clearly and unmistakably so
> provide. Courts in this Circuit have recognized that
> when parties explicitly incorporate rules that empower
> an arbitrator to decide issues of arbitrability, such as
> the AAA Rules, the incorporation serves as clear and

> unmistakable evidence of the parties' intent to delegate
> such issues to an arbitrator.
> . . .
> [T]he CBA and 2015 MOA evince a clear consent to
> arbitrate and delegate questions of arbitrability to the
> arbitrator . . ..

First Confirmation Order, 520 F. Supp. 3d at 606-08.

This Court then confirmed the first jurisdictional award, including the arbitrator's determinations regarding the arbitrability of the Pre-2015 MOA Employees' claims. The Movants have offered no persuasive reason for why these conclusions should be revisited or upset at this stage in the litigation.

Next, the Movants cite various court decisions that largely pre-date the First Confirmation Order in which other courts found that the claims of certain Pre-2015 MOA Employees should not be arbitrated.[9] But the arbitrator determined in the first jurisdictional award that the claims of nearly all the Pre-2015 MOA Employees were arbitrable, and the Court confirmed that award. The Movants contend that these decisions by other courts somehow bind this Court now as "law of the case," but this argument is without merit. Under the law of the case doctrine, courts "generally adhere to prior decisions in subsequent stages

---

[9] Once again, the Movants also argue that the Court is "bound" to follow Agarunova v. Stella Orton Home Care Agency, Inc., 794 F. App'x 138 (2d Cir. 2020). The Court rejected this argument in both the First Confirmation Order and the Preliminary Injunction Order because in Agarunova, the court of appeals expressly declined to consider whether the question of arbitrability was delegated to the arbitrator. First Confirmation Order, 520 F. Supp. 3d at 608; Preliminary Injunction Order, 2022 WL 1046464, at *8 n.12.

of the same case unless cogent and compelling reasons militate
otherwise." Choi v. Tower Res. Capital LLC, 2 F.4th 10, 21 (2d
Cir. 2021) (emphasis added). Unlike the First Confirmation
Order, the decisions cited by the Movants were not rendered by
this Court in the course of this case. To the extent that the
law of the case doctrine is applicable here, it suggests that
the Court should not depart from the First Confirmation Order
absent compelling reasons, which the Movants have failed to
provide.

Finally, for the first time in their reply brief, the
Movants argue that this Court lacks subject matter jurisdiction
to consider the Amended Petition because of the pending appeal
of the First Confirmation Order. This Court already rejected a
substantially identical argument in the Preliminary Injunction
Order:

> A pending appeal only divests the district court of
> jurisdiction respecting the questions raised and decided
> in the order that is on appeal. Accordingly, the issue
> of this Court's jurisdiction over the [Amended] Petition
> turns on whether questions relating to the confirmation
> of the [Award] are "involved in" the pending appeal of
> the [First] Confirmation Order.
>
> The appeal of the [First] Confirmation Order and the
> pending [Amended] Petition to confirm the [Award] raise
> distinct questions. The questions currently before the
> court of appeals concern the arbitrability of the Pre-
> 2015 MOA Employees' claims and whether this Court's
> confirmation of the arbitrator's jurisdictional
> determinations was correct. By contrast, the [Amended]
> Petition concerns the merits of the entirety of the
> [Award], which resolved the wages and hours claims of

> approximately 100,000 current and former Union members
> and fashioned a remedy that the arbitrator deemed to be
> appropriate in view of several competing considerations.
> These circumstances are illustrative of the general
> principle that merits issues on the one hand, and issues
> of jurisdiction and arbitrability on the other, are
> distinct inquiries that turn on the resolution of
> different questions. Accordingly, because the questions
> raised and decided in the [First] Confirmation Order are
> distinct from those raised by the [Amended] Petition to
> confirm the [Award], this Court has jurisdiction to
> consider the [Amended] Petition.

Preliminary Injunction Order, 2022 WL 1046464, at *8-9. None of the twelve movants who previously sought a preliminary injunction enjoining enforcement of the Award and dismissal of the Amended Petition (eight of whom are movants here) filed an appeal of the Preliminary Injunction Order.

The Movants contend that the Union's opposition to the Movants' motion to vacate demonstrates that the Court's prior ruling on subject matter jurisdiction was erroneous because in their papers, the Union raised issues that are "involved in" the pending appeal of the First Confirmation Order such as arbitrability. This argument is misplaced. The only reason that the Union addressed these issues was because the Movants chose to rehash previously rejected arguments attacking the first jurisdictional award in their opening brief rather than to discuss the Award presently before the Court. The fact that the Movants opted to raise inapposite, previously resolved arguments in its motion and thereby forced the Union to respond to them

34

does not demonstrate that the issues that are actually raised by the Amended Petition and are currently before this Court — those relating to the merits of the Award — are "involved in" the issues that will be decided in the pending appeal of the First Confirmation Order.

In sum, the Court has subject matter jurisdiction over the Amended Petition and all the Movants' arguments against confirmation of the Award are without merit. Accordingly, Union's Amended Petition to confirm the Award is granted.[10]

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, the Movants' motion to intervene is **denied.** The Movants' motion to vacate the Award in part is **denied.** The Union's Amended Petition to confirm the Award is **granted.**

---

[10] The Movants' motion to intervene and motion to vacate the Award in part were due by April 26, 2022. See ECF No. 240. On June 8, 2022, the Movants filed a letter motion for leave to file affidavits by three individuals who purport to be Pre-2015 MOA Employees of CPC and requested that these affidavits be incorporated into the Movants' motions. See ECF No. 259. The three affiants have never appeared in this action and have not filed motions to intervene. Moreover, the affidavits include impermissible legal conclusions regarding the arbitrability of these affiants' wage and hour claims against CPC. See, e.g., ECF No. 259-1 ¶¶ 5-6. Finally, these affidavits were filed nearly a month after the Movants' motions were fully briefed and the Movants provided no persuasive reason why this untimeliness should be excused. For these reasons, the Movants' motion for leave to file three additional affidavits in support of their motions is denied.

The Clerk is directed to enter judgment accordingly. The Clerk is further directed to close all pending motions and to close this case.

**SO ORDERED.**

Dated:    New York, New York
            June 24, 2022

                                      John G. Koeltl
                        United States District Judge