UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

1199SEIU UNITED HEALTHCARE WORKERS
EAST,

                          Petitioner,

              - against -

PSC COMMUNITY SERVICES, ET AL.,

                          Respondents.
───────────────────────────────────────

                              20-cv-3611 (JGK)

                              OPINION AND ORDER

JOHN G. KOELTL, District Judge:

This action arises out of arbitration proceedings involving
petitioner 1199SEIU United Healthcare Workers East (the "Union")
and the respondents, a group of home care agencies licensed to
provide home care services in New York. The Union filed two
petitions for confirmation of arbitration awards pursuant to the
Labor Management Relations Act of 1947 ("LMRA"), as amended, 29
U.S.C. § 185, the first seeking to confirm an award addressing
issues of arbitrability and jurisdiction, and the second seeking
to confirm an award resolving the Union's grievance against the
respondents on the merits. Both awards (the "Awards") were
rendered according to procedures set forth in collective
bargaining agreements ("CBAs") between the Union and the
respondents. This Court confirmed the first award in an opinion
dated February 19, 2021, see 1199SEIU United Healthcare Workers
E. v. PSC Cmty. Servs., 520 F. Supp. 3d 588 (S.D.N.Y. 2021)
("First Confirmation Order"), and the second in an opinion dated

June 24, 2022, see 1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs., No. 20-cv-3611, 2022 WL 2292736, at *1 (S.D.N.Y. June 24, 2022) ("Second Confirmation Order").

One of the respondents in this case, United Jewish Council of the East Side Home Attendant Service Corp. ("UJC"), now seeks a preliminary and/or permanent injunction enjoining three former Union members, Epifania Hichez, Carmen Carrasco, and Seferina Acosta (collectively, the "Hichez plaintiffs"), from prosecuting putative class claims brought against UJC in an action currently pending in the New York State Supreme Court. See Hichez v. United Jewish Counsel of the East Side Home Attendant Service Corp., No. 653250/2017 (N.Y. Sup. Ct. filed June 14, 2017) (the "State Court Action"). UJC requests the injunction pursuant to the All Writs Act("AWA"), 28 U.S.C. § 1651, and argues that the relitigation exception to the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283, permits the issuance of the injunction.

For the following reasons, UJC's motion for a preliminary injunction enjoining the Hichez plaintiffs from further pursuing putative class claims in the State Court Action is **granted.**[1]

---

[1] The Hichez plaintiffs did not agree that the Court should consider the current papers as a basis for a permanent injunction. See ECF No. 285. Because it is unclear what additional proceedings should occur before the Court considers a permanent injunction, the current Opinion and Order is limited to a grant of the requested preliminary injunction.

## I.

The Court assumes familiarity with its Confirmation Orders, which describe the background of this dispute in detail. See generally First Confirmation Order, 520 F. Supp. 3d at 594-98; Second Confirmation Order, 2022 WL 2292736, at *1-4. The facts relevant to resolving UJC's motion are set forth below and constitute the Court's findings of fact and conclusions of law.[2]

The Union is a labor union that serves as the sole and exclusive representative for UJC's home health aide employees, including for purposes of collective bargaining over the terms and conditions of their employment. See First Confirmation Order, 520 F. Supp. 3d at 594. UJC, like the other respondents in this action, is a licensed home care agency. Id. At all relevant times, the Union was a party to CBAs with each of the respondents, including UJC. Id. at 594-95. In late 2015, the Union and the various respondents executed a memorandum of agreement (the "2015 MOA") that amended the CBAs. Id. at 595. The 2015 MOA laid out an alternative dispute resolution process through which all claims arising under the New York Labor Law (the "NYLL"), the New York Home Care Worker Wage Parity Law (the "Parity Law"), and the Fair Labor Standards Act (the "FLSA")

---

[2] Unless otherwise noted, this Opinion and Order omits all alterations, omissions, emphasis, internal quotation marks, and citations in quoted text.

(collectively, the "Covered Statutes") must be resolved. Id. As

pertinent here, the 2015 MOA required that "all claims brought

by either the Union or Employees" for violations of the Covered

Statutes must first proceed through a grievance procedure or

mediation and, if not resolved through those mechanisms, must be

submitted to "final and binding arbitration." Id. at 595-96.

The Hichez plaintiffs are former UJC employees who claim to

have ceased their employment with UJC before the Union executed

the 2015 MOA.[3] See Pl.'s Opp'n, ECF No. 273, at 2. On June 14,

2017, the Hichez plaintiffs brought the State Court Action as a

putative "class action," alleging that UJC had systematically

underpaid its home care employees in violation of the NYLL, the

Parity Law, and other wage-and-hours provisions. See Kirschner

---

[3] At oral argument, the parties were asked for their respective
positions on whether the three Hichez plaintiffs are subject to
this Court's personal jurisdiction. UJC argued that the Hichez
plaintiffs' previous efforts to intervene in this action, along
with their failure to raise any jurisdictional objections in
their multiple appearances before the Court, waived any personal
jurisdiction defense the Hichez plaintiffs may have had. See ECF
No. 284, at 2. The Hichez plaintiffs' post-argument letter to
this Court does not contest personal jurisdiction. See ECF No.
285. Thus, the Hichez plaintiffs have forfeited or waived any
objection to the personal jurisdiction of this Court. See, e.g.,
Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 62 (2d Cir. 1996)
(holding that a party's failure to assert "lack of personal
jurisdiction despite several clear opportunities to do so"
constituted "forfeiture" of the defense); see also John v.
Sotheby's, Inc., 141 F.R.D. 29, 37 (S.D.N.Y. 1992) ("By moving
to intervene in this action, [the movant] has consented to
personal jurisdiction.").

