**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**1199SEIU UNITED HEALTHCARE WORKERS**
**EAST,**

                    **Petitioner,**                    **20-cv-3611 (JGK)**

                                                       **MEMORANDUM OPINION**
         **- against -**                               **AND ORDER**

**PSC COMMUNITY SERVICES, ET AL.,**

                    **Respondents.**

**JOHN G. KOELTL, District Judge:**

This action arises out of arbitration proceedings involving
petitioner 1199SEIU United Healthcare Workers East (the "Union")
and the respondents, a group of home care agencies licensed to
provide home care services in New York. The Union previously
filed two petitions for confirmation of arbitration awards
pursuant to the Labor Management Relations Act of 1947 ("LMRA"),
as amended, 29 U.S.C. § 185, the first seeking to confirm an
award addressing issues of arbitrability and jurisdiction (the
"First Award"), and the second seeking to confirm an award
resolving the Union's grievance against the respondents on the
merits (the "Second Award," and together with the First Award,
the "Awards"). Both Awards were rendered according to procedures
set forth in collective bargaining agreements ("CBAs") between
the Union and the various respondents. This Court confirmed the
First Award on February 19, 2021, see 1199SEIU United Healthcare
Workers E. v. PSC Cmty. Servs., 520 F. Supp. 3d 588 (S.D.N.Y.

2021) ("First Confirmation Order"), and the Second Award on June 24, 2022, see 1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs., No. 20-cv-3611, 2022 WL 2292736 (S.D.N.Y. June 24, 2022) ("Second Confirmation Order").

The Union now petitions this Court to confirm an August 31, 2022 arbitration award ("Premier Award") addressing the failure of respondent Premier Home Health Services, Inc. ("Premier") to comply with certain terms of the Second Award. See ECF No. 289 ("Third Petition"). The Union also seeks an award of attorneys' fees incurred in connection with this confirmation proceeding. For the reasons set forth below, the Third Petition is **granted** and the Premier Award is confirmed. The Union's request for attorneys' fees is **granted**, with the amount to be determined after the Court has considered additional submissions.

**I.**

**A.**

The Court assumes familiarity with its Confirmation Orders, which describe the background of this dispute in detail. See generally First Confirmation Order, 520 F. Supp. 3d at 594-98; Second Confirmation Order, 2022 WL 2292736, at *1-4. The facts relevant to the Third Petition are briefly summarized below.[1]

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, internal quotation marks, and citations in quoted text.

The Union is a labor union that serves as the sole and exclusive representative for the respondents' home health aide employees. See First Confirmation Order, 520 F. Supp. 3d at 594. At all relevant times, the Union was a party to CBAs with each of the respondents, including licensed home-care agency Premier. Id. In 2015, the Union and the respondents executed a memorandum of agreement (the "2015 MOA") that amended the CBAs to include an alternative dispute resolution process, through which all claims arising under certain federal and state wage-and-hours laws (the "Covered Statutes") must be resolved. Id. at 595-96. As pertinent here, the last step in that process is a "final and binding arbitration." Id. at 596.

In January 2019, the Union filed a class action grievance on behalf of its former and current members for "violations of the CBAs regarding wage and hour claims arising under the Covered Statutes." Id. Pursuant to the 2015 MOA and the CBAs, the Union and the respondents proceeded to arbitration.

On April 17, 2020, the arbitrator issued the First Award. In that Award, the arbitrator determined that (1) with certain exceptions not relevant here, the claims of former and current Union members asserted in the Union's grievance were arbitrable, and (2) the arbitrator had jurisdiction to resolve those claims, including claims brought on behalf of former employees who had ceased their employment before the effective date of the 2015

3

MOA. See id. at 597; see also First Award, ECF No. 1-1, at 37.
This Court confirmed the First Award on February 19, 2021. See
First Confirmation Order, 520 F. Supp. 3d at 605-08. Premier
actively participated in the confirmation proceedings and did
not assert objections to the First Award. See, e.g., ECF No. 51.

On February 25, 2022, the arbitrator issued the Second
Award, this time addressing the merits of the Union's grievance.
See Second Award, ECF No. 183-1. The arbitrator determined that
all of the respondents had committed violations of the relevant
wage-and-hours laws, "resulting in underpayment of required
wages" to the Union's former and current members. Id. at 46.