Decl., Ex. B, ECF No. 267-2, ¶¶ 1, 55-84. As indicated in their

amended complaint, the Hichez plaintiffs seek both damages and

injunctive relief "on behalf of a class" of "[a]ll home care

aides . . . employed by [UJC] in New York to provide care

services to [UJC's] elderly and disabled clients in the clients'

homes during the period beginning from June 14, 2011 until

November 30, 2015." Id., Ex. L, ECF No. 267-12, ¶ 16.

On July 25, 2017, UJC moved in the State Court Action to

compel arbitration pursuant to the 2015 MOA. See Kirschner

Decl., Ex. C, ECF No. 267-3. The state trial court denied the

motion on the ground that "the [Hichez] plaintiffs, who were no

longer employed by UJC when the [2015] MOA was signed, [were]

not bound by" the 2015 MOA's arbitration provision. See Hichez

v. United Jewish Council of the East Side, Home Attendant

Service Corp., No. 653250/2017, 2018 WL 4466257, at *2 (N.Y.

Sup. Ct. Sept. 18, 2018). The court appeared to cabin its

conclusion regarding the nonbinding nature of the 2015 MOA to

the named Hichez plaintiffs themselves, stating that "[w]hen and

if" those plaintiffs "move[] to certify the class they seek to

represent," the "scope of that class and its implications will

be considered." Id.

UJC appealed from the denial of its motion to compel

arbitration and also moved for reconsideration of that decision

in the state trial court. See Kirschner Decl. ¶ 7. The trial

court thereafter denied the motion for reconsideration but stayed the State Court Action pending resolution of UJC's appeal. See Hichez v. United Jewish Council of the East Side Home Attendant Service Corp., No. 653250/2017, 2019 WL 2745063, at *3-4 (N.Y. Sup. Ct. July 1, 2019).

On January 2, 2019, while UJC's appeal and motion for reconsideration in the State Court Action were pending, the Union filed a class action grievance against UJC and the other respondents for "violations of the CBAs regarding wage and hour claims arising under the Covered Statutes." First Confirmation Order, 530 F. Supp. 3d at 596. The Union pursued this grievance "on behalf of all of [its] home care bargaining members," a group potentially encompassing over 100,000 current and former home care employees. Kirschner Decl. ¶ 8; see First Confirmation Order, 530 F. Supp. 3d at 594. Pursuant to the 2015 MOA and the CBAs, certain parties to the Union's grievance participated in a mediation. See First Confirmation Order, 520 F. Supp. 3d at 596. On December 24, 2019, the arbitrator declared that the mediation had concluded and directed the parties to brief two threshold issues related to arbitration: (1) whether the claims of former and current Union members were arbitrable; and (2) whether the arbitrator had jurisdiction over those claims "irrespective of whether employees' employment terminated prior to the effective date" of the 2015 MOA. Id. at 597.

6

In January 2020, shortly after the arbitrator ordered briefing, the Hichez plaintiffs brought a motion in the State Court Action seeking to enjoin the arbitration with respect to former UJC employees whose employment had terminated before the 2015 MOA went into effect. See Kirschner Decl. ¶ 12. Later that same month, the Appellate Division, First Department affirmed the denial of UJC's motion to compel arbitration for reasons similar to those set forth in the trial court's initial decision on the subject. See Hichez v. United Jewish Counsel of the East Side, Home Attendant Service Corp., 117 N.Y.S.3d 214, 215 (App. Div. 2020).

On April 17, 2020, the arbitrator issued an award (the "First Award") resolving the issues on which it had requested briefing. The arbitrator determined that (1) the claims of former and current Union members asserted in the Union's class action grievance were arbitrable, and (2) the arbitrator had jurisdiction to adjudicate all of those claims, including claims brought on behalf of former employees who had ceased their employment before the effective date of the 2015 MOA. See First Confirmation Order, 520 F. Supp. 3d at 597; see also First Award, ECF No. 1-1, at 37. However, the arbitrator ruled that the arbitration proceeding would "not be binding upon" any individual home care employees "whose claims have been held not to be subject to arbitration by state or federal court(s)."

7

First Award at 44. The arbitrator noted that the three Hichez plaintiffs fell into this category, citing the state appeals court's decision in the State Court Action. See id. at 44 & n.18. Accordingly, the arbitrator explicitly carved the three named Hichez plaintiffs out of the scope of the arbitration. Id. at 44, 46.