To remedy those violations, the arbitrator ordered the
respondents to contribute to a compensation fund (the "Special
Wage Fund" or the "Fund") for eligible claimants. In particular,
the Second Award provided that within 60 days of its issuance,
each respondent was required to pay "two hundred fifty ($250)
dollars [into the Fund] for each home aide in its employ during
all or part of [a specified] coverage period."[2] Id. at 68. The
Second Award also provides that (1) the Union "may seek

---

[2] To ensure the effective administration of the Fund, the Second
Award also required the respondents to submit: (1) certain work-
related and personal information about each covered home health
aide, to the designated claims administrator, within 30 days of
the issuance of the Second Award; and (2) a list of all covered
home health aides on the respondent's payroll through October
31, 2021, to the arbitrator, within 14 days after the issuance
of the Second Award. See Second Award at 67-68.

provisional remedies before [the arbitrator] in order to ensure
[the] Award is not ineffectual, by requesting . . . relief as
may be proper to achieve compliance with [the] Award," and
(2) the arbitrator "shall retain jurisdiction" over any "issues
[that] arise between the parties regarding the administration of
the Fund, or the application, or interpretation of this Award."
Id. at 70-71, 72.

On June 24, 2022, this Court issued an Order confirming
the Second Award in full. See Second Confirmation Order, 2022 WL
2292736, at *1. Premier did not object to confirmation.[3]

**B.**

Pursuant to the terms of the Second Award, Premier was
required to deposit $5,620,250 into the Special Wage Fund on or
before April 26, 2022. Third Petition ¶ 23. That dollar value
represents the total amount of $250 payments owed for each of
the 22,481 home health aides employed by Premier between June
16, 2010, and October 31, 2019. Id. On or about April 25, 2022,
the arbitrator granted Premier's request to extend the deadline
for Premier's deposits to August 25, 2022. Id. ¶ 24; see Premier
Award, ECF No. 289-1, at 7. Premier then deposited $3,766,250
into the Fund, representing $250 per home health aide employed

---

[3] Appeals from both Confirmation Orders are pending before the
Court of Appeals for the Second Circuit. Premier is not a party
to either of those appeals. See ECF Nos. 164, 264.

by Premier between January 1, 2016, and October 31, 2019. See Premier Award at 7-8. As of the date of the Third Petition, Premier had failed to pay the remaining $1,854,000, which would cover the payments for home health aides employed between June 16, 2010, and December 31, 2015.[4] Id. at 8; Third Petition ¶ 26.

In response to Premier's noncompliance with the Second Award, the Union sought relief from the arbitrator. The Union asked the arbitrator to impose daily penalties of $10,000, as well as interest on late payments at a rate of nine percent per year, until Premier made its remaining contribution. See Third Petition ¶ 27. Both parties "provided written submissions to the [a]rbitrator arguing their respective positions." Id. ¶ 28.

On August 31, 2022, the arbitrator issued the Premier Award, which requires that Premier pay penalties, interest, and costs as a remedy for its failure to comply fully with the terms of the Second Award. Specifically, the arbitrator ordered as follows:

> 1. Premier shall pay the sum of two thousand five hundred ($2,500) dollars per day commencing August 25, 2022, until it makes full payment of the amount owed to the Fund which is one million eight hundred fifty[-]four thousand ($1,854,000) dollars. This payment shall be deposited in the Fund.

---

[4] Premier also failed to submit the required information about its home health aides until after the deadlines mandated in the Second Award had passed. See Premier Award at 7.

   2. Commencing August 25, 2022, Premier shall pay
      interest on the amount owed to the Fund as set forth
      in 1 above, at the rate of nine (9%) percent per
      annum. The interest payments shall be deposited in
      the Fund.

   3. The cost of this proceeding as well as any additional
      costs of administration occasioned by Premier's
      refusal to adhere to the terms of [the Second] Award,
      shall be paid by Premier.

Premier Award at 16.

                                C.

     On October 14, 2022, the Union filed the Third Petition,

seeking confirmation of the Premier Award and other relief. The

Court directed Premier to respond by November 8, 2022. See ECF

No. 292. However, on October 25, 2022, the attorneys formerly

representing Premier filed a motion to withdraw as counsel. See

ECF No. 296. Three days later, the Court conducted a hearing on

the motion and subsequently granted the withdrawal request. See

ECF No. 303. The Court directed Premier to appear by new counsel

on or before November 7, 2022, and extended Premier's deadline

to respond to the Third Petition to November 16, 2022. Id.