The Union petitioned this Court to confirm the First Award on May 8, 2020. See ECF No. 1. The Hichez plaintiffs moved to intervene, arguing that they had an interest in opposing the petition because the arbitration would impede their pursuit of claims against UJC in the State Court Action. See ECF No. 106. On February 19, 2021, this Court issued the First Confirmation Order, which confirmed the First Award in full and denied all motions objecting to the arbitrator's decision. See 520 F. Supp. 3d at 605-08. With respect to the Hichez plaintiffs' motion in particular, the Court stated that the standard for intervention had not been met because the Hichez plaintiffs "are expressly excluded from the [arbitration], and thus cannot allege they suffer even the speculative impairment of the [arbitration's] potential effect on parallel state court litigation." Id. at 601. The Hichez plaintiffs, along with several other former Union members who had opposed the Union's petition, filed a notice of appeal as to the First Confirmation Order on March 19,

2021. ECF No. 163. That appeal is currently pending before the
United States Court of Appeals for the Second Circuit.

Around the same time that the Union petitioned this Court
for confirmation of the First Award, the trial court in the
State Court Action issued an order granting in part and denying
in part the Hichez plaintiffs' earlier request for an injunction
enjoining the arbitration as to former UJC home care employees
whose employment had ended before the effective date of the 2015
MOA. See Kirschner Decl., Ex. I, No. 267-9. Importantly, the
trial court enjoined the arbitration solely with respect to the
named Hichez plaintiffs but allowed the other members of the
"putative class" to proceed in arbitration. See id. at 13; see
also id. at 8 ("[T]he putative class members are not entitled to
the injunctive relief sought."). The state court reasoned that
its September 2018 decision denying UJC's motion to compel
arbitration was "binding only on [the Hichez] plaintiffs, and
not on any of the putative class members." Id. at 8.

In March 2021, shortly after the issuance of this Court's
First Confirmation Order, the state trial court denied the
Hichez plaintiffs' motion for reconsideration of the decision
not to extend the injunction against arbitration to putative
class members. See Kirschner Decl., Ex. J, ECF No. 267-10. UJC
then moved to dismiss several of the Hichez plaintiffs' claims,
and the state trial court partially granted that motion in

December 2021. See Hichez v. United Jewish Council of the East

Side, Home Attendant Service Corp., No. 653250/2017, 2021 WL

5883111 (N.Y. Sup. Ct. Dec. 13, 2021). The Hichez plaintiffs

noticed an appeal and sought extensions of their time to perfect

it, but they otherwise did not take any action to further their

claims in the state trial court. Kirschner Decl., ¶¶ 21-22, 26.

Also in December 2021, respondents Home Care of Brooklyn

and Queens, Inc. and Care at Home (the "Home Care Movants")

requested that this Court issue an injunction enjoining two

former Union members from prosecuting a class action against

them in New York state court. See Teshabaeva v. Family Home Care

Services of Brooklyn and Queens, Inc., No. 158949/2017 (N.Y.

Sup. Ct. filed Oct. 6, 2017). By way of brief background, the

state trial court in Teshabaeva had previously denied the Home

Care Movants' motion to compel arbitration and instead

permanently enjoined the arbitration of the plaintiffs' class

claims. See 1199SEIU United Healthcare Workers E. v. PSA Cmty.

Servs., No. 20-cv-3611, 2022 WL 484861, at *2 (S.D.N.Y. Feb. 16,

2022) ("Injunction Order").  The state appeals court affirmed

that decision upon concluding that this Court's First

Confirmation Order did not have preclusive effect in the

Teshabaeva action, and the state trial court later rejected the

Home Care Movants' renewed motion to compel arbitration on

similar grounds. Id. at *2-3. Subsequently, the Home Care

Movants argued in this Court that their desired injunction, requested pursuant to Federal Rule of Civil Procedure 65, was necessary to protect this Court's First Confirmation Order. See ECF No. 169.

On February 16, 2022, this Court denied the Home Care Movants' request for an injunction. See Injunction Order, 2022 WL 484861, at *9. As relevant here, the Court first concluded that the Rooker-Feldman doctrine required dismissal of the Home Care Movants' motion because the state courts had already ruled that the Teshabaeva plaintiffs' class claims could not be arbitrated, and thus the injunction request was "effectively an appeal from state court decisions initiated by the state court losers after they received those adverse rulings." Id. at *6. The Court rejected the Home Care Movants' argument that they were entitled to an injunction under the AIA's "relitigation exception," reasoning that the state courts had "decided unambiguously" that the First Confirmation Order did not preclude the Teshabaeva action, and accordingly, "interests of equity, comity, and federalism would be undermined if this Court were to review those decisions." Id. at *8. Finally, the Court found that the Home Care Movants had failed to make the required showing of "irreparable harm," because they had unreasonably delayed their pursuit of both "an order regarding arbitration from any court" and an "injunction from this Court." Id.