     Premier failed to appear by new counsel within the time

allotted by this Court. Accordingly, on November 9, 2022, the

Court "reminded [Premier] that it was required to appear by new

counsel . . . by November 7, 2022," and "also reminded [Premier]

that its response to the most recent petition . . . [was] due on

November 16, 2022." ECF No. 312. The Court cautioned that "[i]f

                                7

Premier fails to respond to the petition . . . , the Court will decide the petition on the current papers." Id.

To date, Premier has neither appeared by new counsel nor submitted a response to the Third Petition. The Court therefore decides the merits of the Third Petition based on the relevant papers already filed on the docket.

## II.

"Section 301 of the [LMRA] provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." Loc. 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1998); 29 U.S.C. § 185. The LMRA "establishes a federal policy of promoting industrial stabilization through the collective bargaining agreement, with [a] particular emphasis on private arbitration of grievances" and a "clear preference for the private resolution of labor disputes." Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016). "Under [the LMRA's] framework of self-government, the collective bargaining agreement is not just a contract, but a generalized code to govern a myriad of cases [that] the draftsmen cannot wholly anticipate," which is "negotiated and refined over time by the parties themselves so as to best reflect their priorities, expectations, and experience." Id.

Accordingly, a federal court's review of an arbitration award rendered pursuant to the LMRA is "narrowly circumscribed and highly deferential." A&A Maint. Enter., Inc. v. Ramnarain, 982 F.3d 864, 868 (2d Cir. 2020). As the Supreme Court has explained, district courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact," on "misinterpretation of the contract," or on "improvident, even silly" mistakes. United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36, 39 (1987); see also Nat'l Football League Mgmt. Council, 820 F.3d at 536. Rather, a court's role is "simply to determine whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." N.Y.C. & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners v. Ass'n of Wall-Ceiling & Carpentry Indus. of New York, Inc., 826 F.3d 611, 618 (2d Cir. 2016). Indeed, "[b]ecause it is the arbitrator's view of the facts and the meaning of the contract for which the parties bargained, . . . [i]t is the arbitrator's construction of the contract and assessment of the facts that are dispositive, 'however good, bad, or ugly.'" Nat'l Football League Mgmt. Council, 820 F.3d at 536 (quoting Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 573 (2013)).

Thus, even a "serious error does not suffice to overturn [the] decision" of an arbitrator, so long as the arbitrator was

"arguably construing or applying the contract and acting within the scope of his authority." Int'l Bhd. of Elec. Workers, Loc. 97 v. Niagara Mohawk Power Corp., 143 F.3d 704, 713 (2d Cir. 1998) (quoting Misco, 484 U.S. at 38). If the court can identify even a "barely colorable justification for the outcome reached," the arbitrator's decision must be confirmed. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).

### III.

The Union argues persuasively that the Premier Award is rational, well-founded, and consistent with the terms of the prior Awards and the CBA. Because the arbitrator's decision with respect to Premier is plainly entitled to great deference, the Third Petition is **granted** and the Premier Award is confirmed.

The Premier Award is a reasonable remedy to Premier's noncompliance with the Second Award in light of the facts and circumstances presented to the arbitrator. As stated in the Premier Award, it is undisputed that Premier has failed to pay an outstanding balance of $1,854,000 into the Fund, "despite the fact [that] Premier was given four (4) additional months to make the payments." Premier Award at 13-14. Furthermore, Premier did not argue that this failure was attributable to "lack of notice" or "inability to pay." Id. at 14. Rather, Premier has simply "refused to make the payments in question." Id.

After surveying these facts, and after thoroughly reviewing
the parties' respective positions, see, e.g., id. at 9-11, the
arbitrator ordered Premier to pay daily penalties of $2,500, as
well as nine-percent interest per year on the unpaid amount of
$1,854,000, both to be calculated from August 25, 2022, until
full payment is made. Id. at 14-15. Given Premier's persistent
refusal to comply with the Second Award, as well as the size of
the sum that Premier still owes to the Fund (an amount that
would cover the per capita remedial payments for 7,416 home
health aides), see id. at 8, that determination was certainly
rational. Indeed, the arbitrator offered a well-reasoned basis
for these penalties, explaining that they were needed to "ensure
the sanctity of the [Second] Award and the arbitration process
engaged in by all of the parties." Id. at 14. The arbitrator
also acted reasonably in ordering Premier to pay the legal and
administrative costs "occasioned by [its] refusal to adhere to
the terms of [the Second] Award," id. at 15, because such costs
could have been avoided had Premier simply complied with its
undisputed payment obligations.