11

Several days after this Court denied the Home Care Movants'
request for an injunction, the arbitrator issued another award
(the "Second Award") in the arbitration proceedings between the
Union and the respondents, this time addressing the merits of
the Union's class action grievance. See Second Award, ECF No.
183-1. In the Second Award, the arbitrator determined that all
of the respondents had committed violations of the relevant
wage-and-hours laws, "resulting in underpayment of required
wages" to the Union's former and current members. See id. at 46.
To "remedy . . . all categories of violations" addressed in the
arbitration proceeding, the arbitrator ordered the respondents
to contribute to a compensation fund of roughly $30 million, and
to disburse those funds to eligible claimants. Id. at 50, 51-52,
66-72; see Second Confirmation Order, 2022 WL 2292736, at *1.
With respect to UJC in particular, the arbitrator specified that
this remedy would cover all of UJC's wage-and-hours violations
during a "coverage period" from "June 14, 2011 [to] October 31,
2021," a time span encompassing the proposed class period for
the putative class in the Hichez plaintiffs' State Court Action.[4]
Id. at 50-52, 66-68; see id. at 46.

---

[4] The Hichez plaintiffs do not dispute this point. In response to
this Court's request, the Hichez plaintiffs filed a letter in
which they "acknowledge[d] that the arbitrator's award subsumes
the entire potential action in the state case." ECF No. 285.

In March 2022, the Union petitioned this Court to confirm the Second Award. See ECF No. 183. The Court issued a decision on June 24, 2022, concluding that confirmation was appropriate "because an arbitration award rendered pursuant to the LMRA is entitled to a high level of deference and because the [Second] Award is reasonable and well-founded." Second Confirmation Order, 2022 WL 2292736, at *11. The Court accordingly confirmed the Second Award in full and again denied the motions of various former Union members who sought to object or intervene. Id. at *1. This time, the Hichez plaintiffs did not move to intervene or otherwise object to the Second Award. As with the First Confirmation Order, an appeal from the Second Confirmation Order is currently pending before the United States Court of Appeals for the Second Circuit. See ECF No. 264.

On July 1, 2022, just one week after this Court issued the Second Confirmation Order "and after many months of inactivity" in the State Court Action, the Hichez plaintiffs served UJC with written discovery requests seeking information concerning not just the three named Hichez plaintiffs, but all members of their putative class. Kirschner Decl. ¶ 26; see, e.g., id., Ex. O, ECF No. 267-15, ¶¶ 23-24 (requesting all "documents and records that refer or relate to Plaintiffs and Defendant's other Home Care Aides recording the duties performed during each shift" and all "documents and records that refer or relate to Plaintiffs and

13

Defendant's other Home Care Aides . . . recording the hours they worked each week" (emphases added)). In a preliminary-conference request filed two weeks later, the Hichez plaintiffs described the State Court Action as an ongoing "class action, brought by Plaintiffs individually and on behalf of a class of similarly situated employees, to seek redress for . . . systematic and class-wide" violations. Id., Ex. Q, ECF No. 267-17.

## II.

The All Writs Act ("AWA"), 28 U.S.C. § 1651, authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Id. § 1651(a). This grant of authority is in turn limited by the Anti-Injunction Act ("AIA"), which bars a federal court from enjoining state court proceedings "except as expressly authorized by Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283; Wyly v. Weiss, 697 F.3d 131, 137 (2d Cir. 2012).[5]  The last of these AIA exceptions, permitting injunctions that "protect or effectuate" a federal

_____

[5] "It is well settled that the [AIA] applies to injunctions that prohibit a person from litigating in a state court, as well as injunctions that directly stay proceedings in a state court." Smith v. Woosley, 399 F.3d 428, 431 (2d Cir. 2005). Accordingly, the fact that UJC seeks an injunction barring the named Hichez plaintiffs from litigating putative class claims in the State Court Action does not change the analysis under the AIA.

court judgment, is known as the "relitigation exception." See

Wyly, 697 F.3d at 139. The core purpose of this exception is to

prevent relitigation "of a claim or issue 'that previously was

presented to and decided by the federal court.'" Id. (quoting

Smith v. Bayer Corp., 564 U.S. 299, 306 (2011)); see also

Amalgamated Sugar Co. v. NL Indus., Inc., 825 F.2d 634, 639 (2d

Cir. 1987) (noting that a district court "may properly enjoin

state court proceedings" under the relitigation exception "when

it is necessary to preserve its authority or to avoid needless

litigation").

As the Supreme Court has explained, the AIA's relitigation

exception "implement[s] well-recognized concepts of claim and

issue preclusion." Smith, 564 U.S. at 306. "In other words, the

relitigation exception permits a preemptive strike that avoids

the need to assert prior adjudication defenses in a state court

when faced with claims that have already been [resolved] in a

federal court." Smith v. Woosley, 399 F.3d 428, 434 (2d Cir.