Moreover, the Premier Award clearly reflects the
arbitrator's efforts to craft a fair and balanced remedy under
the circumstances. For example, while the Union sought daily
penalties of $10,000, the arbitrator rejected that amount as
"excessive" and instead ordered Premier to pay daily penalties

11

of $2,500. Premier Award at 14. The Union also argued that the
period for calculating interest and penalties should commence
"on the date [when] the . . . payments were originally due." Id.
However, the arbitrator determined that such calculations should
begin later, on August 25, 2022, because (1) the arbitrator had
previously granted Premier's request to extend the payment
deadline to August 25, 2022, and (2) Premier had at least
partially complied with the terms of the Second Award.[5] See
Premier Award at 14-15.

Finally, the Premier Award is a proper exercise of the
arbitrator's authority under the relevant CBA and the previously
confirmed Awards. The CBAs between the Union and the respondents,
including Premier, empower the arbitrator to "award all statutory
remedies and penalties . . . consistent with the FLSA and New

---

[5] In the proceedings before the arbitrator, Premier argued that
it should not be required to deposit the outstanding payments
because (1) those payments cover claims that arose before the
effective date of the 2015 MOA, and (2) such payments would be
duplicative of any damages awarded to Premier's former home
health aides in a pending state-court class action against
Premier. See Premier Award at 9. As the Union argues, the
arbitrator reasonably concluded that Premier was not entitled to
relitigate the question of whether claims predating the 2015 MOA
were arbitrable, an issue specifically decided in the Court-
approved First Award. See id. at 12-13. Moreover, the Court
defers to the arbitrator's reasoning that Premier can avoid any
duplicative damages award by "claiming a set off in the State
Court proceeding" based on its payments to the Fund. Id. at 13.
It is not for the Court to second-guess the arbitrator's reasons
for rejecting Premier's arguments, especially given Premier's
failure to respond to the Third Petition.

York Labor Law in rendering decisions regarding disputes" that arise under the Covered Statutes. First Confirmation Order, 520 F. Supp. 3d at 596. And the Second Award, consistent with the arbitrator's authority to resolve grievances between the parties and apply the CBA, expressly provides (1) that the arbitrator retains jurisdiction over any "issues . . . between the parties regarding the administration of the Fund, or the application[] or interpretation of [the Second] Award," and (2) that the Union can "seek provisional remedies" from the arbitrator to ensure compliance with the Second Award's terms. Second Award at 70-72. The Premier Award, which is designed to enforce compliance with the remedial provisions of the Second Award, is well within the scope of the arbitrator's broad authority to craft remedies for violations of the Covered Statutes and to ensure that the Second Award is given full effect.

In short, the Union convincingly argues that the arbitrator had more than a barely colorable justification for issuing the Premier Award, which sets forth reasonable terms for addressing Premier's refusal to comply with the Second Award. Thus, the Third Petition is **granted** and the Premier Award is confirmed.

## IV.

The Union also requests an award of attorneys' fees incurred in the course of this confirmation proceeding. See Union Memorandum of Law, ECF No. 290, at 17. The district courts

13

are vested with "wide discretion" to fashion and award remedies, including attorneys' fees, for a party's willful noncompliance with a previous order. See Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996). In this case, it is clear that Premier simply refuses to comply with the Second Award, and thus with this Court's Order confirming it. Accordingly, the Union is entitled to the attorneys' fees incurred in connection with the Third Petition. The Union's counsel should submit an application for attorneys' fees within 60 days of the issuance of this decision. Premier may respond by counsel 30 days thereafter, and the Union may reply 15 days thereafter.

## CONCLUSION

For the foregoing reasons, the Union's Third Petition is **granted** and the Premier Award is confirmed. The Union's request for attorneys' fees is **granted**, with the appropriate amount of fees to be determined after the Union's counsel has submitted a fee application. The application for attorneys' fees must be submitted within 60 days of the date of this Memorandum Opinion and Order. Premier may respond by counsel 30 days thereafter, and the Union may reply 15 days thereafter.

14

The Clerk is respectfully directed to close ECF No. 289 and to enter judgment confirming the Premier Award.

**SO ORDERED.**

Dated:    **New York, New York**
            **November 28, 2022**

                                         **John G. Koeltl**
                              **United States District Judge**