2005) ("Woosley"); Staffer v. Bouchard Transp. Co., 878 F.2d

638, 642 (2d Cir. 1989) (noting that under this exception, "a

federal court may halt state litigation that might undermine

some of the res judicata or collateral estoppel effects of a

federal judgment"). Thus, an AWA injunction is permitted under

the AIA's relitigation exception where the "state court has not

ruled" on the preclusive effect of a federal judgment, but the

requirements for claim or issue preclusion are met nonetheless.
Amalgamated Sugar, 825 F.2d at 641-42 (citing Parsons Steel v.
First Ala. Bank, 474 U.S. 518, 523-24 (1986)); see id. at 639;
Smith, 564 U.S. at 307 (noting that the relevant "question" is
whether the federal court's decision would "preclude[] a later
adjudication in state court").

The Supreme Court has "taken special care to keep" the
relitigation exception "strict and narrow," because "a court
does not usually get to dictate to other courts the preclusion
consequences of its own judgment." Smith, 564 U.S. at 306-07.
Thus, an "injunction of state court proceedings, even where
warranted, is discretionary." Staffer, 878 F.3d at 644. The
ultimate decision whether to grant such an injunction "remains
subject to equitable considerations," Kaplan v. S.A.C. Cap.
Advisors, L.P., No. 12-cv-9350, 2017 WL 6403087, at *10
(S.D.N.Y. Nov. 16, 2017), and the relitigation exception "does
not qualify in any way" the principles of comity and federalism
"that must restrain a federal court when asked to enjoin a state
court proceeding," Wyly, 697 F.3d at 140.

### III.

UJC seeks an injunction against the pursuit of putative
class claims in the State Court Action on the ground that such
relief is necessary to protect this Court's Confirmation Orders
and the underlying Awards. UJC argues that the confirmation of

16

the Awards fully and finally resolved the claims of the former

UJC employees who make up the Hichez plaintiffs' proposed class,

and that allowing the Hichez plaintiffs to proceed with a class

action on behalf of the same former UJC employees would force

UJC to relitigate those claims in state court. For the reasons

that follow, UJC's request for an injunction is granted.

**A.**

UJC argues that the AIA's relitigation exception leaves

this Court free to issue the requested injunction pursuant to

the AWA. The Hichez plaintiffs respond that this exception does

not apply, and that as a result, the AIA bars the issuance of

UJC's proposed injunction. Although the relitigation exception

is narrow, the requirements for its application are met here.

As a preliminary matter, many of the Hichez plaintiffs'

arguments in opposition to UJC's motion rest on the contention

that "if the Court grants UJC's proposed injunction, it would be

prohibiting Hichez Plaintiffs from proceeding with their case."

Pl.'s Opp'n at 7. But that is plainly a misreading of UJC's

motion. UJC seeks only to enjoin the Hichez plaintiffs from

"prosecuting the claims brought on behalf of members of the

putative class" in the State Court Action. Proposed Order to

Show Cause, ECF No. 265 (emphasis added); see also UJC Memo. of

Law, ECF No. 266, at 1 (describing the requested injunction as

one "enjoining" the Hichez plaintiffs from "further prosecuting

putative class claims" (emphasis added)). Granting this proposed
relief in no way prevents the Hichez plaintiffs, who were carved
out of the arbitration proceedings and are not subject to this
Court's Confirmation Orders, from pursuing their claims against
UJC individually.

When interpreted properly, the injunction that UJC seeks is
consistent with the requirements of the relitigation exception.
First, the state courts in the State Court Action have not ruled
on whether this Court's Confirmation Orders preclude the pursuit
of the Hichez plaintiffs' putative class claims. Absent a state
court decision on the res judicata effect of the federal
judgment at issue, "[a] district court may enter an injunction
pursuant to the relitigation exception." Amalgamated Sugar, 835
F.3d at 641.

Second, under correctly applied principles of preclusion
law, this Court's Confirmation Orders foreclose the continued
prosecution of the Hichez plaintiffs' putative class claims in
the State Court Action. Here, the inquiry as to the preclusive
effect of the Confirmation Orders centers more appropriately on
claim preclusion, rather than issue preclusion, because UJC
seeks to enjoin the pursuit of putative class claims that were
or could have been resolved in the confirmation proceedings.[6] See

---

[6] The parties' submissions in connection with UJC's motion appear
to refer to the rules governing claim preclusion and issue

N. Assurance Co. of Am. v. Square D Co., 201 F.3d 84, 87 n.2 (2d

Cir. 2002) (noting that "claim preclusion and issue preclusion"

are "two separate and distinct wings of preclusion law").

The doctrine of claim preclusion provides that "a prior

decision dismissed on the merits is binding in all subsequent

litigation between the same parties" or their privies "on claims

arising out of the same facts, even if based upon different

legal theories or seeking different relief on issues which were

or might have been litigated in the prior action but were not."

Id. at 87; see also Amalgamated Sugar, 825 F.2d at 639. In this

case, all of the requirements for precluding the prosecution of

the Hichez plaintiffs' putative class claims are met. To begin,

judgments confirming arbitration awards are generally entitled

to res judicata effect. See JSC Sec., Inc. v. Gebbia, 4 F. Supp.

2d 243, 250 (S.D.N.Y. 1998). Thus, this Court's confirmation of

the Awards constituted a binding merits decision for purposes of

the preclusion analysis.

With respect to privity, the Hichez plaintiffs appear to

argue that because they were excluded from the arbitration, the

class that they seek to represent cannot be "in privity" with

any party to the arbitration proceedings. That argument confuses

_____

preclusion interchangeably. However, at oral argument, UJC
clarified that the doctrine of claim preclusion is at issue
here.

the relevant question here. The claims that UJC seeks to enjoin
do not belong to the Hichez plaintiffs individually, but to the
other members of the putative class. Accordingly, the proper
inquiry for privity purposes is whether those putative class
members were privies of any party to the arbitration.

Plainly, they were. Under the doctrine of privity, "a party
will be bound by [a] previous judgment if his interests were
adequately represented by another vested with the authority of
representation." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275,
285 (2d Cir. 2002). And "[i]n the context of labor unions and
grievances filed on behalf of union members pursuant to [CBAs],
the union is in privity with the member provided that the member
belonged to the union at all relevant times, and the union was
the sole and exclusive collective bargaining representative for
its members." Lobban v. Cromwell Towers Apartments, L.P., 345 F.
Supp. 3d 334, 345 (S.D.N.Y. 2018) (concluding that the plaintiff
was precluded from bringing certain claims against his employer
where the plaintiff's union had already arbitrated similar
claims on his behalf pursuant to the CBA). Here, the putative
class members in the State Court Action were required to pursue
their claims against UJC through the Union, which served as
their sole and exclusive representative both in the arbitration
and in the confirmation proceedings before this Court. See First
Confirmation Order, 520 F. Supp. 3d at 607-08. Moreover, this

Court already determined that the Union adequately represented the respondents' current and former employees, including the former UJC employees in the Hichez plaintiffs' putative class. See id. 520 F. Supp. 3d at 599-600 (no "evidence to suggest that the Union would not adequately represent [employees'] claims"). Thus, the privity requirement is satisfied.

Last, the putative class claims asserted in the State Court Action are the same as those resolved in the two Awards and this Court's Confirmation Orders. See N. Assurance, 201 F.3d at 87 (noting that res judicata applies to "claims arising out of the same facts" as the claims decided in the previous action). The Hichez plaintiffs' putative class claims, which primarily allege violations of the NYLL and Parity Law, are materially identical to claims asserted and pursued in the Union's class action grievance against UJC and the other respondents. See Kirschner Decl., Ex. L, ¶¶ 67-96. And to the extent the Hichez plaintiffs bring putative class claims that were not expressly raised in the Union's grievance, such claims arise out of the same UJC wage-and-hours practices that were at issue in the arbitration proceedings. See, e.g., id. ¶¶ 1-2, 33-37, 47-48, 52-65. It is well understood that claim preclusion not only "bars [the] claims that were brought and decided in a prior litigation," but also "bars all other claims relating to the same transaction against the same defendant that could have been brought at that

time." N. Assurance, 201 F.3d at 87. Thus, all of the Hichez
plaintiffs' putative class claims are subject to the preclusive
effect of the Court's Confirmation Orders.[7]

In short, because (1) no state court has considered the
preclusive effect of this Court's Confirmation Orders in the
State Court Action, and (2) those Orders are entitled to res
judicata effect with respect to the Hichez plaintiffs' putative
class claims, UJC's requested injunction should issue pursuant
to the AWA under the AIA's relitigation exception. Indeed, an
injunction enjoining further prosecution of the putative class
claims in the State Court Action advances that exception's core
purpose. With the exception of the Hichez plaintiffs themselves,
the former UJC employees comprising the putative class were
awarded relief on their claims against UJC when the arbitrator
ordered, and this Court approved, compensatory payments out of a
fund to which UJC was required to contribute. Now, the Hichez
plaintiffs seek to circumvent the federal judgment confirming

---

[7] Indeed, last month, another respondent involved in the
arbitration with the Union, the Chinese-American Planning
Council Home Attendant Program, Inc. ("CPC"), asked Judge
Schofield to dismiss a putative class action brought against CPC
on the ground that the case should be closed in view of the
confirmation of the Awards. See Chan v. Chinese-American
Planning Council Home Attendant Program, Inc., 15-cv-09605
(S.D.N.Y. Sept. 6, 2022), ECF No. 138, at 2. In that case, the
plaintiffs were seeking relief from CPC for wage-and-hours
violations on behalf of a putative class of former and current
CPC employees. See id. at 1. On consent, Judge Schofield
dismissed the case "with prejudice." Id.

the Awards and obtain relief for the very same former UJC
employees on claims arising from the very same UJC wage-and-
hours policies at issue in the arbitration. Lest there be any
doubt on this point, the Hichez plaintiffs suggest in their
opposition papers that if the state court "finds UJC liable and
awards greater damages than the Arbitrator did," then UJC could
simply "offset" that state-court damages award with "the amount
it paid" to its former employees "in arbitration." Pl.'s Opp'n
at 15.

Issuing UJC's requested injunction now will obviate the
need for UJC to pursue applicable res judicata defenses in the
State Court Action and ensure that this Court's judgment is
accorded the appropriate preclusive effect. In so doing, the
injunction will prevent the relitigation of the claims against
UJC that this Court's judgment and the underlying Awards have
already resolved and remedied. Thus, the relitigation exception
supports an injunction enjoining the Hichez plaintiffs' pursuit
of putative class claims in the State Court Action.

**B.**

The fact that the AIA's relitigation exception applies to
UJC's requested injunction does not end the analysis under the
AWA or the AIA. The Court must also consider "the principles of
equity, comity, and federalism" that bear on any federal court
decision to enjoin state proceedings. Wyly, 697 F.3d at 140.

Here, the relief sought in UJC's motion does not implicate the sort of comity and federalism concerns that might otherwise counsel against issuing an injunction pursuant to the AWA. While the state courts in the State Court Action concluded that the Hichez plaintiffs could not be compelled to arbitrate their wage-and-hours claims against UJC, the courts explicitly declined to extend that determination to the other putative class members. See, e.g., Hichez, 2018 WL 4466257, at *2; see also Kirschner Decl., Ex. I, at 8. Instead, the state courts allowed the putative class members' claims to proceed through arbitration, where the Union pursued a grievance encompassing those claims against UJC and the other respondents. Accordingly, both the Awards and the Confirmation Orders, which did not bind the three named Hichez plaintiffs but did resolve the claims of the putative class members, were wholly consistent with the rulings in the State Court Action. It follows that an injunction protecting the effect of this Court's judgment with respect to the putative class does not contravene any rulings in the State Court Action. Finally, the injunction here does not conflict with any State Court Action decisions regarding the preclusive effect of the Confirmation Orders, because no such decisions exist.

For similar reasons, the Hichez plaintiffs' argument that the Rooker-Feldman doctrine forecloses this Court's issuance of

the injunction is misplaced. The Rooker-Feldman doctrine is a

"narrow" principle that bars federal courts from adjudicating

"cases brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the district

court proceedings commenced and inviting district court review

and rejection of those judgments." Lance v. Dennis, 546 U.S.

459, 464 (2006). Those circumstances are not present here. UJC's

requested injunction is directed not toward the claims that the

named Hichez plaintiffs might pursue individually, but toward

the claims that they seek to bring on behalf of the putative

class. And the courts in the State Court Action declined to

prevent the claims of former UJC employees other than the named

Hichez plaintiffs from proceeding to arbitration. Thus, UJC

never "lost" on the question of whether the outcome of the

arbitration would bind the putative class members, and its

request for an injunction limited to the putative class claims

does not challenge any state-court judgment.

The Hichez plaintiffs also argue that UJC's requested

relief raises comity concerns because this Court will have to

"micromanag[e] the discovery process" and "potentially overrule

state court discovery decisions" in order to effectuate the

injunction. Pl.'s Opp'n at 12-13. But all that the injunction

will do is prevent the named Hichez plaintiffs from pursuing

class claims on behalf of former UJC employees whose claims have

already been resolved. The injunction does not limit the ability of the Hichez plaintiffs to pursue their own claims individually, nor does it constrain the discovery that the Hichez plaintiffs may seek in support of those individual claims. Thus, the Hichez plaintiffs remain free to argue in the state proceedings that discovery concerning other former UJC employees is relevant to their individual claims, and the state court remains free to decide that issue for itself.

The parties also dispute whether the equities weigh in favor of or against the issuance of UJC's requested injunction. In particular, UJC argues that while the proposed relief would do no harm to the named Hichez plaintiffs, UJC will suffer irreparable injury if those plaintiffs are allowed to pursue putative class claims in the State Court Action. Courts have suggested in the past that a party need not establish irreparable harm to secure an injunction pursuant to the AWA. See Ronnie Van Zant, Inc. v. Pyle, 270 F. Supp. 3d 675, 676 (S.D.N.Y. 2017) (collecting cases), rev'd on other grounds sub nom. Ronnie Van Zant, Inc. v. Cleopatra Recs., Inc., 906 F.3d 253 (2d Cir. 2018). In any event, UJC would likely incur irreparable injury in the absence of a preliminary injunction, and the specter of irreparable harm to UJC supports the issuance of a preliminary injunction.

"[I]t is well established that losing the ability to enforce an arbitration agreement is a form of irreparable harm." Nat'l Union Fire Ins. Co. v. Advanced Micro Devices, Inc., No. 16-cv-5699, 2016 WL 4204066, at *5 (S.D.N.Y. Aug. 4, 2016) (enjoining the pursuit of a state court action where the parties had previously agreed to arbitrate the claims at issue); see also Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc., 962 F. Supp. 385, 391 (S.D.N.Y. 1997) (collecting cases); cf. id. at 388 ("Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate."). Here, UJC had bargained for the right to arbitrate the wage-and-hours claims of its home care employees, including the former employees comprising the putative class in the State Court Action. Without an injunction preventing the Hichez plaintiffs from further prosecuting the putative class claims, UJC will be forced to relitigate claims already resolved in a valid arbitration, in turn depriving UJC of its right to have those claims handled in an arbitral forum.

Further, if the Hichez plaintiffs were allowed to litigate the putative class action to conclusion, UJC might find itself liable for classwide relief greater than or different from the arbitrator-crafted remedy to which the putative class members

are already entitled. See Second Award at 50, 51-54 (requiring each respondent, including UJC, to make a per capita payment into the compensation fund for "each home aide in its employ during all or part of its coverage period"). That inconsistency between the Court-approved Award and a potential state court judgment would also subject UJC to irreparable harm. See, e.g., Paramedics Electromedicina Comercial Ltda. v. GE Med. Sys. Info. Tech., No. 02-cv-9369, 2003 WL 23641529, at *12 (S.D.N.Y. June 4, 2003) (finding that defendant would be "irreparably harmed" absent injunctive relief barring plaintiff's prosecution of a foreign action against it where defendant "face[d] the prospect of conflicting judgments on the merits from" the foreign court and an arbitral tribunal).

Meanwhile, the Hichez plaintiffs will not suffer any harm as a result of the requested injunction. UJC's proposed relief would affect only those claims that were already adjudicated in the arbitration proceedings. Because the Hichez plaintiffs were expressly excluded from the arbitration, granting the injunction will not affect the ability of the Hichez plaintiffs to seek relief on their individual claims against UJC.

Considerations of public policy also support UJC's request for relief. The injunction would ensure that the two Awards and this Court's Orders confirming them are given binding effect in the Hichez plaintiffs' ongoing state proceeding. That result is

consistent not only with the general "[p]olicies favoring the

finality of judgments, judicial economy, and repose for the

parties," Amalgamated Sugar, 825 F.2d at 642, but also with the

"strong federal policy in favor of arbitration," Arciniaga v.

General Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006).

Finally, in support of its argument that principles of both

equity and comity require the denial of UJC's motion, the Hichez

plaintiffs argue that this Court's reasons for denying the Home

Care Movants' December 2021 motion for injunctive relief apply

with equal force here. See Injunction Order, 2022 WL 484861, at

*4-9. The Home Care Movants, like UJC, did seek to enjoin former

Union members from litigating putative class claims against them

in a state court proceeding. However, the other facts bearing on

the resolution of the motion by the Home Care Movants differed

from the circumstances here in material ways. Before the Home

Care Movants brought their motion, the New York trial and

appellate courts in the state action at issue had already

(1) enjoined the arbitration as to the entire putative class,

not just the named plaintiffs, and (2) ruled "expressly and

unambiguously" that this Court's First Confirmation Order was

not entitled to res judicata effect. See Injunction Order, 2022

WL 484861, at *2, *7. In contrast, the courts in the State Court

Action here enjoined the arbitration solely with respect to the

three named Hichez plaintiffs, and UJC's motion does not raise

29

any of the Rooker-Feldman and comity concerns implicated in the
Home Care Movants' motion.

The Hichez plaintiffs also assert that "like the [Home
Care] Movants in the first injunction motion, UJC's 'claim of
injury is difficult to reconcile with the way in which it has
litigated this action and the State Court Action.'" Pl.'s Opp'n
at 14 (quoting Injunction Order, 2022 WL 484861, at *8). That
comparison between the movants is not supportable. As explained
in the Injunction Order, the Home Care Movants substantially and
inexplicably delayed their pursuit of an order compelling the
putative class members to arbitrate, and they sought to enjoin
the state proceedings only after they litigated and lost in
state court on the question of the preclusive effect of the
First Confirmation Order. See 2022 WL 484861, at *8. Meanwhile,
UJC moved to compel arbitration immediately after the Hichez
plaintiffs filed their state-court complaint. Further still, UJC
had no reason to ask this Court for an injunction until it
received the Hichez plaintiffs' July 2022 discovery requests,
which made clear that the Hichez plaintiffs were still pursuing
their putative class claims notwithstanding this Court's
judgment resolving them.

In sum, the equities weigh in favor of granting UJC's
requested preliminary injunction, principles of comity and
federalism do not counsel otherwise, and the Hichez plaintiffs'

various arguments that the injunction should not issue are unavailing. The Hichez plaintiffs are therefore enjoined from prosecuting claims on behalf of the putative class in the State Court Action, pending a decision on the request for a permanent injunction.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, UJC's motion for a preliminary injunction enjoining the named Hichez plaintiffs from pursuing putative class claims in the State Court Action is **granted.**

UJC should submit a proposed preliminary injunction within two days. The Hichez plaintiffs may submit any objections two days thereafter.

The Clerk is directed to close Docket No. 265.

SO ORDERED.

Dated:    New York, New York
          October 11, 2022

                                    John G. Koeltl
                            United States District Judge